No. 24-11239-D

# UNITED STATES COURT OF APPEALS FOR THE ELEVENTH CIRCUIT

KATIE WOOD,
*Plaintiff-Appellee,*

AV SCHWANDES, et al.
*Plaintiffs,*

v.

FLORIDA DEPARTMENT OF EDUCATION,
FLORIDA STATE BOARD OF EDUCATION,
COMMISSIONER OF EDUCATION,
EDUCATION PRACTICES COMMISSION,
MONESIA BROWN,
In their official capacity as member of
defendant education practices, et al.
*Defendants-Appellants,*

HILLSBOROUGH COUNTY SCHOOL BOARD, et al.
*Defendants.*

Appeal from the U.S. District Court for the
Northern District of Florida, No. 4:23-cv-526 (Walker, C.J.)

## APPENDIX VOLUME 1

Bryan Weir
Daniel Shapiro
Daniel M. Vitagliano*
CONSOVOY MCCARTHY PLLC
1600 Wilson Boulevard, Suite 700
Arlington, VA 22209
Telephone: (703) 243-9423
bryan@consovoymccarthy.com

*\* Supervised by principals of the firm
admitted to practice in VA*

*Counsel for Defendants-Appellants*

# CASE NO. 24-11239-D

## APPENDIX INDEX

| Description of Item | Dist. Ct. Doc. / Tab No. |
|---|---|

### VOLUME 1

U.S. District Court
Northern District of Florida (Tallahassee)
Civil Docket for Case No. 4:23-cv-526-MW/MAF…………… DKT

Complaint
(12/13/2023)…………………………………………….. 1

Plaintiff Katie Wood's Motion for Preliminary Injunction
(12/21/2023)…………………………………………….. 11

Declaration of Plaintiff Katie Wood
(12/21/2023)…………………………………………….. 11-1

First Amended Complaint
(02/06/2024)…………………………………………….. 56

Plaintiffs Katie Wood and AV Schwandes's Reply
in Support of Their Motions for Preliminary Injunction
(03/04/2024)…………………………………………….. 69

### VOLUME 2

Transcript of Preliminary Injunction Proceedings
(03/29/2024)…………………………………………….. 80

i

| **Description of Item** | **Dist. Ct. Doc. / Tab No.** |
| --- | --- |
| Order on Motions for Preliminary Injunction (04/09/2024)…………………………………………….. | 82 |
| Notice of Appeal (04/17/2024)…………………………………………….. | 84 |
| Certificate of Service | |

# TAB DKT

# U.S. District Court
## Northern District of Florida (Tallahassee)
## CIVIL DOCKET FOR CASE #: 4:23-cv-00526-MW-MAF

| | |
|---|---|
| WOOD et al v. FLORIDA DEPARTMENT OF EDUCATION et al | Date Filed: 12/13/2023 |
| Assigned to: CHIEF JUDGE MARK E WALKER | Jury Demand: Plaintiff |
| Referred to: MAGISTRATE JUDGE MARTIN A FITZPATRICK | Nature of Suit: 442 Civil Rights: Jobs |
| Case in other court: USCA, 24-11239-D | Jurisdiction: Federal Question |
| Cause: 42:2000 Job Discrimination (Sex) | |

**Plaintiff**

**KATIE WOOD**                                    represented by    **AARON SAUL FLEISHER**
                                                                    SOUTHERN POVERTY LAW CENTER -
                                                                    MONTGOMERY AL
                                                                    400 WASHINGTON AVE
                                                                    MONTGOMERY, AL 36104
                                                                    202-536-9719
                                                                    Email: aaron.fleisher@splcenter.org
                                                                    *LEAD ATTORNEY*
                                                                    *ATTORNEY TO BE NOTICED*

                                                                    **CARLI SEAN RABEN**
                                                                    SOUTHERN POVERTY LAW CENTER -
                                                                    MIAMI FL
                                                                    2 S BISCAYNE BOULEVARD
                                                                    SUITE 3750
                                                                    MIAMI, FL 33131
                                                                    954-609-5373
                                                                    Fax: 786-237-2949
                                                                    Email: carli.raben@splcenter.org
                                                                    *ATTORNEY TO BE NOTICED*

                                                                    **DIEGO ARMANDO SOTO**
                                                                    SOUTHERN POVERTY LAW CENTER -
                                                                    DECATUR GA
                                                                    150 E PONCE DE LEON AVENUE
                                                                    SUITE 340
                                                                    DECATUR, GA 30030
                                                                    334-604-1414
                                                                    Email: diego.soto@splcenter.org
                                                                    *ATTORNEY TO BE NOTICED*

                                                                    **JAMES BALTZER**
                                                                    ALTSHULER BERZON LLP - SAN
                                                                    FRANCISCO CA
                                                                    177 POST STREET
                                                                    SUITE 300
                                                                    SAN FRANCISCO, CA 94108
                                                                    415-421-7151
                                                                    Fax: 415-362-8064

Email: jbaltzer@altshulerberzon.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**JAMES MICHAEL FINBERG**
ALTSHULER BERZON LLP - SAN
FRANCISCO CA
177 POST STREET
SUITE 300
SAN FRANCISCO, CA 94108
415-421-7151
Email: jfinberg@altber.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**JESSICA LYNN STONE**
SOUTHERN POVERTY LAW CENTER -
DECATUR GA
150 E PONCE DE LEON AVENUE
DECATUR, GA 30030
404-807-0969
Email: jessica.stone@splcenter.org
*ATTORNEY TO BE NOTICED*

**JODI LYNN SIEGEL**
SOUTHERN LEGAL COUNSEL INC -
GAINESVILLE FL
1229 NW 12TH AVE
GAINESVILLE, FL 32601-4113
352-271-8890
Fax: 352-271-8347
Email: jodi.siegel@southernlegal.org
*ATTORNEY TO BE NOTICED*

**JONATHAN ROSENTHAL**
ALTSHULER BERZON LLP - SAN
FRANCISCO CA
177 POST STREET
SUITE 300
SAN FRANCISCO, CA 94108
415-421-7151
Email: jrosenthal@altshulerberzon.com
*ATTORNEY TO BE NOTICED*

**SIMONE MICHELLE CHRISS**
SOUTHERN LEGAL COUNSEL INC -
GAINESVILLE FL
1229 NW 12TH AVE
GAINESVILLE, FL 32601-4113
352-271-8890
Fax: 352-271-8347
Email: simone.chriss@southernlegal.org
*ATTORNEY TO BE NOTICED*

**SAMUEL TURNER SILK BOYD**
SOUTHERN POVERTY LAW CENTER -
MIAMI FL
2 BISCAYNE BOULEVARD
SUITE 3750
MIAMI, FL 33101
786-570-0737
Email: sam.boyd@splcenter.org
*ATTORNEY TO BE NOTICED*

**Plaintiff**

AV SCHWANDES          represented by  **AARON SAUL FLEISHER**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**CARLI SEAN RABEN**
(See above for address)
*ATTORNEY TO BE NOTICED*

**DIEGO ARMANDO SOTO**
(See above for address)
*ATTORNEY TO BE NOTICED*

**JAMES BALTZER**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**JAMES MICHAEL FINBERG**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**JESSICA LYNN STONE**
(See above for address)
*ATTORNEY TO BE NOTICED*

**JODI LYNN SIEGEL**
(See above for address)
*ATTORNEY TO BE NOTICED*

**JONATHAN ROSENTHAL**
(See above for address)
*ATTORNEY TO BE NOTICED*

**SIMONE MICHELLE CHRISS**
(See above for address)
*ATTORNEY TO BE NOTICED*

**SAMUEL TURNER SILK BOYD**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**JANE DOE**                    represented by    **AARON SAUL FLEISHER**
                                                  (See above for address)
                                                  *LEAD ATTORNEY*
                                                  *ATTORNEY TO BE NOTICED*

                                                  **CARLI SEAN RABEN**
                                                  (See above for address)
                                                  *ATTORNEY TO BE NOTICED*

                                                  **DIEGO ARMANDO SOTO**
                                                  (See above for address)
                                                  *ATTORNEY TO BE NOTICED*

                                                  **JAMES BALTZER**
                                                  (See above for address)
                                                  *PRO HAC VICE*
                                                  *ATTORNEY TO BE NOTICED*

                                                  **JAMES MICHAEL FINBERG**
                                                  (See above for address)
                                                  *PRO HAC VICE*
                                                  *ATTORNEY TO BE NOTICED*

                                                  **JESSICA LYNN STONE**
                                                  (See above for address)
                                                  *ATTORNEY TO BE NOTICED*

                                                  **JODI LYNN SIEGEL**
                                                  (See above for address)
                                                  *ATTORNEY TO BE NOTICED*

                                                  **JONATHAN ROSENTHAL**
                                                  (See above for address)
                                                  *ATTORNEY TO BE NOTICED*

                                                  **SIMONE MICHELLE CHRISS**
                                                  (See above for address)
                                                  *ATTORNEY TO BE NOTICED*

                                                  **SAMUEL TURNER SILK BOYD**
                                                  (See above for address)
                                                  *ATTORNEY TO BE NOTICED*

V.

**Defendant**

**FLORIDA DEPARTMENT OF**        represented by    **BRYAN K WEIR**
**EDUCATION**                                     CONSOVOY MCCARTHY PLLC -
                                                  ARLINGTON VA
                                                  1600 WILSON BOULEVARD
                                                  SUITE 700
                                                  ARLINGTON, VA 22209

703-243-9423
Email: bryan@consovoymccarthy.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**DANIEL JOSEPH SHAPIRO**
CONSOVOY MCCARTHY PLLC -
ARLINGTON VA
1600 WILSON BOULEVARD
SUITE 700
ARLINGTON, VA 22209
727-504-8994
Email: daniel@consovoymccarthy.com
*ATTORNEY TO BE NOTICED*

**DANIEL M VITAGLIANO**
CONSOVOY MCCARTHY PLLC -
ARLINGTON VA
1600 WILSON BOULEVARD
SUITE 700
ARLINGTON, VA 22209
703-243-9423
Email: dvitagliano@consovoymccarthy.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Defendant**

**STATE BOARD OF EDUCATION**          represented by  **BRYAN K WEIR**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**DANIEL JOSEPH SHAPIRO**
(See above for address)
*ATTORNEY TO BE NOTICED*

**DANIEL M VITAGLIANO**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Defendant**

**COMMISSIONER OF EDUCATION**          represented by  **BRYAN K WEIR**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**DANIEL JOSEPH SHAPIRO**
(See above for address)
*ATTORNEY TO BE NOTICED*

**DANIEL M VITAGLIANO**
(See above for address)

*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Defendant**
**EDUCATION PRACTICES
COMMISSION**

represented by **BRYAN K WEIR**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**DANIEL JOSEPH SHAPIRO**
(See above for address)
*ATTORNEY TO BE NOTICED*

**DANIEL M VITAGLIANO**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Defendant**
**HILLSBOROUGH COUNTY SCHOOL
BOARD**

represented by **JASON LEE MARGOLIN**
AKERMAN LLP - TAMPA
401 E JACKSON STREET
SUITE 1700
TAMPA, FL 33602
813-209-5009
Email: jason.margolin@akerman.com
*ATTORNEY TO BE NOTICED*

**NEEMA MATHEW MONFARED**
AKERMAN LLP - TAMPA
401 E JACKSON STREET
SUITE 1700
TAMPA, FL 33602
813-223-7333
Fax: 813-223-2837
Email: neema.monfared@akerman.com
*ATTORNEY TO BE NOTICED*

**Defendant**
**LEE COUNTY SCHOOL BOARD**

represented by **JAMES DONALD FOX**
ROETZEL & ANDRESS PA - NAPLES FL
999 VANDERBILT BEACH ROAD
SUITE 401
NAPLES, FL 34108
239-649-2705
Fax: 239-261-3659
Email: jfox@ralaw.com
*ATTORNEY TO BE NOTICED*

**MIKALA ANN MAKAR**
ROETZEL & ANDRESS PA - NAPLES FL
999 VANDERBILT BEACH ROAD
SUITE 401
NAPLES, FL 34108

239-235-4914
Email: mmakar@ralaw.com
*ATTORNEY TO BE NOTICED*

**Defendant**

**FLORIDA VIRTUAL SCHOOL BOARD OF TRUSTEES**

represented by **ERIC JAMES HOLSHOUSER**
ROGERS TOWERS PA - JACKSONVILLE FL
1301 RIVERPLACE BLVD
STE 1500
JACKSONVILLE, FL 32207
904-398-3911
Fax: 904-396-0663
Email: eholshouser@rtlaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**JOHN DAVID MARSEY**
RUMBERGER KIRK & CALDWELL PA - TALLAHASSEE FL
101 NORTH MONROE STREET
SUITE 1050
TALLAHASSEE, FL 32301
850-222-6550
Fax: 850-222-8783
Email: dmarsey@rumberger.com
*ATTORNEY TO BE NOTICED*

**Defendant**

**MONESIA BROWN**
*IN THEIR OFFICIAL CAPACITY AS MEMBER OF DEFENDANT EDUCATION PRACTICES*

represented by **BRYAN K WEIR**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**DANIEL JOSEPH SHAPIRO**
(See above for address)
*ATTORNEY TO BE NOTICED*

**DANIEL M VITAGLIANO**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Defendant**

**ESTHER BYRD**
*IN THEIR OFFICIAL CAPACITY AS MEMBER OF DEFENDANT EDUCATION PRACTICES*

represented by **BRYAN K WEIR**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**DANIEL JOSEPH SHAPIRO**
(See above for address)
*ATTORNEY TO BE NOTICED*

**DANIEL M VITAGLIANO**

(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Defendant**

**GRAZIE P CHRISTIE**                  represented by   **BRYAN K WEIR**
*IN THEIR OFFICIAL CAPACITY AS*                        (See above for address)
*MEMBER OF DEFENDANT EDUCATION*                        *PRO HAC VICE*
*PRACTICES*                                            *ATTORNEY TO BE NOTICED*

                                                       **DANIEL JOSEPH SHAPIRO**
                                                       (See above for address)
                                                       *ATTORNEY TO BE NOTICED*

                                                       **DANIEL M VITAGLIANO**
                                                       (See above for address)
                                                       *PRO HAC VICE*
                                                       *ATTORNEY TO BE NOTICED*

**Defendant**

**KELLY GARCIA**                       represented by   **BRYAN K WEIR**
*IN THEIR OFFICIAL CAPACITY AS*                        (See above for address)
*MEMBER OF DEFENDANT EDUCATION*                        *PRO HAC VICE*
*PRACTICES*                                            *ATTORNEY TO BE NOTICED*

                                                       **DANIEL JOSEPH SHAPIRO**
                                                       (See above for address)
                                                       *ATTORNEY TO BE NOTICED*

                                                       **DANIEL M VITAGLIANO**
                                                       (See above for address)
                                                       *PRO HAC VICE*
                                                       *ATTORNEY TO BE NOTICED*

**Defendant**

**BENJAMIN GIBSON**                    represented by   **BRYAN K WEIR**
*IN THEIR OFFICIAL CAPACITY AS*                        (See above for address)
*MEMBER OF DEFENDANT EDUCATION*                        *PRO HAC VICE*
*PRACTICES*                                            *ATTORNEY TO BE NOTICED*

                                                       **DANIEL JOSEPH SHAPIRO**
                                                       (See above for address)
                                                       *ATTORNEY TO BE NOTICED*

                                                       **DANIEL M VITAGLIANO**
                                                       (See above for address)
                                                       *PRO HAC VICE*
                                                       *ATTORNEY TO BE NOTICED*

**Defendant**

**MARYLYNN MAGAR**                     represented by   **BRYAN K WEIR**
*IN THEIR OFFICIAL CAPACITY AS*                        (See above for address)
                                                       *PRO HAC VICE*

MEMBER OF DEFENDANT EDUCATION
PRACTICES

ATTORNEY TO BE NOTICED

**DANIEL JOSEPH SHAPIRO**
(See above for address)
ATTORNEY TO BE NOTICED

**DANIEL M VITAGLIANO**
(See above for address)
PRO HAC VICE
ATTORNEY TO BE NOTICED

**Defendant**

**RYAN PETTY**                    represented by **BRYAN K WEIR**
IN THEIR OFFICIAL CAPACITY AS         (See above for address)
MEMBER OF DEFENDANT EDUCATION         PRO HAC VICE
PRACTICES                             ATTORNEY TO BE NOTICED

**DANIEL JOSEPH SHAPIRO**
(See above for address)
ATTORNEY TO BE NOTICED

**DANIEL M VITAGLIANO**
(See above for address)
PRO HAC VICE
ATTORNEY TO BE NOTICED

**Defendant**

**AADIL AMEERALLY**               represented by **BRYAN K WEIR**
IN THEIR OFFICIAL CAPACITY AS         (See above for address)
MEMBER OF DEFENDANT EDUCATION         PRO HAC VICE
PRACTICES                             ATTORNEY TO BE NOTICED

**DANIEL JOSEPH SHAPIRO**
(See above for address)
ATTORNEY TO BE NOTICED

**DANIEL M VITAGLIANO**
(See above for address)
PRO HAC VICE
ATTORNEY TO BE NOTICED

**Defendant**

**ANA ARMBRISTER BLAND**          represented by **BRYAN K WEIR**
IN THEIR OFFICIAL CAPACITY AS         (See above for address)
MEMBER OF DEFENDANT EDUCATION         TERMINATED: 02/06/2024
PRACTICES                             PRO HAC VICE
TERMINATED: 02/06/2024
                                      **DANIEL JOSEPH SHAPIRO**
                                      (See above for address)
                                      TERMINATED: 02/06/2024

                                      **DANIEL M VITAGLIANO**
                                      (See above for address)

*TERMINATED: 02/06/2024*
*PRO HAC VICE*

**Defendant**

**JARED BARR**                              represented by **BRYAN K WEIR**
*IN THEIR OFFICIAL CAPACITY AS*                    (See above for address)
*MEMBER OF DEFENDANT EDUCATION*                    *PRO HAC VICE*
*PRACTICES*                                        *ATTORNEY TO BE NOTICED*

                                           **DANIEL JOSEPH SHAPIRO**
                                           (See above for address)
                                           *ATTORNEY TO BE NOTICED*

                                           **DANIEL M VITAGLIANO**
                                           (See above for address)
                                           *PRO HAC VICE*
                                           *ATTORNEY TO BE NOTICED*

**Defendant**

**MICHAEL BUTCHER**                         represented by **BRYAN K WEIR**
*IN THEIR OFFICIAL CAPACITY AS*                    (See above for address)
*MEMBER OF DEFENDANT EDUCATION*                    *PRO HAC VICE*
*PRACTICES*                                        *ATTORNEY TO BE NOTICED*

                                           **DANIEL JOSEPH SHAPIRO**
                                           (See above for address)
                                           *ATTORNEY TO BE NOTICED*

                                           **DANIEL M VITAGLIANO**
                                           (See above for address)
                                           *PRO HAC VICE*
                                           *ATTORNEY TO BE NOTICED*

**Defendant**

**YVONNE CALDWELL**                         represented by **BRYAN K WEIR**
*IN THEIR OFFICIAL CAPACITY AS*                    (See above for address)
*MEMBER OF DEFENDANT EDUCATION*                    *TERMINATED: 02/06/2024*
*PRACTICES*                                        *PRO HAC VICE*
*TERMINATED: 02/06/2024*

                                           **DANIEL JOSEPH SHAPIRO**
                                           (See above for address)
                                           *TERMINATED: 02/06/2024*

                                           **DANIEL M VITAGLIANO**
                                           (See above for address)
                                           *TERMINATED: 02/06/2024*
                                           *PRO HAC VICE*

**Defendant**

**ELAYNE COLON**                            represented by **BRYAN K WEIR**
*IN THEIR OFFICIAL CAPACITY AS*                    (See above for address)
*MEMBER OF DEFENDANT EDUCATION*                    *PRO HAC VICE*
*PRACTICES*                                        *ATTORNEY TO BE NOTICED*

**DANIEL JOSEPH SHAPIRO**
(See above for address)
*ATTORNEY TO BE NOTICED*

**DANIEL M VITAGLIANO**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Defendant**

**ANN COPENHAVER**                    represented by   **BRYAN K WEIR**
*IN THEIR OFFICIAL CAPACITY AS*                        (See above for address)
*MEMBER OF DEFENDANT EDUCATION*                        *PRO HAC VICE*
*PRACTICES*                                            *ATTORNEY TO BE NOTICED*

**DANIEL JOSEPH SHAPIRO**
(See above for address)
*ATTORNEY TO BE NOTICED*

**DANIEL M VITAGLIANO**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Defendant**

**JOSEPH GOODWIN**                    represented by   **BRYAN K WEIR**
*IN THEIR OFFICIAL CAPACITY AS*                        (See above for address)
*MEMBER OF DEFENDANT EDUCATION*                        *PRO HAC VICE*
*PRACTICES*                                            *ATTORNEY TO BE NOTICED*

**DANIEL JOSEPH SHAPIRO**
(See above for address)
*ATTORNEY TO BE NOTICED*

**DANIEL M VITAGLIANO**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Defendant**

**BENJAMIN HENRY**                    represented by   **BRYAN K WEIR**
*IN THEIR OFFICIAL CAPACITY AS*                        (See above for address)
*MEMBER OF DEFENDANT EDUCATION*                        *PRO HAC VICE*
*PRACTICES*                                            *ATTORNEY TO BE NOTICED*

**DANIEL JOSEPH SHAPIRO**
(See above for address)
*ATTORNEY TO BE NOTICED*

**DANIEL M VITAGLIANO**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Defendant**

**TIMOTHY HOLLEY**
*IN THEIR OFFICIAL CAPACITY AS*
*MEMBER OF DEFENDANT EDUCATION*
*PRACTICES*

represented by **BRYAN K WEIR**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**DANIEL JOSEPH SHAPIRO**
(See above for address)
*ATTORNEY TO BE NOTICED*

**DANIEL M VITAGLIANO**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Defendant**

**LISA INNERST**
*IN THEIR OFFICIAL CAPACITY AS*
*MEMBER OF DEFENDANT EDUCATION*
*PRACTICES*

represented by **BRYAN K WEIR**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**DANIEL JOSEPH SHAPIRO**
(See above for address)
*ATTORNEY TO BE NOTICED*

**DANIEL M VITAGLIANO**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Defendant**

**JEFFREY JOHNSON**
*IN THEIR OFFICIAL CAPACITY AS*
*MEMBER OF DEFENDANT EDUCATION*
*PRACTICES*

represented by **BRYAN K WEIR**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**DANIEL JOSEPH SHAPIRO**
(See above for address)
*ATTORNEY TO BE NOTICED*

**DANIEL M VITAGLIANO**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Defendant**

**KENNETH LAPEE**
*IN THEIR OFFICIAL CAPACITY AS*
*MEMBER OF DEFENDANT EDUCATION*
*PRACTICES*

represented by **BRYAN K WEIR**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**DANIEL JOSEPH SHAPIRO**
(See above for address)

*ATTORNEY TO BE NOTICED*

**DANIEL M VITAGLIANO**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Defendant**

**MASON LEWIS**                                    represented by **BRYAN K WEIR**
*IN THEIR OFFICIAL CAPACITY AS*                    (See above for address)
*MEMBER OF DEFENDANT EDUCATION*                    *PRO HAC VICE*
*PRACTICES*                                        *ATTORNEY TO BE NOTICED*

**DANIEL JOSEPH SHAPIRO**
(See above for address)
*ATTORNEY TO BE NOTICED*

**DANIEL M VITAGLIANO**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Defendant**

**SALLIE MURPHY**                                  represented by **BRYAN K WEIR**
*IN THEIR OFFICIAL CAPACITY AS*                    (See above for address)
*MEMBER OF DEFENDANT EDUCATION*                    *PRO HAC VICE*
*PRACTICES*                                        *ATTORNEY TO BE NOTICED*

**DANIEL JOSEPH SHAPIRO**
(See above for address)
*ATTORNEY TO BE NOTICED*

**DANIEL M VITAGLIANO**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Defendant**

**CHRISTINE PLAZA**                                represented by **BRYAN K WEIR**
*IN THEIR OFFICIAL CAPACITY AS*                    (See above for address)
*MEMBER OF DEFENDANT EDUCATION*                    *PRO HAC VICE*
*PRACTICES*                                        *ATTORNEY TO BE NOTICED*

**DANIEL JOSEPH SHAPIRO**
(See above for address)
*ATTORNEY TO BE NOTICED*

**DANIEL M VITAGLIANO**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Defendant**

**KEVIN ROWE**
*IN THEIR OFFICIAL CAPACITY AS*
*MEMBER OF DEFENDANT EDUCATION*
*PRACTICES*

represented by **BRYAN K WEIR**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**DANIEL JOSEPH SHAPIRO**
(See above for address)
*ATTORNEY TO BE NOTICED*

**DANIEL M VITAGLIANO**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Defendant**

**CHARLES SHAW**
*IN THEIR OFFICIAL CAPACITY AS*
*MEMBER OF DEFENDANT EDUCATION*
*PRACTICES*

represented by **BRYAN K WEIR**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**DANIEL JOSEPH SHAPIRO**
(See above for address)
*ATTORNEY TO BE NOTICED*

**DANIEL M VITAGLIANO**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Defendant**

**ORENTHYA SLOAN**
*IN THEIR OFFICIAL CAPACITY AS*
*MEMBER OF DEFENDANT EDUCATION*
*PRACTICES*

represented by **BRYAN K WEIR**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**DANIEL JOSEPH SHAPIRO**
(See above for address)
*ATTORNEY TO BE NOTICED*

**DANIEL M VITAGLIANO**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Defendant**

**MARC SNYDER**
*IN THEIR OFFICIAL CAPACITY AS*
*MEMBER OF DEFENDANT EDUCATION*
*PRACTICES*

represented by **BRYAN K WEIR**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**DANIEL JOSEPH SHAPIRO**
(See above for address)
*ATTORNEY TO BE NOTICED*

**DANIEL M VITAGLIANO**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Defendant**

**MALCOLM THOMAS**
*IN THEIR OFFICIAL CAPACITY AS*
*MEMBER OF DEFENDANT EDUCATION*
*PRACTICES*

represented by **BRYAN K WEIR**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**DANIEL JOSEPH SHAPIRO**
(See above for address)
*ATTORNEY TO BE NOTICED*

**DANIEL M VITAGLIANO**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Defendant**

**JORDAN TOMPKINS**
*IN THEIR OFFICIAL CAPACITY AS*
*MEMBER OF DEFENDANT EDUCATION*
*PRACTICES*

represented by **BRYAN K WEIR**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**DANIEL JOSEPH SHAPIRO**
(See above for address)
*ATTORNEY TO BE NOTICED*

**DANIEL M VITAGLIANO**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Defendant**

**KATHY WILKS**
*IN THEIR OFFICIAL CAPACITY AS*
*MEMBER OF DEFENDANT EDUCATION*
*PRACTICES*

represented by **BRYAN K WEIR**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**DANIEL JOSEPH SHAPIRO**
(See above for address)
*ATTORNEY TO BE NOTICED*

**DANIEL M VITAGLIANO**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|

| 12/13/2023 | 1 | COMPLAINT against All Defendants ( Filing fee $ 405 receipt number AFLNDC-8397410.), filed by JANE DOE, AV SCHWANDES, KATIE WOOD. (Attachments: # 1 Civil Cover Sheet, # 2 Summons - Ameerally, Aadil, # 3 Summons - Barr, Jared, # 4 Summons - Bland, Ana Armbrister, # 5 Summons - Brown, Monesia, # 6 Summons - Butcher, Michael, # 7 Summons - Byrd, Esther, # 8 Summons - Caldwell, Yvonne, # 9 Summons - Christie, Grazie, # 10 Summons - Colon, Elayne, # 11 Summons - Commissioner of Education, # 12 Summons - Copenhaver, Ann, # 13 Summons - EPC, # 14 Summons - FDOE, # 15 Summons - Florida Virtual School Board of Trustees, # 16 Summons - Garcia, Kelly, # 17 Summons - Gibson, Benjamin, # 18 Summons - Goodwin, Joseph, # 19 Summons - Henry, Benjamin, # 20 Summons - Hillsborough County School Board, # 21 Summons - Holley, Timothy, # 22 Summons - Innerst, Lisa, # 23 Summons - Johnson, Jeffrey, # 24 Summons - LaPee, Kenneth, # 25 Summons - Lee County School Board, # 26 Summons - Lewis, Mason, # 27 Summons - Magar, MaryLynn, # 28 Summons - Murphy, Sallie, # 29 Summons - Petty, Ryan, # 30 Summons - Plaza, Christine, # 31 Summons - Rowe, Kevin, # 32 Summons - SBOE, # 33 Summons - Shaw, Charles, # 34 Summons - Sloan, Orenthya, # 35 Summons - Snyder, Marc, # 36 Summons - Thomas, Malcolm, # 37 Summons - Tompkins, Jordan, # 38 Summons - Wilks, Kathy) (BOYD, SAMUEL) (Entered: 12/13/2023) |
| 12/13/2023 | 2 | MOTION to Appear Pro Hac Vice by Diego A. Soto.( Filing fee $ 219 receipt number AFLNDC-8397909.) by JANE DOE, AV SCHWANDES, KATIE WOOD. (Attachments: # 1 Certificate of Good Standing) (SOTO, DIEGO) (Entered: 12/13/2023) |
| 12/13/2023 | 3 | ORDER ADMITTING DIEGO A. SOTO PRO HAC VICE. The 2 motion is GRANTED. Having fulfilled the requirements1 of the Local Rules for admission, Diego A. Soto is admitted pro hac vice as counsel for Plaintiffs. (Appointed DIEGO ARMANDO SOTO for JANE DOE, DIEGO ARMANDO SOTO for AV SCHWANDES, DIEGO ARMANDO SOTO for KATIE WOOD). Signed by CHIEF JUDGE MARK E WALKER on 12/13/2023. (rcb) (Entered: 12/13/2023) |
| 12/14/2023 | 4 | Summons Issued as to All Defendants. (rcb) (Entered: 12/14/2023) |
| 12/14/2023 | 5 | DOCKET ANNOTATION BY COURT: Re 1 Complaint filed by SAMUEL BOYD. Party names (including aliases) are to be added using all caps and no punctuation. (See "StyleGuide for Electronic Case Filing," available on Clerk's website.) The party nameswill be corrected by the clerk. Further, counsel is advised by this entry, that aCivil Cover Sheet must be filed as a separate entry using the event selection"Civil Cover Sheet" which is found under "Other Filings" under "OtherDocuments". PLEASE RE-FILE THE CIVIL COVER SHEET. (rcb) (Entered: 12/14/2023) |
| 12/14/2023 | 6 | MOTION to Appear Pro Hac Vice by Jessica L. Stone.( Filing fee $ 219 receipt number AFLNDC-8399149.) by JANE DOE, AV SCHWANDES, KATIE WOOD. (Attachments: # 1 Certificate of Good Standing) (STONE, JESSICA) (Entered: 12/14/2023) |
| 12/14/2023 | 7 | CIVIL COVER SHEET. (BOYD, SAMUEL) (Entered: 12/14/2023) |
| 12/14/2023 | 8 | ORDER ADMITTING JESSICA L. STONE PRO HAC VICE. The 6 motion is GRANTED. Signed by CHIEF JUDGE MARK E WALKER on 12/14/2023. (rcb) (Entered: 12/14/2023) |
| 12/21/2023 | 9 | MOTION to Appear Pro Hac Vice by Aaron Fleisher.( Filing fee $ 219 receipt number AFLNDC-8409888.) by KATIE WOOD. (Attachments: # 1 Certificate of Good Standing) (FLEISHER, AARON) (Entered: 12/21/2023) |
| 12/21/2023 | 10 | ORDER ADMITTING AARON S. FLEISHER PRO HAC VICE. The 9 motion is GRANTED. (Appointed AARON SAUL FLEISHER for AV SCHWANDES, AARON |

| | | |
|---|---|---|
| | | SAUL FLEISHER for KATIE WOOD). Signed by CHIEF JUDGE MARK E WALKER on 12/21/2023. (rcb) (Entered: 12/21/2023) |
| 12/21/2023 | 11 | MOTION for Preliminary Injunction *and Memorandum of Law* by KATIE WOOD. (Attachments: # 1 Exhibit 1, Declaration of Katie Wood) (BOYD, SAMUEL) (Entered: 12/21/2023) |
| 12/21/2023 | 12 | MOTION *for Leave to Proceed Under Pseudonym* by JANE DOE. (Attachments: # 1 Affidavit Declaration of Jane Doe) (RABEN, CARLI) (Attachment 1 replaced on 1/5/2024) (baf). (Entered: 12/21/2023) |
| 12/21/2023 | | Set/Reset Deadlines as to 11 MOTION for Preliminary Injunction *and Memorandum of Law*, 12 MOTION *for Leave to Proceed Under Pseudonym*. (Internal deadline for referral to judge if response not filed earlier: **1/4/2024**). (rcb) (Entered: 12/22/2023) |
| 12/22/2023 | 13 | ORDER SETTING CONFERENCE SCHEDULE. Plaintiffs shall serve Defendants with a copy of this Order, the Complaint, the Motion for Preliminary Injunction, and the Motion to Proceed Under a Pseudonym before noon, 12:00 p.m. (ET) on Thursday, **1/4/2024**, so the parties can confer prior to the scheduling conference. The Clerk shall set this matter for a telephonic scheduling conference on Friday, **1/5/2024 11:00 AM** in U.S. Courthouse Tallahassee before CHIEF JUDGE MARK E WALKER. Signed by CHIEF JUDGE MARK E WALKER on 12/22/2023. (rcb) (Entered: 12/22/2023) |
| 12/23/2023 | 14 | WAIVER OF SERVICE Returned Executed by JANE DOE, AV SCHWANDES, KATIE WOOD. AADIL AMEERALLY waiver sent on 12/14/2023, answer due 2/12/2024; JARED BARR waiver sent on 12/14/2023, answer due 2/12/2024; MONESIA BROWN waiver sent on 12/14/2023, answer due 2/12/2024; MICHAEL BUTCHER waiver sent on 12/14/2023, answer due 2/12/2024; ESTHER BYRD waiver sent on 12/14/2023, answer due 2/12/2024; GRAZIE P CHRISTIE waiver sent on 12/14/2023, answer due 2/12/2024; ELAYNE COLON waiver sent on 12/14/2023, answer due 2/12/2024; COMMISSIONER OF EDUCATION waiver sent on 12/14/2023, answer due 2/12/2024; ANN COPENHAVER waiver sent on 12/14/2023, answer due 2/12/2024; EDUCATION PRACTICES COMMISSION waiver sent on 12/14/2023, answer due 2/12/2024; FLORIDA DEPARTMENT OF EDUCATION waiver sent on 12/14/2023, answer due 2/12/2024; KELLY GARCIA waiver sent on 12/14/2023, answer due 2/12/2024; BENJAMIN GIBSON waiver sent on 12/14/2023, answer due 2/12/2024; JOSEPH GOODWIN waiver sent on 12/14/2023, answer due 2/12/2024; BENJAMIN HENRY waiver sent on 12/14/2023, answer due 2/12/2024; TIMOTHY HOLLEY waiver sent on 12/14/2023, answer due 2/12/2024; LISA INNERST waiver sent on 12/14/2023, answer due 2/12/2024; JEFFREY JOHNSON waiver sent on 12/14/2023, answer due 2/12/2024; KENNETH LAPEE waiver sent on 12/14/2023, answer due 2/12/2024; MASON LEWIS waiver sent on 12/14/2023, answer due 2/12/2024; MARYLYNN MAGAR waiver sent on 12/14/2023, answer due 2/12/2024; SALLIE MURPHY waiver sent on 12/14/2023, answer due 2/12/2024; RYAN PETTY waiver sent on 12/14/2023, answer due 2/12/2024; CHRISTINE PLAZA waiver sent on 12/14/2023, answer due 2/12/2024; KEVIN ROWE waiver sent on 12/14/2023, answer due 2/12/2024; CHARLES SHAW waiver sent on 12/14/2023, answer due 2/12/2024; ORENTHYA SLOAN waiver sent on 12/14/2023, answer due 2/12/2024; MARC SNYDER waiver sent on 12/14/2023, answer due 2/12/2024; STATE BOARD OF EDUCATION waiver sent on 12/14/2023, answer due 2/12/2024; MALCOLM THOMAS waiver sent on 12/14/2023, answer due 2/12/2024; JORDAN TOMPKINS waiver sent on 12/14/2023, answer due 2/12/2024; KATHY WILKS waiver sent on 12/14/2023, answer due 2/12/2024. (SOTO, DIEGO) (Entered: 12/23/2023) |
| 12/23/2023 | 15 | WAIVER OF SERVICE Returned Executed by JANE DOE, AV SCHWANDES, KATIE WOOD. FLORIDA VIRTUAL SCHOOL BOARD OF TRUSTEES waiver sent on |

| | | |
|---|---|---|
| | | 12/14/2023, answer due 2/12/2024. (SOTO, DIEGO) (Entered: 12/23/2023) |
| 12/23/2023 | 16 | SUMMONS Returned Executed by JANE DOE, AV SCHWANDES, KATIE WOOD. LEE COUNTY SCHOOL BOARD served on 12/21/2023, answer due 1/11/2024. (SOTO, DIEGO) (Entered: 12/23/2023) |
| 12/27/2023 | 17 | MOTION to Appear Pro Hac Vice by James Baltzer.( Filing fee $ 219 receipt number AFLNDC-8418885.) by JANE DOE, AV SCHWANDES, KATIE WOOD. (Attachments: # 1 Certificate of Standing) (BALTZER, JAMES) (Entered: 12/27/2023) |
| 12/27/2023 | 18 | MOTION to Appear Pro Hac Vice by James Finberg.( Filing fee $ 219 receipt number AFLNDC-8418886.) by JANE DOE, AV SCHWANDES, KATIE WOOD. (Attachments: # 1 Certificate of Standing) (FINBERG, JAMES) (Entered: 12/27/2023) |
| 12/28/2023 | 19 | ORDER ADMITTING JAMES BALTZER PRO HAC VICE - This Court has considered, without hearing, the motion to admit James Baltzer pro hac vice. ECF No. 17 . The motion is GRANTED. Signed by CHIEF JUDGE MARK E WALKER on 12/28/2023. (baf) (Entered: 12/28/2023) |
| 12/28/2023 | 20 | ORDER ADMITTING JAMES M. FINBERG PRO HAC VICE - This Court has considered, without hearing, the motion to admit James M. Finberg pro hac vice. ECF No. 18 . The motion is GRANTED. Signed by CHIEF JUDGE MARK E WALKER on 12/28/2023. (baf) (Entered: 12/28/2023) |
| 12/28/2023 | 21 | WAIVER OF SERVICE Returned Executed by HILLSBOROUGH COUNTY SCHOOL BOARD. HILLSBOROUGH COUNTY SCHOOL BOARD waiver sent on 12/14/2023, answer due 2/12/2024. (MARGOLIN, JASON) (Entered: 12/28/2023) |
| 01/03/2024 | 22 | MOTION to Appear Pro Hac Vice by Bryan K. Weir.( Filing fee $ 219 receipt number AFLNDC-8423071.) by AADIL AMEERALLY, JARED BARR, ANA ARMBRISTER BLAND, MONESIA BROWN, MICHAEL BUTCHER, ESTHER BYRD, YVONNE CALDWELL, GRAZIE P CHRISTIE, ELAYNE COLON, COMMISSIONER OF EDUCATION, ANN COPENHAVER, EDUCATION PRACTICES COMMISSION, FLORIDA DEPARTMENT OF EDUCATION, KELLY GARCIA, BENJAMIN GIBSON, JOSEPH GOODWIN, BENJAMIN HENRY, TIMOTHY HOLLEY, LISA INNERST, JEFFREY JOHNSON, KENNETH LAPEE, MASON LEWIS, MARYLYNN MAGAR, SALLIE MURPHY, RYAN PETTY, CHRISTINE PLAZA, KEVIN ROWE, CHARLES SHAW, ORENTHYA SLOAN, MARC SNYDER, STATE BOARD OF EDUCATION, MALCOLM THOMAS, JORDAN TOMPKINS, KATHY WILKS. (Attachments: # 1 Exhibit VA Bar Certificate of Good Standing) (WEIR, BRYAN) (Entered: 01/03/2024) |
| 01/03/2024 | 23 | MOTION to Appear Pro Hac Vice by Daniel M. Vitagliano.( Filing fee $ 219 receipt number AFLNDC-8423230.) by AADIL AMEERALLY, JARED BARR, ANA ARMBRISTER BLAND, MONESIA BROWN, MICHAEL BUTCHER, ESTHER BYRD, YVONNE CALDWELL, GRAZIE P CHRISTIE, ELAYNE COLON, COMMISSIONER OF EDUCATION, ANN COPENHAVER, EDUCATION PRACTICES COMMISSION, FLORIDA DEPARTMENT OF EDUCATION, KELLY GARCIA, BENJAMIN GIBSON, JOSEPH GOODWIN, BENJAMIN HENRY, TIMOTHY HOLLEY, LISA INNERST, JEFFREY JOHNSON, KENNETH LAPEE, MASON LEWIS, MARYLYNN MAGAR, SALLIE MURPHY, RYAN PETTY, CHRISTINE PLAZA, KEVIN ROWE, CHARLES SHAW, ORENTHYA SLOAN, MARC SNYDER, STATE BOARD OF EDUCATION, MALCOLM THOMAS, JORDAN TOMPKINS, KATHY WILKS. (Attachments: # 1 Exhibit NY Bar Certificate of Good Standing) (VITAGLIANO, DANIEL) (Entered: 01/03/2024) |
| 01/03/2024 | 24 | ORDER ADMITTING DANIEL VITAGLIANO PRO HAC VICE - This Court has considered, without hearing, the motion to admit Daniel Vitagliano pro hac vice. ECF No. 23 . The motion is GRANTED. Having fulfilled the requirements of the Local Rules for |

| | | |
|---|---|---|
| | | admission, Daniel Vitagliano is admitted pro hac vice as counsel for Defendants. Signed by CHIEF JUDGE MARK E WALKER on 1/3/2024. (baf) (Entered: 01/03/2024) |
| 01/03/2024 | 25 | ORDER ADMITTING BRYAN WEIR PRO HAC VICE - This Court has considered, without hearing, the motion to admit Bryan Weir pro hac vice. ECF No. 22 . The motion is GRANTED. Having fulfilled the requirements of the Local Rules for admission, Bryan Weir is admitted pro hac vice as counsel for Defendants. Signed by CHIEF JUDGE MARK E WALKER on 1/3/2024. (baf) (Entered: 01/03/2024) |
| 01/03/2024 | 26 | NOTICE of Appearance by DANIEL JOSEPH SHAPIRO on behalf of AADIL AMEERALLY, JARED BARR, ANA ARMBRISTER BLAND, MONESIA BROWN, MICHAEL BUTCHER, ESTHER BYRD, YVONNE CALDWELL, GRAZIE P CHRISTIE, ELAYNE COLON, COMMISSIONER OF EDUCATION, ANN COPENHAVER, EDUCATION PRACTICES COMMISSION, FLORIDA DEPARTMENT OF EDUCATION, KELLY GARCIA, BENJAMIN GIBSON, JOSEPH GOODWIN, BENJAMIN HENRY, TIMOTHY HOLLEY, LISA INNERST, JEFFREY JOHNSON, KENNETH LAPEE, MASON LEWIS, MARYLYNN MAGAR, SALLIE MURPHY, RYAN PETTY, CHRISTINE PLAZA, KEVIN ROWE, CHARLES SHAW, ORENTHYA SLOAN, MARC SNYDER, STATE BOARD OF EDUCATION, MALCOLM THOMAS, JORDAN TOMPKINS, KATHY WILKS (SHAPIRO, DANIEL) (Entered: 01/03/2024) |
| 01/03/2024 | 27 | NOTICE OF TELEPHONIC HEARING: Telephonic Scheduling Conference set for **1/5/2024 11:00 AM** Tallahassee before CHIEF JUDGE MARK E WALKER. ALL PARTIES are directed to call the AT&T Conference Line (see below) Conference Call Information You may dial into the conference call up to five minutes before start time. Call in number: **888-684-8852** When prompted for an access code, enter: **3853136#** If you are asked to join as the host, just ignore and wait until you are asked for a security code. When asked for a security code, enter: **4565#** Say your name, when prompted. You are now in the conference call. Remember to mute your phone when you are not speaking. **The Court asks that counsel NOT use cell phones or speaker phones** during the call as the quality of the audio connection is compromised by these devices. s/ Victoria Milton McGee Courtroom Deputy Clerk (vkm) (Entered: 01/03/2024) |
| 01/04/2024 | 28 | NOTICE of Appearance by JASON LEE MARGOLIN on behalf of HILLSBOROUGH COUNTY SCHOOL BOARD (MARGOLIN, JASON) (Entered: 01/04/2024) |
| 01/04/2024 | 29 | NOTICE of Appearance by JAMES DONALD FOX on behalf of LEE COUNTY SCHOOL BOARD (FOX, JAMES) (Entered: 01/04/2024) |
| 01/04/2024 | 30 | REPORT *on the Parties' Meet-and-Confer with Proposed Briefing Schedule* Regarding 11 MOTION for Preliminary Injunction and Memorandum of Law by AADIL AMEERALLY, JARED BARR, ANA ARMBRISTER BLAND, MONESIA BROWN, MICHAEL BUTCHER, ESTHER BYRD, YVONNE CALDWELL, GRAZIE P CHRISTIE, ELAYNE COLON, COMMISSIONER OF EDUCATION, ANN COPENHAVER, EDUCATION PRACTICES COMMISSION, FLORIDA DEPARTMENT OF EDUCATION, KELLY GARCIA, BENJAMIN GIBSON, JOSEPH GOODWIN, BENJAMIN HENRY, TIMOTHY HOLLEY, LISA INNERST, JEFFREY JOHNSON, KENNETH LAPEE, MASON LEWIS, MARYLYNN MAGAR, SALLIE MURPHY, RYAN PETTY, CHRISTINE PLAZA, KEVIN ROWE, CHARLES SHAW, ORENTHYA SLOAN, MARC SNYDER, STATE BOARD OF EDUCATION, |

| | | MALCOLM THOMAS, JORDAN TOMPKINS, KATHY WILKS. (WEIR, BRYAN) Modified to edit title on 1/5/2024 (baf). (Entered: 01/04/2024) |
|---|---|---|
| 01/05/2024 | 31 | INITIAL SCHEDULING ORDER - Fed.R.Civ.P. 7.1 Corporate Disclosure Statement Deadline set for **1/19/2024**. Rule 26 Meeting Report due by **2/20/2024**. Discovery due by **5/3/2024**. Status Report due by **2/4/2024**. Signed by CHIEF JUDGE MARK E WALKER on 1/5/2024. (baf) (Entered: 01/05/2024) |
| 01/05/2024 | 32 | Minute Entry for proceedings held before CHIEF JUDGE MARK E WALKER: Telephonic Scheduling Conference held on 1/5/2024. Parties discuss casestatus and schedule for 11 Motion for Preliminary Injunction. Court adopts parties' proposed schedule in 30 Report. Defendants' motion to dismiss due **2/12/2024**. Response due **2/26/2024**; Reply, if any, due 3/11/2024. Response to 11 Motion and any declarations from defendants due **2/2/2024**. Reply and plaintiffs' declarations due **2/26/2024**. Response to 12 Motion for Leave to Proceed Under Pseudonym due **1/9/2024**. Court will permit remote witnesses, if necessary. Preliminary injunction hearing set for **3/29/2024 08:30 AM** in U.S. Courthouse Tallahassee before CHIEF JUDGE MARK E WALKER. Order to follow (Court Reporter Megan Hague (USDC-Tallahassee)). (vkm) (Entered: 01/05/2024) |
| 01/05/2024 | 33 | NOTICE OF HEARING RE: 11 MOTION for Preliminary Injunction and Memorandum of Law: Preliminary Injunction Hearing set for **3/29/2024 08:30 AM** ie before CHIEF JUDGE MARK E WALKER. Joseph Woodrow Hatchett United States Courthouse and Federal Building, **Courtroom 5 West,** 111 North Adams St., Tallahassee, Florida 32301. NOTE: If you or any party, witness or attorney in this matter has a disability that requires special accommodation, such as, a hearing impairment that requires a sign language interpreter or a wheelchair restriction that requires ramp access, please contact Victoria Milton McGee at 850-521-3510 in the Clerk's Office at least one week prior to the hearing (or as soon as possible) so arrangements can be made. <u>s/ Victoria Milton McGee</u> Courtroom Deputy Clerk (vkm) (Entered: 01/05/2024) |
| 01/05/2024 | 34 | ORDER SETTING BRIEFING SCHEDULE - Defendants' responses in opposition to the motion for preliminary injunction, and declarations in support thereof are due on or before **2/2/2024**. Defendants' motions to dismiss or other responsive pleadings are due on or before **2/12/2024**. Plaintiff Wood's reply brief and any rebuttal declarations in support of the motion for preliminary injunction and all of the Plaintiffs' responses to any motions to dismiss are due on or before **2/26/2024**. Defendants' reply briefs in support of their motions to dismiss are due on or before **3/11/2024**. An in-person hearing on Plaintiff Wood's motion for preliminary injunction is set for Friday, **3/29/2024 at 08:30 AM** (ET). Finally, Defendants' response, if any, to Plaintiff Doe's motion for leave to proceed under a pseudonym, ECF No. 12 , is due on or before **1/9/2024**, absent any request for extension. Signed by CHIEF JUDGE MARK E WALKER on 1/5/2024. (baf) (Entered: 01/05/2024) |
| 01/09/2024 | 35 | NOTICE of Appearance by JOHN DAVID MARSEY on behalf of FLORIDA VIRTUAL SCHOOL BOARD OF TRUSTEES (MARSEY, JOHN) (Entered: 01/09/2024) |
| 01/09/2024 | 36 | RESPONSE TO PLAINTIFF DOE'S MOTION FOR LEAVE TO PROCEED UNDER A PSEUDONYM. (WEIR, BRYAN) Modified to edit title on 1/10/2024 (rcb). (Entered: 01/09/2024) |
| 01/09/2024 | 37 | DEFENDANT LEE COUNTY SCHOOL BOARD'S UNOPPOSED MOTION FOR EXTENSION OF TIME TO RESPOND TO PLAINTIFF JANE DOE'S MOTION FOR LEAVE TO PROCEED UNDER PSEUDONYM. (FOX, JAMES) Modified to edit title on 1/10/2024 (rcb). (Entered: 01/09/2024) |

| 01/10/2024 | 38 | ORDER GRANTING 37 EXTENSION. The motion is GRANTED. Defendant's deadline to respond to the motion is extended to on or before Friday, **1/19/2024**. Signed by CHIEF JUDGE MARK E WALKER on 1/10/2024. (rcb) (Entered: 01/10/2024) |
| --- | --- | --- |
| 01/19/2024 | 39 | RESPONSE TO PLAINTIFF JANE DOES MOTION FOR LEAVE TO PROCEED UNDER A PSEUDONYM. (FOX, JAMES) Modified to edit title/terminate event type-this is not a motion on 1/22/2024 (rcb). (Entered: 01/19/2024) |
| 01/22/2024 | 40 | ORDER GRANTING 12 MOTION FOR LEAVE TO PROCEED UNDER PSEUDONYM. Accordingly, having considered the appropriate factors, and, without opposition from Defendants, Plaintiff Does motion, ECF No. 12 , is GRANTED. Signed by CHIEF JUDGE MARK E WALKER on 1/22/2024. (rcb) (Entered: 01/22/2024) |
| 01/23/2024 | 41 | NOTICE of Appearance by NEEMA MATHEW MONFARED on behalf of HILLSBOROUGH COUNTY SCHOOL BOARD (MONFARED, NEEMA) (Entered: 01/23/2024) |
| 01/24/2024 | 42 | DEFENDANTS' JOINT MOTION TO STAY DISCOVERY. (Attachments: # 1 Exhibit Exhibit A) (WEIR, BRYAN) Modified to edit title on 1/25/2024 (rcb). (Entered: 01/24/2024) |
| 01/24/2024 | | Set/Reset Deadlines as to 42 DEFENDANTS' JOINT MOTION TO STAY DISCOVERY. (Internal deadline for referral to judge if response not filed earlier: **2/7/2024**). (rcb) (Entered: 01/25/2024) |
| 01/29/2024 | 43 | First MOTION for Preliminary Injunction by AV SCHWANDES. (Attachments: # 1 Exhibit 1, Declaration of AV Schwandes) (BOYD, SAMUEL) (Entered: 01/29/2024) |
| 01/30/2024 | | Set/Reset Deadlines as to 43 First MOTION for Preliminary Injunction . (Internal deadline for referral to judge if response not filed earlier: **2/13/2024**). (rcb) (Entered: 01/30/2024) |
| 01/30/2024 | 44 | ORDER SETTING SCHEDULING CONFERENCE. The Clerk shall set this matter for a telephonic scheduling conference on Thursday, **2/1/2024 01:00 PM (ET)** . Signed by CHIEF JUDGE MARK E WALKER on 1/30/2024. (rcb) (Entered: 01/30/2024) |
| 01/30/2024 | 45 | Amended MOTION for Preliminary Injunction by AV SCHWANDES. (Attachments: # 1 Exhibit 1, Declaration of AV Schwandes) (BOYD, SAMUEL) (Entered: 01/30/2024) |
| 01/30/2024 | 46 | NOTICE OF TELEPHONIC HEARING: Telephonic Scheduling Conference set for **2/1/2024 01:00 PM** before CHIEF JUDGE MARK E WALKER. ALL PARTIES are directed to call the AT&T Conference Line (see below) Conference Call Information You may dial into the conference call up to five minutes before start time. Call in number: **888-684-8852** When prompted for an access code, enter: **3853136#** If you are asked to join as the host, just ignore and wait until you are asked for a security code. When asked for a security code, enter: **4565#** Say your name, when prompted. You are now in the conference call. Remember to mute your phone when you are not speaking. **The Court asks that counsel NOT use cell phones or speaker phones** during the call as the quality of the audio connection is compromised by these devices. s/ Victoria Milton McGee Courtroom Deputy Clerk (vkm) (Entered: 01/30/2024) |

| 01/30/2024 | 47 | ORDER DENYING 43 MOTION AS MOOT. Inasmuch as the amended motion supersedes Plaintiff Schwandes's original motion, the original motion for preliminary injunction, ECF No. 43 , is DENIED as moot. Signed by CHIEF JUDGE MARK E WALKER on 1/30/2024. (rcb) (Entered: 01/30/2024) |
|---|---|---|
| 01/31/2024 | 48 | REPORT ON THE PARTIES' MEET-AND-CONFER REGARDING PLAINTIFF SCHWANDES'S MOTION FOR PRELIMINARY INJUNCTION. (WEIR, BRYAN) Modified to edit title on 2/1/2024 (rcb). (Entered: 01/31/2024) |
| 02/01/2024 | 49 | ORDER AMENDING BRIEFING SCHEDULE - Based on the agreement of the parties, this Court adopts the parties' joint amended proposed schedule, ECF No. 48 , as discussed on the record at the telephonic scheduling conference on February 1, 2024. The State Defendants' consolidated responses in opposition to both pending motions for preliminary injunction, declarations in support thereof, and the Hillsborough Defendant's opposition to Plaintiff Woods motion for preliminary injunction and any declarations in support thereof are due on or before **2/8/2024**. Defendants' motions to dismiss remain due on or before **2/12/2024**. Plaintiff Woods and Plaintiff Schwandes's consolidated reply brief and any rebuttal declarations in support of their motions for preliminary injunction are due on or before **3/4/2024**. Plaintiffs' responses to Defendants' motions to dismiss remain due on or before **2/26/2024**. Finally, Defendants' reply briefs in support of their motions to dismiss are due on or before **3/11/2024**. An in-person hearing on both Plaintiffs' motions for preliminary injunction remains set for Friday, March 29, 2024, at 8:30 a.m. (ET). Signed by CHIEF JUDGE MARK E WALKER on 2/1/2024. (baf) (Entered: 02/01/2024) |
| 02/01/2024 | 51 | Minute Entry for proceedings held before CHIEF JUDGE MARK E WALKER: Telephonic Scheduling Conference held on 2/1/2024. Parties discuss case status and schedule for 45 AMD Motion for Preliminary Injunction. Court adopts parties' proposed schedule in 48 Report and waives word limit on parties' responses/replies. Preliminary injunction hearing set for 8:30 am on 3/29/24. Order to follow (Court Reporter Megan Hague (USDC-Tallahassee)). (vkm) (Entered: 02/02/2024) |
| 02/01/2024 | 52 | NOTICE OF HEARING RE: 11 & 45 MOTIONS for Preliminary Injunction: Preliminary Injunction Hearing set for **3/29/2024 08:30 AM** before CHIEF JUDGE MARK E WALKER. Joseph Woodrow Hatchett United States Courthouse and Federal Building, **Courtroom 5 West,** 111 North Adams St., Tallahassee, Florida 32301.<br><br>NOTE: If you or any party, witness or attorney in this matter has a disability that requires special accommodation, such as, a hearing impairment that requires a sign language interpreter or a wheelchair restriction that requires ramp access, please contact Victoria Milton McGee at 850-521-3510 in the Clerk's Office at least one week prior to the hearing (or as soon as possible) so arrangements can be made.<br><br>s/ Victoria Milton McGee<br>Courtroom Deputy Clerk (vkm) (Entered: 02/02/2024) |
| 02/02/2024 | 50 | NOTICE of Appearance by MIKALA ANN MAKAR on behalf of LEE COUNTY SCHOOL BOARD (MAKAR, MIKALA) (Entered: 02/02/2024) |
| 02/05/2024 | | ACTION REQUIRED BY DISTRICT JUDGE: Chambers of CHIEF JUDGE MARK E WALKER notified that action is needed Re: 31 Initial Scheduling Order. (rcb)**STATUS REPORT NOT FILED BY 2/4/2024** (Entered: 02/05/2024) |
| 02/05/2024 | 53 | REPORT of Rule 26(f) Planning Meeting. (SOTO, DIEGO) (Entered: 02/05/2024) |
| 02/05/2024 | 54 | STATUS REPORT *on Discovery* by AADIL AMEERALLY, JARED BARR, ANA ARMBRISTER BLAND, MONESIA BROWN, MICHAEL BUTCHER, ESTHER BYRD, YVONNE CALDWELL, GRAZIE P CHRISTIE, ELAYNE COLON, |

| | | |
|---|---|---|
| | | COMMISSIONER OF EDUCATION, ANN COPENHAVER, EDUCATION PRACTICES COMMISSION, FLORIDA DEPARTMENT OF EDUCATION, KELLY GARCIA, BENJAMIN GIBSON, JOSEPH GOODWIN, BENJAMIN HENRY, TIMOTHY HOLLEY, LISA INNERST, JEFFREY JOHNSON, KENNETH LAPEE, MASON LEWIS, MARYLYNN MAGAR, SALLIE MURPHY, RYAN PETTY, CHRISTINE PLAZA, KEVIN ROWE, CHARLES SHAW, ORENTHYA SLOAN, MARC SNYDER, STATE BOARD OF EDUCATION, MALCOLM THOMAS, JORDAN TOMPKINS, KATHY WILKS. (WEIR, BRYAN) (Entered: 02/05/2024) |
| 02/05/2024 | 55 | FIRST AMENDED COMPLAINT (UNSIGNED) against AADIL AMEERALLY, JARED BARR, MONESIA BROWN, MICHAEL BUTCHER, ESTHER BYRD, GRAZIE P CHRISTIE, ELAYNE COLON, COMMISSIONER OF EDUCATION, ANN COPENHAVER, EDUCATION PRACTICES COMMISSION, FLORIDA DEPARTMENT OF EDUCATION, FLORIDA VIRTUAL SCHOOL BOARD OF TRUSTEES, KELLY GARCIA, BENJAMIN GIBSON, JOSEPH GOODWIN, BENJAMIN HENRY, HILLSBOROUGH COUNTY SCHOOL BOARD, TIMOTHY HOLLEY, LISA INNERST, JEFFREY JOHNSON, KENNETH LAPEE, LEE COUNTY SCHOOL BOARD, MASON LEWIS, MARYLYNN MAGAR, SALLIE MURPHY, RYAN PETTY, CHRISTINE PLAZA, KEVIN ROWE, CHARLES SHAW, ORENTHYA SLOAN, MARC SNYDER, STATE BOARD OF EDUCATION, MALCOLM THOMAS, JORDAN TOMPKINS, KATHY WILKS, filed by JANE DOE, AV SCHWANDES, KATIE WOOD. (BOYD, SAMUEL) Modified on 2/6/2024 (rcb). (Entered: 02/05/2024) |
| 02/06/2024 | | ACTION REQUIRED BY DISTRICT JUDGE: Chambers of CHIEF JUDGE MARK E WALKER notified that action is needed Re: 53 REPORT of Rule 26(f) Planning Meeting. (rcb) (Entered: 02/06/2024) |
| 02/06/2024 | 56 | FIRST AMENDED COMPLAINT *(SIGNATURE LINE CORRECTED)* against AADIL AMEERALLY, JARED BARR, MONESIA BROWN, MICHAEL BUTCHER, ESTHER BYRD, GRAZIE P CHRISTIE, ELAYNE COLON, COMMISSIONER OF EDUCATION, ANN COPENHAVER, EDUCATION PRACTICES COMMISSION, FLORIDA DEPARTMENT OF EDUCATION, FLORIDA VIRTUAL SCHOOL BOARD OF TRUSTEES, KELLY GARCIA, BENJAMIN GIBSON, JOSEPH GOODWIN, BENJAMIN HENRY, HILLSBOROUGH COUNTY SCHOOL BOARD, TIMOTHY HOLLEY, LISA INNERST, JEFFREY JOHNSON, KENNETH LAPEE, LEE COUNTY SCHOOL BOARD, MASON LEWIS, MARYLYNN MAGAR, SALLIE MURPHY, RYAN PETTY, CHRISTINE PLAZA, KEVIN ROWE, CHARLES SHAW, ORENTHYA SLOAN, MARC SNYDER, STATE BOARD OF EDUCATION, MALCOLM THOMAS, JORDAN TOMPKINS, KATHY WILKS, filed by JANE DOE, AV SCHWANDES, KATIE WOOD. (BOYD, SAMUEL) (Entered: 02/06/2024) |
| 02/06/2024 | 57 | SCHEDULING AND MEDIATION ORDER. The discovery deadline by **9/16/2024**. Dispositive Motions to be filed by **10/7/2024**. The jury trial is set for the trial period that begins on Tuesday, **2/18/2025 08:15 AM** in U.S. Courthouse Tallahassee before CHIEF JUDGE MARK E WALKER. Mediation to take place by **10/15/2024**. Mediation Report due by **10/29/2024**. Case referred to mediation. Signed by CHIEF JUDGE MARK E WALKER on 2/6/2024. (rcb) (Entered: 02/06/2024) |
| 02/07/2024 | 58 | RESPONSE in Opposition re 42 MOTION to Stay *Discovery* filed by JANE DOE, AV SCHWANDES, KATIE WOOD. (RABEN, CARLI) (Entered: 02/07/2024) |
| 02/08/2024 | 59 | ORDER DENYING 42 MOTION TO STAY DISCOVERY. Accordingly, Defendants' motion, ECF No. 42 , is DENIED. Signed by CHIEF JUDGE MARK E WALKER on 2/8/2024. (rcb) (Entered: 02/08/2024) |
| 02/08/2024 | 60 | STATE DEFENDANTS' CONSOLIDATED RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTIONS FOR PRELIMINARY INJUNCTION (WEIR, BRYAN) |

| | | Modified to edit title on 2/9/2024 (rcb). (Entered: 02/08/2024) |
|---|---|---|
| 02/08/2024 | 61 | SCHOOL BOARD OF HILLSBOROUGH COUNTY, FLORIDA'S RESPONSE TO AND NOTICE OF JOINING STATE DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFF KATIE WOOD'S MOTION FOR PRELIMINARY INJUNCTION. (MARGOLIN, JASON) Modified to edit title on 2/9/2024 (rcb). (Entered: 02/08/2024) |
| 02/12/2024 | | ACTION REQUIRED BY DISTRICT JUDGE: Chambers of CHIEF JUDGE MARK E WALKER notified that action is no longer needed Re: 14 , 21 & 49 ** **INCORRECT REFERRAL MADE**. (rcb) (Entered: 02/12/2024) |
| 02/12/2024 | 62 | SCHOOL BOARD OF HILLSBOROUGH COUNTY, FLORIDA'S MOTION TO DISMISS PLAINTIFFS AMENDED COMPLAINT. (Internal deadline for referral to judge if response not filed earlier: **2/26/2024**). (MARGOLIN, JASON) Modified to edit title on 2/13/2024 (rcb). (Entered: 02/12/2024) |
| 02/12/2024 | 63 | STATE DEFENDANTS MOTION TO DISMISS. (Attachments: # 1 Exhibit Memorandum of Law in Support of Motion to Dismiss) (WEIR, BRYAN) Modified to edit title on 2/13/2024 (rcb). (Entered: 02/12/2024) |
| 02/13/2024 | | Set Deadline as to 63 STATE DEFENDANTS' MOTION TO DISMISS (Internal deadline for referral to judge if response not filed earlier: **2/27/2024**). (rcb) (Entered: 02/13/2024) |
| 02/19/2024 | 64 | DEFENDANT FLORIDA VIRTUAL SCHOOL BOARD OF TRUSTEES' PARTIAL MOTION TO DISMISS THE AMENDED COMPLAINT AND MEMORANDUM OF LAW. (MARSEY, JOHN) Modified to edit title on 2/20/2024 (rcb). (Entered: 02/19/2024) |
| 02/20/2024 | | Set/Reset Deadlines as to 64 DEFENDANT FLORIDA VIRTUAL SCHOOL BOARD OF TRUSTEES' PARTIAL MOTION TO DISMISS THE AMENDED COMPLAINT AND MEMORANDUM OF LAW. (Internal deadline for referral to judge if response not filed earlier: **3/5/2024**). (rcb) (Entered: 02/20/2024) |
| 02/21/2024 | 65 | LEE COUNTY SCHOOL BOARD'S MOTION TO DISMISS AMENDED COMPLAINT AND NOTICE OF JOINING STATE DEFENDANTS AND HILLSBOROUGH COUNTY'S MOTION TO DISMISS. (MAKAR, MIKALA) Modified to edit title on 2/22/2024 (rcb). (Entered: 02/21/2024) |
| 02/26/2024 | 66 | PLAINTIFF KATIE WOOD'S RESPONSE IN OPPOSITION TO DEFENDANT SCHOOL BOARD OF HILLSBOROUGH COUNTY, FLORIDA'S MOTION TO DISMISS FIRST AMENDED COMPLAINT. (RABEN, CARLI) Modified to edit title on 2/27/2024 (rcb). (Entered: 02/26/2024) |
| 02/26/2024 | 67 | PLAINTIFFS' RESPONSE IN OPPOSITION TO STATE DEFENDANTS' MOTION TO DISMISS. (RABEN, CARLI) Modified to edit title on 2/27/2024 (rcb). (Entered: 02/26/2024) |
| 03/04/2024 | 68 | PLAINTIFF AV SCHWANDES'S RESPONSE IN OPPOSITION TO DEFENDANT FLORIDA VIRTUAL SCHOOL BOARD OF TRUSTEES'S PARTIAL MOTION TO DISMISS FIRST AMENDED COMPLAINT. (RABEN, CARLI) Modified to edit title on 3/5/2024 (rcb). (Entered: 03/04/2024) |
| 03/04/2024 | 69 | PLAINTIFFS KATIE WOOD AND AV SCHWANDES'S REPLY IN SUPPORT OF THEIR MOTIONS FOR PRELIMINARY INJUNCTION. (FINBERG, JAMES) Modified to edit title on 3/5/2024 (rcb). (Entered: 03/04/2024) |
| 03/05/2024 | 70 | SECOND JOINT STATUS REPORT *on Discovery* by AADIL AMEERALLY, JARED BARR, MONESIA BROWN, MICHAEL BUTCHER, ESTHER BYRD, GRAZIE P CHRISTIE, ELAYNE COLON, COMMISSIONER OF EDUCATION, ANN COPENHAVER, EDUCATION PRACTICES COMMISSION, FLORIDA |

| | | DEPARTMENT OF EDUCATION, KELLY GARCIA, BENJAMIN GIBSON, JOSEPH GOODWIN, BENJAMIN HENRY, TIMOTHY HOLLEY, LISA INNERST, JEFFREY JOHNSON, KENNETH LAPEE, MASON LEWIS, MARYLYNN MAGAR, SALLIE MURPHY, RYAN PETTY, CHRISTINE PLAZA, KEVIN ROWE, CHARLES SHAW, ORENTHYA SLOAN, MARC SNYDER, STATE BOARD OF EDUCATION, MALCOLM THOMAS, JORDAN TOMPKINS, KATHY WILKS. (WEIR, BRYAN) Modified title on 3/6/2024 (baf). (Entered: 03/05/2024) |
|---|---|---|
| 03/05/2024 | | Set/Reset Deadlines: Status Report due by **4/4/2024**. (baf) (Entered: 03/06/2024) |
| 03/06/2024 | 71 | RESPONSE in Opposition re 65 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM filed by JANE DOE. (RABEN, CARLI) (Entered: 03/06/2024) |
| 03/11/2024 | 72 | SCHOOL BOARD OF HILLSBOROUGH COUNTY, FLORIDAS REPLY IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF WOODS AMENDED COMPLAINT. (MARGOLIN, JASON) Modified to edit title on 3/12/2024 (rcb). (Entered: 03/11/2024) |
| 03/11/2024 | 73 | STATE DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS (WEIR, BRYAN) Modified to edit title on 3/12/2024 (rcb). (Entered: 03/11/2024) |
| 03/20/2024 | 74 | DEFENDANT FLORIDA VIRTUAL SCHOOL BOARD OF TRUSTEES' NOTICE OF PARTIAL JOINDER IN STATE DEFENDANTS MOTION TO DISMISS AND REPLY . (MARSEY, JOHN) Modified to edit title on 3/20/2024 (rcb). (Entered: 03/20/2024) |
| 03/25/2024 | 75 | NOTICE RE: **3/29/2024 08:30 AM** PRELIMINARY INJUNCTION HEARING: <br><br>**INTERESTED PARTIES MAY OBSERVE THIS HEARING BY CALLING THE NUMBER BELOW. HEARING MUST NOT BE BROADCAST BY ANY MEANS.** <br><br>**PLEASE MUTE YOUR LINE** <br><br>You may dial into the conference call up to five minutes before start time. Call in number: **888-684-8852** When prompted for an access code, enter: **8131706#** If you are asked to join as the host, just ignore and wait until you are asked for a security code. When asked for a security code, enter: **0628#** You are now in the conference call. **Remember to mute your phone.** <br><br>**Callers to this line will be able to listen ONLY, not address the Court**. <br><br>s/ Victoria Milton McGee <br>Courtroom Deputy Clerk <br><br>(vkm) (Entered: 03/25/2024) |
| 03/29/2024 | 76 | Minute Entry for proceedings held before CHIEF JUDGE MARK E WALKER: Motion Hearing held on 3/29/2024. Court hears argument re: Defendants' 62 , 63 & 64 Motions to Dismiss and Plaintiffs' 11 & 45 Motions for Preliminary Injunction. by Court: Plaintiffs to supplement the record by **5:00 p.m. on 3/29/2024**. Order to follow (Court Reporter Megan Hague (USDC-Tallahassee)). (vkm) (Entered: 03/29/2024) |
| 03/29/2024 | 77 | NOTICE *of Filing to Supplement the Record* by JANE DOE, AV SCHWANDES, KATIE WOOD (Attachments: # 1 Exhibit Settlement Agreement) (CHRISS, SIMONE) (Entered: 03/29/2024) |
| 03/29/2024 | 78 | NOTICE *of Filing to Supplement the Record* by JANE DOE, AV SCHWANDES, KATIE WOOD (Attachments: # 1 Exhibit Settlement Agreement) (CHRISS, SIMONE) (Entered: 03/29/2024) |

| | | |
|---|---|---|
| 03/29/2024 | 79 | NOTICE *of Filing to Supplement the Record* by JANE DOE, AV SCHWANDES, KATIE WOOD (Attachments: # 1 Exhibit Settlement Agreement) (CHRISS, SIMONE) (Entered: 03/29/2024) |
| 03/29/2024 | 80 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT of Preliminary Injunction Proceedings held on 3/29/2024, before Judge Mark E. Walker. Court Reporter/Transcriber Megan A. Hague, Telephone number 850-443-9797.<br><br>    *Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.*<br><br>Redaction Request due **4/5/2024**. Release of Transcript Restriction set for **7/5/2024**. (mah) (Entered: 03/29/2024) |
| 04/05/2024 | 81 | THIRD JOINT STATUS REPORT ON DISCOVERY. (WEIR, BRYAN) Modified to edit title on 4/5/2024 (rcb). (Entered: 04/05/2024) |
| 04/05/2024 | | Set Deadline- Status Report due by **5/6/2024**. (rcb) (Entered: 04/05/2024) |
| 04/09/2024 | 82 | ORDER ON MOTIONS FOR PRELIMINARY INJUNCTION. Plaintiff Katie Wood's motion for a preliminary injunction, ECF No. 11 , is GRANTED in part and DENIED in part. Ms. Wood's motion for a preliminary injunction is GRANTED insofar as she is entitled to a preliminary injunction on her First Amendment claim. Ms. Wood's motion, ECF No. 11 , is otherwise DENIED. Plaintiff AV Schwandes's motion for a preliminary injunction, ECF No. 45 , is DENIED. Signed by CHIEF JUDGE MARK E WALKER on 4/9/2024. (kjw) (Entered: 04/09/2024) |
| 04/17/2024 | 83 | NOTICE *OF SUPPLEMENTAL AUTHORITY* by JANE DOE, AV SCHWANDES, KATIE WOOD re 71 Response in Opposition to Motion, 67 Response in Opposition to Motion (Attachments: # 1 Supplement Muldrow v. City of St. Louis, No. 22-193, Slip Op. (U.S. Apr. 17, 2024).) (BOYD, SAMUEL) (Entered: 04/17/2024) |
| 04/17/2024 | 84 | NOTICE OF INTERLOCUTORY APPEAL as to 82 Order on Motion for Preliminary Injunction,,,,, by AADIL AMEERALLY, JARED BARR, ANA ARMBRISTER BLAND, MONESIA BROWN, MICHAEL BUTCHER, ESTHER BYRD, YVONNE CALDWELL, GRAZIE P CHRISTIE, ELAYNE COLON, COMMISSIONER OF EDUCATION, ANN COPENHAVER, EDUCATION PRACTICES COMMISSION, FLORIDA DEPARTMENT OF EDUCATION, KELLY GARCIA, BENJAMIN GIBSON, JOSEPH GOODWIN, BENJAMIN HENRY, TIMOTHY HOLLEY, LISA INNERST, JEFFREY JOHNSON, KENNETH LAPEE, MASON LEWIS, MARYLYNN MAGAR, SALLIE MURPHY, RYAN PETTY, CHRISTINE PLAZA, KEVIN ROWE, CHARLES SHAW, ORENTHYA SLOAN, MARC SNYDER, STATE BOARD OF EDUCATION, MALCOLM THOMAS, JORDAN TOMPKINS, KATHY WILKS. Filing fee $ 605, receipt number AFLNDC-8771750. (WEIR, BRYAN) (Entered: 04/17/2024) |
| 04/18/2024 | 85 | **PLEASE DISREGARD THIS ENTRY**- NOTICE OF INTERLOCUTORY APPEAL as to 82 Modified to transmit ECF 84 on 4/23/2024 (rcb). Modified to transmit using correct event on 4/23/2024 (rcb). (Entered: 04/18/2024) |
| 04/18/2024 | 86 | Appeal Instructions re: 85 Notice of Interlocutory Appeal : The Transcript Request Form is available on the Internet at https://www.flnd.uscourts.gov/form/eleventh-circuit-transcript-information-form **PLEASE NOTE** Separate forms must be filed for each court reporter in both the district court and the appeals court. Transcript Order Form due by **5/2/2024**. (rcb) (Entered: 04/18/2024) |

| 04/18/2024 | | Set Deadlines re 85 Notice of Interlocutory Appeal. Clerk to check status of Appeal on **7/17/2024**. Certificate of Readiness (FRAP 11) due by **5/2/2024**. (rcb) (Entered: 04/18/2024) |
|---|---|---|
| 04/18/2024 | 87 | TRANSCRIPT REQUEST by AADIL AMEERALLY, JARED BARR, ANA ARMBRISTER BLAND, MONESIA BROWN, MICHAEL BUTCHER, ESTHER BYRD, YVONNE CALDWELL, GRAZIE P CHRISTIE, ELAYNE COLON, COMMISSIONER OF EDUCATION, ANN COPENHAVER, EDUCATION PRACTICES COMMISSION, FLORIDA DEPARTMENT OF EDUCATION, KELLY GARCIA, BENJAMIN GIBSON, JOSEPH GOODWIN, BENJAMIN HENRY, TIMOTHY HOLLEY, LISA INNERST, JEFFREY JOHNSON, KENNETH LAPEE, MASON LEWIS, MARYLYNN MAGAR, SALLIE MURPHY, RYAN PETTY, CHRISTINE PLAZA, KEVIN ROWE, CHARLES SHAW, ORENTHYA SLOAN, MARC SNYDER, STATE BOARD OF EDUCATION, MALCOLM THOMAS, JORDAN TOMPKINS, KATHY WILKS (WEIR, BRYAN) (Entered: 04/18/2024) |
| 04/19/2024 | 88 | ORDER ON FLORIDA VIRTUAL SCHOOL'S 64 MOTION TO DISMISS. As set out above, FLVS's motion to dismiss, ECF No. 64 , is GRANTED in part and DENIED in part. The motion is GRANTED insofar as Mx. Schwandes's claim for injunctive relief is DISMISSED without prejudice for lack of standing. The motion is otherwise DENIED. Signed by CHIEF JUDGE MARK E WALKER on 4/18/2024. (rcb) (Entered: 04/19/2024) |
| 04/19/2024 | 89 | ORDER ON HILLSBOROUGH COUNTY SCHOOL BOARD'S 62 MOTION TO DISMISS. Accordingly, for the reasons set out above, HCSBs motion to dismiss, ECF No. 62 , is DENIED. However, Ms. Woods Title VII and Title IX claims, Counts III and XIV, are DISMISSED with leave to amend for failure to state a claim. Ms. Wood may replead her Title VII and Title IX claims, Counts III and XIV, against HCSB on or before Monday, **4/29/2024**. Signed by CHIEF JUDGE MARK E WALKER on 4/19/2024. (rcb) (Entered: 04/19/2024) |
| 04/19/2024 | 90 | ORDER ON LEE COUNTY SCHOOL BOARD'S 65 MOTION TO DISMISS. For the reasons stated above, LCSBs motion to dismiss, ECF No. 65 , is GRANTED in part and DENIED in part. The motion is GRANTED with respect to Count IV (Title VII sex discrimination) and Count XV (Title IX sex discrimination). Counts IV and XV are DISMISSED without prejudice for failure to state a claim. The balance of the motion is DENIED. Ms. Doe may file an amended complaint and replead her Title VII and Title IX claims on or before Monday, **4/29/2024**. Signed by CHIEF JUDGE MARK E WALKER on 4/19/2024. (rcb) (Entered: 04/19/2024) |
| 04/19/2024 | 91 | ORDER ON STATE DEFENDANTS' 63 MOTION TO DISMISS. Accordingly, for the reasons set out above, Defendants' motion to dismiss, ECF No. 63 , is GRANTED in part and DENIED in part. The motion is GRANTED as to Count I, Count XIII, and Mx. Schwandes's free speech claim in Count VII. The balance of the motion is otherwise DENIED. Plaintiffs' claims in Counts I and XIII and Mx. Schwandess claim in Count VII are DISMISSED with leave to amend. If Plaintiffs believe they can cure the defects by amending their complaint, they may file a second amended complaint on or before Monday, **4/29/2024**. Signed by CHIEF JUDGE MARK E WALKER on 4/19/2024. (rcb) (Entered: 04/19/2024) |
| 04/23/2024 | 92 | Transmission of Notice of Appeal and Docket Sheet to US Court of Appeals re 84 Notice of Interlocutory Appeal. (rcb) (Entered: 04/23/2024) |
| 04/23/2024 | 93 | USCA Case Number 24-11239-D for 84 NOTICE OF INTERLOCUTORY APPEAL as to 82 . (rcb) (Entered: 04/24/2024) |

| 04/29/2024 | 94 | SECOND AMENDED COMPLAINT against All Defendants All Defendants., filed by JANE DOE, AV SCHWANDES, KATIE WOOD. (SOTO, DIEGO) (Entered: 04/29/2024) |
| --- | --- | --- |
| 05/06/2024 | 95 | Pursuant to F.R.A.P. 11(c), #24-11239- the Clerk of the District Court for the Northern District of Florida certifies that the record is complete for purposes of this appeal re: 92 Notice of Interlocutory Appeal. Appeal No. 24-11239-. The entire record on appeal is available electronically. (rcb) (Entered: 05/06/2024) |
| 05/06/2024 | 96 | FOURTH JOINT STATUS REPORT ON DISCOVERY. (WEIR, BRYAN) Modified to edit title on 5/6/2024 (rcb). (Entered: 05/06/2024) |
| 05/06/2024 | | Set Deadline- Status Report due by **6/5/2024**. (rcb) (Entered: 05/06/2024) |
| 05/07/2024 | 97 | Consent MOTION to Extend Time*for All Defendants to Respond to Second Amended Complaint* by AADIL AMEERALLY, JARED BARR, ANA ARMBRISTER BLAND, MONESIA BROWN, MICHAEL BUTCHER, ESTHER BYRD, YVONNE CALDWELL, GRAZIE P CHRISTIE, ELAYNE COLON, COMMISSIONER OF EDUCATION, ANN COPENHAVER, EDUCATION PRACTICES COMMISSION, FLORIDA DEPARTMENT OF EDUCATION, KELLY GARCIA, BENJAMIN GIBSON, JOSEPH GOODWIN, BENJAMIN HENRY, TIMOTHY HOLLEY, LISA INNERST, JEFFREY JOHNSON, KENNETH LAPEE, MASON LEWIS, MARYLYNN MAGAR, SALLIE MURPHY, RYAN PETTY, CHRISTINE PLAZA, KEVIN ROWE, CHARLES SHAW, ORENTHYA SLOAN, MARC SNYDER, STATE BOARD OF EDUCATION, MALCOLM THOMAS, JORDAN TOMPKINS, KATHY WILKS. (WEIR, BRYAN) (Entered: 05/07/2024) |
| 05/07/2024 | 98 | ORDER GRANTING 97 EXTENSION. The 97 motion is GRANTED. Defendant's deadline to respond to the second amended complaint is extended to on or before Tuesday, **5/28/2024**. Signed by CHIEF JUDGE MARK E WALKER on 5/7/2024. (rcb) (Entered: 05/07/2024) |
| 05/09/2024 | 99 | MOTION to Appear Pro Hac Vice by Jonathan Rosenthal.( Filing fee $ 219 receipt number AFLNDC-8794059.) by JANE DOE, AV SCHWANDES, KATIE WOOD. (Attachments: # 1 Certificate of Standing) (ROSENTHAL, JONATHAN) (Entered: 05/09/2024) |
| 05/10/2024 | 100 | ORDER ADMITTING JONATHAN ROSENTHAL PRO HAC VICE RE: 99 . The 99 motion is GRANTED. Signed by CHIEF JUDGE MARK E WALKER on 5/10/2024. (rcb) (Entered: 05/10/2024) |
| 05/28/2024 | 101 | DEFENDANT FLORIDA VIRTUAL SCHOOL BOARD OF TRUSTEES' MOTION TO DISMISS PLAINTIFFS SECOND AMENDED COMPLAINT. (HOLSHOUSER, ERIC) Modified to edit title on 5/28/2024 (rcb). (Entered: 05/28/2024) |
| 05/28/2024 | 102 | NOTICE *of Joining State Defendants' Motion to Dismiss* by HILLSBOROUGH COUNTY SCHOOL BOARD re 101 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM *Plaintiff's Second Amended Complaint* (MARGOLIN, JASON) (Entered: 05/28/2024) |
| 05/28/2024 | 103 | STATE DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT IN PART. (Attachments: # 1 Exhibit Memorandum of Law in Support of Motion to Dismiss) (WEIR, BRYAN) Modified to edit title on 5/29/2024 (rcb). (Entered: 05/28/2024) |
| 05/28/2024 | 104 | DEFENDANT HILLSBOROUGH COUNTY SCHOOL BOARD'S AMENDED NOTICE OF JOINING STATE DEFENDANTS' MOTION TO DISMISS1 (MARGOLIN, JASON) Modified to edit title on 5/29/2024 (rcb). (Entered: 05/28/2024) |

| 05/28/2024 | 105 | LEE COUNTY SCHOOL BOARDS MOTION TO DISMISS COUNTS 4 & 15 OF JANE DOE'S SECOND AMENDED COMPLAINT. (MAKAR, MIKALA) Modified to edit titleon 5/29/2024 (rcb). (Entered: 05/28/2024) |
| 05/28/2024 | | Set/Reset Deadlines as to 101 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM *Plaintiff's Second Amended Complaint*, 103 STATE DEFENDANTS MOTION TO DISMISSPLAINTIFFS SECOND AMENDED COMPLAINT IN PART, 105 LEE COUNTY SCHOOL BOARDS MOTION TO DISMISS COUNTS 4& 15 OF JANE DOES SECOND AMENDED COMPLAINT. (Internal deadline for referral to judge if response not filed earlier: **6/11/2024**). (rcb) (Entered: 05/29/2024) |

| **PACER Service Center** | | |
|---|---|---|
| **Transaction Receipt** | | |
| 05/30/2024 12:25:44 | | |
| **PACER Login:** | dan.vitagliano.law | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 4:23-cv-00526-MW-MAF |
| **Billable Pages:** | 30 | **Cost:** | 3.00 |

# TAB 1

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF FLORIDA
## TALLAHASSEE DIVISION

Katie Wood, Jane Doe, and AV Schwandes,

*Plaintiffs*,

v.

Florida Department of Education; State Board of
Education; Monesia Brown, Esther Byrd, Grazie
Christie, Kelly Garcia, Benjamin Gibson, Mary-
Lynn Magar, and Ryan Petty, *in their official ca-
pacities as members of Defendant State Board of
Education*; Commissioner of Education; Education
Practices Commission; Aadil Ameerally, Ana
Armbrister Bland, Jared Barr, Michael Butcher,
Yvonne Caldwell, Elayne Colon, Ann Copenhaver,
Joseph Goodwin, Benjamin Henry, Timothy Hol-
ley, Lisa Innerst, Jeffrey Johnson, Kenneth LaPee,
Mason Lewis, Sallie Murphy, Christine Plaza,
Kevin Rowe, Charles Shaw, Orenthya Sloan, Marc
Snyder, Malcolm Thomas, Jordan Tompkins, and
Kathy Wilks, *in their official capacities as mem-
bers of Defendant Education Practices Commis-
sion*; Hillsborough County School Board; Lee
County School Board; and Florida Virtual School
Board of Trustees,

*Defendants*.

_____/

## COMPLAINT

1

Plaintiffs Katie Wood ("Ms. Wood"), Jane Doe,[*] and AV Schwandes ("Mx. Schwandes") file this complaint against Defendants Florida Department of Education; State Board of Education; Monesia Brown, Esther Byrd, Grazie Christie, Kelly Garcia, Benjamin Gibson, MaryLynn Magar, and Ryan Petty, in their official capacities as members of Defendant State Board of Education; Commissioner of Education; Education Practices Commission; and Aadil Ameerally, Ana Armbrister Bland, Jared Barr, Michael Butcher, Yvonne Caldwell, Elayne Colon, Ann Copenhaver, Joseph Goodwin, Benjamin Henry, Timothy Holley, Lisa Innerst, Jeffrey Johnson, Kenneth LaPee, Mason Lewis, Sallie Murphy, Christine Plaza, Kevin Rowe, Charles Shaw, Orenthya Sloan, Marc Snyder, Malcolm Thomas, Jordan Tompkins, and Kathy Wilks, in their official capacities as members of Defendant Education Practices Commission. Ms. Wood also files this complaint against Defendant Hillsborough County School Board. Ms. Doe also files this complaint against Defendant Lee County School Board. Mx. Schwandes also files this complaint against Defendant Florida Virtual School Board of Trustees.

## PRELIMINARY STATEMENT

1.     Plaintiffs are current and former Florida public-school teachers who simply wanted to teach math, science, and their other school subjects of expertise.

---

[*] Plaintiff Jane Doe files this complaint using a pseudonym to protect herself from the threat of harassment and violence that her public participation in this case would invite. She intends to forthwith file a motion for leave to use a pseudonym in this case.

But earlier this year, Florida enacted a new law that pushed one plaintiff out of their teaching career and threatens to do the same for the other plaintiffs—and for the other transgender and nonbinary teachers like them across Florida. That new law, subsection 3 of Florida Statutes ("Fla. Stat.") § 1000.071 ("subsection 3"), provides that "[a]n employee or contractor of a public K-12 educational institution may not provide to a student his or her preferred personal title or pronouns if such preferred personal title or pronouns do not correspond to his or her sex." Subsection 3 discriminates against transgender and nonbinary public-school employees and contractors on the basis of sex, by prohibiting them from using the titles and pronouns that express who they are. Subsection 3 requires Plaintiffs to shed their titles and pronouns at the schoolhouse gate because they are not the titles and pronouns that Florida prefers for the sex it deems them to be. Florida has the power to revoke the educator certificates of teachers who violate subsection 3, and school boards are able to dismiss violators.

2. Subsection 3 violates the Constitution and laws of the United States. It unlawfully discriminates against Plaintiffs on the basis of sex in violation of Title VII of the Civil Rights Act of 1964, the Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution, and Title IX of the Education Amendments of 1972 because whether Plaintiffs may provide to students a particular title or pronoun depends entirely on Plaintiffs' sex, and Florida has only an invidious basis—not an

exceedingly persuasive or even a rational one—for discriminating in this harmful way. It also unconstitutionally restrains Plaintiffs' speech in violation of the Free Speech Clause of the First Amendment to the U.S. Constitution because it prohibits Plaintiffs from using the titles and pronouns that express who they are, the same way that their colleagues do.

3.      Through subsection 3, Florida has stigmatized Plaintiffs, threatened their psychological wellbeing, upended the respect that is owed to them as educators and that is necessary for a safe workplace and functioning classroom, and put their professions and families' wellbeing on the line. Florida's statute must give way to the Constitution and laws of the United States and must not be enforced.

## PARTIES

### A.      Plaintiffs

4.      Plaintiff Katie Wood resides in Hillsborough County, Florida. She is a teacher at Lennard High School within the Hillsborough County School District.

5.      Plaintiff Jane Doe resides in Lee County, Florida. She is a teacher at a public school within the Lee County School District.

6.      Plaintiff AV Schwandes resides in Orange County, Florida. They were a teacher at Florida Virtual School, which develops and delivers online and distance learning education in Florida. Fla. Stat. § 1002.37(1)(a).

### B.   Defendants

#### 1.   State Defendants

7.   Defendant Florida Department of Education is created by Florida statute. Fla. Stat. § 20.15. It maintains a principal place of business in Tallahassee, Florida. It is located in the offices of Defendant Commissioner of Education. Fla. Stat. § 1001.20(2). It has the power and duty to assist in providing professional leadership and guidance and in carrying out the policies, procedures, and duties authorized by law or by Defendant State Board of Education or found necessary by it to attain the purposes and objectives of the Early Learning–20 Education Code. *Id.* One of its offices is the Office of Professional Practice Services.

8.   Defendant State Board of Education is a corporate body established by the Florida constitution. Fla. Const. art. 9, § 2. It maintains a principal place of business in Tallahassee, Florida. It has seven members appointed by the Governor to staggered four-year terms, subject to confirmation by the Senate. Fla. Stat. § 1001.01. It must supervise the system of free public education. Fla. Const. art. 9, § 2. It is the chief implementing and coordinating body of public education in Florida except for the State University System. Fla. Stat. § 1001.02. It appoints Defendant Commissioner of Education. Fla. Const. art. 9, § 2. It is the head of Defendant Florida Department of Education. Fla. Stat. § 20.15(1). It assigns powers, duties, responsibilities, and functions to Defendant Florida Department of Education. Fla. Stat.

§ 20.15(5).

9.     Defendants Monesia Brown, Esther Byrd, Grazie Christie, Kelly Garcia, Benjamin Gibson, MaryLynn Magar, and Ryan Petty are members of Defendant State Board of Education and sued only in that official capacity (collectively, "Members of Defendant State Board of Education").

10.     Defendant Commissioner of Education holds an office established by the Florida constitution. Fla. Const. art. 9, § 2. Defendant Commissioner of Education maintains a principal place of business in Tallahassee, Florida. Defendant Commissioner of Education is the chief educational officer of Florida. Fla. Stat. § 1001.10(1). Defendant Commissioner of Education serves as the Executive Director of Defendant Florida Department of Education. Fla. Stat. § 20.15(2). Defendant Commissioner of Education is responsible for giving full assistance to Defendant State Board of Education in enforcing compliance with the mission and goals of the Early Learning–20 education system, except for the State University System. Fla. Stat. § 1001.10(1). Defendant Commissioner of Education has the power and duty to organize, staff, and recommend a budget for Defendant Florida Department of Education. Fla. Stat. § 1001.10(6). Defendant Commissioner of Education assigns powers, duties, responsibilities, and functions to Defendant Florida Department of Education. Fla. Stat. § 20.15(5). Defendant Commissioner of Education is sued only in its official capacity.

11.    Defendant Education Practices Commission is established by Florida statute. Fla. Stat. § 1012.79(1). It maintains a principal place of business in Tallahassee, Florida. It has 25 members appointed by Defendant State Board of Education from nominations by Defendant Commissioner of Education and subject to Senate confirmation. Fla. Stat. § 1012.79(1). Its members serve for four-year staggered terms. Fla. Stat. § 1012.79(2). It is assigned to Defendant Florida Department of Education for administrative purposes. Fla. Stat. § 1012.79(6)(a). Its property, personnel, and appropriations related to its specified authority, powers, duties, and responsibilities are provided to it by Defendant Florida Department of Education. Fla. Stat. § 1012.79(6)(b).

12.    Defendants Aadil Ameerally, Ana Armbrister Bland, Jared Barr, Michael Butcher, Yvonne Caldwell, Elayne Colon, Ann Copenhaver, Joseph Goodwin, Benjamin Henry, Timothy Holley, Lisa Innerst, Jeffrey Johnson, Kenneth LaPee, Mason Lewis, Sallie Murphy, Christine Plaza, Kevin Rowe, Charles Shaw, Orenthya Sloan, Marc Snyder, Malcolm Thomas, Jordan Tompkins, and Kathy Wilks are members of Defendant Education Practices Commission and sued only in that official capacity (collectively, "Members of Defendant Education Practices Commission"). They are residents of Florida. *See* Fla. Stat. § 1012.79(1)(e).

13.    Defendant Florida Virtual School Board of Trustees is a public agency established by Florida statute. Fla. Stat. § 1002.37(2). It maintains a principal place

of business in Orlando, Florida. It governs the Florida Virtual School. *Id.* It has seven

members appointed by the Governor to four-year staggered terms. Fla. Stat.

§ 1002.37(2).

### 2.    School Board Defendants

14.    Defendant Hillsborough County School Board is established by the

Florida constitution to operate, control, and supervise all free public schools within

the school district of Hillsborough County. Fla. Const. art. 9, § 4; Fla. Stat.

§ 1001.30.

15.    Defendant Lee County School Board is established by the Florida con-

stitution to operate, control, and supervise all free public schools within the school

district of Lee County. Fla. Const. art. 9, § 4; Fla. Stat. § 1001.30.

16.    Plaintiffs refer to Defendants Hillsborough County School Board and

Lee County School Board collectively as "School Board Defendants."

### JURISDICTION & VENUE

17.    The Court has original jurisdiction of this civil action under 28 U.S.C.

§ 1331 because it arises under the Constitution and laws of the United States and

under 28 U.S.C. § 1343(a)(3) because it is authorized by law to be commenced by a

person "[t]o redress the deprivation, under color of any State law, statute, ordinance,

regulation, custom or usage, of any right, privilege or immunity secured by the Con-

stitution of the United States or by any Act of Congress providing for equal rights of

citizens or of all persons within the jurisdiction of the United States[.]"

18.     Venue is proper in this judicial district under 28 U.S.C. § 1391(b)(1), and in this division under Local Rule 3.1, because Defendants Florida Department of Education, State Board of Education, and Commissioner of Education reside in this judicial district and division and all defendants are residents of Florida; under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this judicial district and division; and under 42 U.S.C. § 2000e-5(f)(3) because the unlawful employment practice is alleged to have been committed in Florida.

19.     The Court has personal jurisdiction over Defendants because they are domiciled in Florida and this civil action arises out of, and relates to, their conduct in Florida.

### FACTUAL ALLEGATIONS

#### A.     HB 1069 (2023)

20.     In May 2023, the Florida Legislature enacted, and Governor Ron De-Santis signed, House Bill ("HB") 1069, Fla. Laws ch. 2023-105. It took effect on July 1, 2023. This case challenges only subsection 3 of section 2 of HB 1069, but the bill's range of changes related to lesbian, gay, bisexual, transgender, queer, and nonbinary ("LGBTQ+") people and content in schools have at least some relevance in this case.

21.     Section 1 of HB 1069 amends § 1000.21 of the Early Learning–20 Education Code to define "sex" to "mean[] the classification of a person as either female or male based on the organization of the body of such person for a specific reproductive role, as indicated by the person's sex chromosomes, naturally occurring sex hormones, and internal and external genitalia present at birth." Fla. Stat. § 1000.21(9). This definition of sex is sometimes called "biological sex" by some or "sex assigned at birth" by others, including Plaintiffs. Plaintiffs assume for purposes of this case that this definition of sex is consistent with the meaning of sex under the federal constitutional provisions and statutes from which their claims arise.

22.     Neither HB 1069, nor the Early Learning–20 Education Code, nor any other statute defines "female" or "male" as used in HB 1069.

23.     Section 2 of HB 1069 creates § 1000.071 of the Early Learning–20 Education Code, which reads:

> 1000.071 Personal titles and pronouns.—
>
> (1) It shall be the policy of every public K-12 educational institution that is provided or authorized by the Constitution and laws of Florida that a person's sex is an immutable biological trait and that it is false to ascribe to a person a pronoun that does not correspond to such person's sex. This section does not apply to individuals born with a genetically or biochemically verifiable disorder of sex development, including, but not limited to, 46, XX disorder of sex development; 46, XY disorder of sex development; sex chromosome disorder of sex development; XX or XY sex reversal; and ovotesticular disorder.

10

(2) An employee, contractor, or student of a public K-12 educational institution may not be required, as a condition of employment or enrollment or participation in any program, to refer to another person using that person's preferred personal title or pronouns if such personal title or pronouns do not correspond to that person's sex.

(3) An employee or contractor of a public K-12 educational institution may not provide to a student his or her preferred personal title or pronouns if such preferred personal title or pronouns do not correspond to his or her sex.

(4) A student may not be asked by an employee or contractor of a public K-12 educational institution to provide his or her preferred personal title or pronouns or be penalized or subjected to adverse or discriminatory treatment for not providing his or her preferred personal title or pronouns.

(5) The State Board of Education may adopt rules to administer this section.

24.     Florida law does not define or set forth which titles and pronouns "correspond to" which sex; instead, § 1000.071 leaves those enforcing it to rely on stereotypes about which titles and pronouns should be used by people whose sex is deemed female under the statute and which should be used by people whose sex is deemed male under the statute. Therefore, under § 1000.071, titles like Mrs., Ms., and Miss and pronouns like she and her "correspond to" people whose sex is deemed female; titles like Mr. and pronouns like he and him "correspond to" people whose sex is deemed male; and titles like Mx. (pronounced *mix* or *mux*) and pronouns like they and them, when used to refer to a single person, "correspond to" no one.

25.     Under subsection 3, an employee can "provide to a student [the

employee's] title or pronouns" in various ways, such as by saying them to students, by saying them to someone within earshot of students, or by writing or displaying them on things that are given to or seen by students, like syllabi, classroom boards, and emails.

26.     Based on its plain text, subsection 3's reach is not limited to the workplace or work hours; it applies wherever, whenever, and however an employee interacts with students.

27.     Under subsection 3, whether an employee may "provide to" students the title Ms. and she/her pronouns depends entirely on whether the employee's sex is deemed male or female: if the employee's sex is deemed female, then the employee may "provide" them to students, but if the employee's sex is deemed male, then the employee may not.

28.     Under subsection 3, whether an employee may "provide to" students the title Mr. and he/him pronouns depends entirely on whether the employee's sex is deemed male or female: if the employee's sex is deemed male, then the employee may "provide" them to students, but if the employee's sex is deemed female, then the employee may not.

**B.     Subsection 3's Purposeful Invidious Discrimination**

29.     Sponsors of HB 1069, Governor DeSantis, and his administration justified HB 1069 in vague language about "protect[ing] children" from

"indoctrination" and "woke gender ideology," but no one explained how subsection 3 advances those goals.

30.    Subsection 3's drafters ignored Supreme Court case law that clearly establishes its unlawfulness. According to Representative Stan McClain, who sponsored HB 1069, its drafters did not consult *Bostock v. Clayton County*, 140 S. Ct. 1731 (2020). That case held that an employer who intentionally treats a person worse because of sex—such as by firing a transgender woman (a person whose sex assigned at birth is male but whose gender identity is female) for actions or attributes it would tolerate in a cisgender woman (a person whose sex assigned at birth is female and whose gender identity is female)—discriminates against that person in violation of Title VII.

31.    Subsection 3 is just one of a number of laws that Florida has recently enacted at least in part because of, not merely in spite of, the adverse effects they would have—both individually and in the aggregate—on LGBTQ+ people, especially transgender and nonbinary people, in various aspects of life. For example, Governor DeSantis signed HB 1069 in a bill package with Senate Bill ("SB") 254 (2023), Fla. Laws ch. 2023-90, which restricts their access to health care, and SB 1438 (2023), Fla. Laws ch. 2023-94, which seeks to censor performances by and for LGBTQ+ people. HB 1069 itself also expands the ban in HB 1557 (2022), Fla. Laws ch. 2022-022, on undefined "classroom instruction" on sexual orientation or gender

identity and requires schools to remove material, including books, objected to by any parent or county resident, which has resulted in the removal of books that merely mention LGBTQ+ people.

32.     Florida flaunted its animus toward LGBTQ+ people when enacting these laws. For example, Governor DeSantis signed SB 1028 (2021), Fla. Laws ch. 2021-35, which bans transgender women and girls from women and girls' athletic teams, on June 1, 2021, the first day of Pride Month for LGBTQ+ people that year. Governor DeSantis, his press secretary at the time, and Representative Randy Fine, who co-sponsored HB 1069 (2023) and HB 1557 (2022), Fla. Laws ch. 2022-022, invidiously described teachers who provide undefined "classroom instruction" on sexual orientation and gender identity as attempting to sexualize kids or as groomers, referring to someone who grooms a minor for exploitation and especially for non-consensual sexual activity. During committee debate about HB 1521 (2023), Fla. Laws ch. 2023-106, another bill regulating transgender and nonbinary people's conduct, Representative Webster Barnaby, who voted for it, called transgender people "mutants from another planet" and Satan's "demons and imps" "pretend[ing] that [they] are part of this world."

33.     Through all these laws, Florida intentionally sends the state-sanctioned, invidious, and false message that transgender and nonbinary people and their identities are inherently dangerous, especially to children. Florida's goal behind these

laws is to stigmatize and demonize transgender and nonbinary people and relegate them from public life altogether.

**C.  Defendants' Implementation and Enforcement of Subsection 3**

       **1.  Defendants Florida Department of Education, State Board of Education, Members of Defendant State Board of Education, Commissioner of Education, Education Practices Commission, and Members of Education Practices Commission**

34.    On August 22, 2023, Defendant State Board of Education amended two administrative rules, Rule 6A-5.065 and Rule 6A-10.081, to require teachers to comply with subsection 3 and to subject teachers who violate subsection 3 to suspension or revocation of their educator certificate and to poorer performance evaluations.

35.    Rule 6A-5.065 of the Florida Administrative Code sets forth the Florida Educator Accomplished Practices ("the Practices"). The Practices are "Florida's core standards for effective educators" and "form the foundation for the state's teacher preparation programs, educator certification requirements[,] and school district instructional personnel appraisal systems." Fla. Admin. Code r. 6A-5.065(1)(a). "Each of the [P]ractices is clearly defined to promote a common language and statewide understanding of the expectations for the quality of instruction and professional responsibility." Fla. Admin. Code r. 6A-5.065(2). Defendant State Board of Education amended the Practices to provide that, "[t]o maintain a student-centered learning environment that is safe, organized, equitable, flexible, inclusive, and

collaborative, the effective educator consistently … [a]dapts the learning environment to accommodate the differing needs and diversity of students while ensuring that the learning environment is consistent with s. 1000.071." Fla. Admin. Code r. 6A-5.065(2)(a)(2)(h).

36.    Rule 6A-10.081 of the Florida Administrative Code sets forth the Principles of Professional Conduct for the Education Profession in Florida ("the Principles"). They include ethical and disciplinary principles. Florida educators must comply with the disciplinary principles, and "[v]iolation of any of the[] [disciplinary] principles shall subject the [educator] to revocation or suspension of the individual educator's certificate, or the other penalties as provided by law." Fla. Admin. Code r. 6A-10.081(2). Defendant State Board of Education amended the disciplinary principles to provide that educators "[s]hall not violate s 1000.071." Fla. Admin. Code r. 6A-10.081(2)(a)(14).

37.    According to Defendant Commissioner of Education, the proposed rule amendments purportedly were steps toward "truth and sanity" and they would purportedly "empower" teachers by supposedly giving them "the freedom to keep order in the classroom and to keep distractions away and to create a high-quality learning environment." He did not explain how requiring teachers to comply with subsection 3, and punishing those who violate it, advances any of those stated goals.

38.    According to Defendant Florida Department of Education, the

purported purposes of the rule amendments were to "[e]nsure[] the health, safety, and welfare of students," to "[p]rotect the fundamental rights of parents," to "[r]equire[] standards-based instruction," and to "[p]rovide[] clarity for educators on what is age-appropriate and developmentally appropriate in accordance with state standards." Defendant Florida Department of Education did not explain how requiring teachers to comply with subsection 3, and punishing those who violate it, advances any of those stated goals.

39.    Defendant Florida Department of Education must investigate potential violations of subsection 3 by teachers, *see* Fla. Stat. § 1012.796(1)(a), and advise Defendant Commissioner of Education of its findings, Fla. Stat. § 1012.796(3). Defendant Florida Department of Education's Office of Professional Practice Services conducts such investigations.

40.    Defendant Florida Department of Education can learn about potential violations of subsection 3 in various ways. For example, School Board Defendants must file in writing with Defendant Florida Department of Education all complaints that a teacher has violated subsection 3 within 30 days after the date on which subject matter of the complaint comes to its attention, regardless of whether the subject of the complaint is still an employee of the School Board Defendant. *See* Fla. Stat. § 1012.796(1)(d)(1). If the School Board Defendant's superintendent has knowledge of a legally sufficient complaint and does not report the complaint, the

superintendent is subject to withholding of salary for up to one year. Fla. Stat. § 1012.796(1)(d)(4).

41.　Defendant Commissioner of Education determines whether there is probable cause of a violation of subsection 3. *See* Fla. Stat. § 1012.796(3). If there is probable cause, Defendant Commissioner of Education must file and prosecute a complaint against the teacher. Fla. Stat. § 1012.796(6). Defendant Florida Department of Education's Office of Professional Practice Services pursues such disciplinary actions.

42.　Defendants Florida Department of Education and Commissioner of Education have opened investigations into teachers who violate § 1000.071, and they continue to do so. They have also opened investigations into teachers who violate other provisions of HB 1069, such as a teacher who showed her students a Disney movie that features a gay character.

43.　If there are disputed issues of material fact, an administrative law judge, assigned by the Division of Administrative Hearings of the Department of Management Services, must hear the complaint and make recommendations to the appropriate panel of Defendant Education Practices Commission. Fla. Stat. § 1012.796(6).

44.　A case concerning a complaint against a teacher must be reviewed, and a final order entered, by a panel composed of five members of Defendant Education Practices Commission, at least one of whom must be a parent or a sworn law

enforcement officer and at least three of whom must be teachers. Fla. Stat. § 1012.796(8)(a). The panel must conduct a formal review of the administrative law judge's recommendations, if any, and other pertinent information and issue a final order. Fla. Stat. § 1012.796(6).

45.     Defendant Education Practices Commission must either dismiss the complaint or impose penalties on a teacher for violating subsection 3, including denying the teacher's application for a certificate, revoking or suspending the teacher's certificate, imposing an administrative fine up to $2,000 for each offense, placing the teacher on probation for which the teacher must pay the costs, restricting the authorized scope of the teacher's practice, reprimanding the teacher in writing in the teacher's file, and barring the teacher, if the teacher's certificate has expired, from applying for a new certificate for up to ten years or permanently. *See* Fla. Stat. § 1012.796(7).

46.     Defendant Florida Department of Education must maintain a disqualification list that includes the identity of each person who has been permanently denied an educator certificate or whose educator certificate has been permanently revoked and has been placed on the list as directed by Defendant Education Practices Commission. Fla. Stat. § 1001.10(4)(b). Defendant Florida Department of Education maintains that list publicly online.

47.     Defendant State Board of Education must oversee the performance of

School Board Defendants' enforcement of subsection 3 and enforce School Board Defendants' compliance with subsection 3. *See* Fla. Stat. §§ 1001.03(8), 1008.32.

48.　Defendant Commissioner of Education has the power to investigate allegations of School Board Defendants' noncompliance with subsection 3 and determine probable cause. *See* Fla. Stat. § 1008.32(2)(a). Defendant Commissioner of Education must report determinations of probable cause to Defendant State Board of Education. *See id.*

49.　If a School Board Defendant is unwilling or unable to comply with subsection 3, Defendant State Board of Education has the power to report that to the Legislature, withhold funds, declare the School Board Defendant ineligible for competitive grants, and require periodic reporting. *See* Fla. Stat. § 1008.32(4).

50.　Defendant State Board of Education has a history of investigating and punishing district school boards that violate Defendant State Board of Education's rules to coerce their compliance, including those that imposed mask mandates.

51.　Defendants Florida Department of Education and Commissioner of Education even filed and prosecuted, before Defendant Education Practices Commission, a complaint against Leon County School District's superintendent, Rocky Hanna, for advising teachers to continue teaching as they have always done, after HB 1557, which bans undefined "classroom instruction" on sexual orientation and gender identity, was enacted. Defendant Commissioner of Education and

Superintendent Hanna reached, and Defendant Education Practices Commission accepted, a settlement agreement by which, among other things, he would be placed on probation for two years, pay $300 to cover the costs of probation, take college courses on education ethics and educational leadership for which he bears the cost, pay a $1,000 fine, violate no law, and comply with the Principles. Defendant Education Practices Commission also reprimanded him in writing.

### 2.    School Board Defendants

Plaintiffs Katie Wood and Jane Doe allege the following paragraphs 52–58 against Defendants Florida Department of Education, State Board of Education, Education Practices Commission, Commissioner of Education, Members of Defendant State Board of Education, and Members of Defendant Education Practices Commission; Ms. Wood also alleges them against Defendant Hillsborough County School Board; and Ms. Doe also alleges them against Defendant Lee County School Board:

52.    Any person employed as a teacher in any district school system, including by School Board Defendants, must be properly certified by Defendant Florida Department of Education, *see* Fla. Stat. § 1012.55(b), except under narrow circumstances, *see* Fla. Stat. § 1012.55(c).

53.    School Board Defendants have the power and duty to suspend or dismiss a teacher whose certificate is revoked or suspended by Defendant Education Practices Commission.

21

54.    School Board Defendants have the power to suspend or dismiss a teacher for violating subsection 3.

55.    School Board Defendants have the power to suspend or dismiss a teacher for just cause, such as misconduct in office, gross insubordination, and a certain number and frequency of performance evaluations of "needs improvement" or "unsatisfactory" as provided by state law. Fla. Stat. § 1012.33(1)(a).

56.    Misconduct in office includes "[a] violation of the Principles," including subsection 3, "[a] violation of the adopted school board rules," "[b]ehavior that disrupts the student's learning environment," and "[b]ehavior that reduces the teacher's ability or … colleagues' ability to effectively perform duties." Fla. Admin. Code r. 6A-5.056(2).

57.    Gross insubordination "means the intentional refusal to obey a direct order, reasonable in nature, and given by and with proper authority; misfeasance, or malfeasance as to involve failure in the performance of the required duties." Fla. Admin. Code r. 6A-5.056(4).

58.    At least one-third of a teacher's performance evaluation must be based upon instructional practice, which must include indicators based upon each of the Practices, including subsection 3. Fla. Stat. § 1012.34(3)(a)(2).

### a.    Defendant Hillsborough County School Board

Plaintiff Katie Wood alleges the following paragraphs 59–61 against

Defendants Florida Department of Education, State Board of Education, Education Practices Commission, Commissioner of Education, Members of Defendant State Board of Education, Members of Defendant Education Practices Commission, and Hillsborough County School Board:

59.     All complaints that a teacher violated subsection 3 must be reported to Defendant Hillsborough County School Board's Office of Professional Standards, who, in turn, will report such complaints to Defendant Florida Department of Education within 30 days after the date on which the subject matter of the complaint comes to the attention of Defendant Hillsborough County School Board or the office of the superintendent. *See* Hillsborough Cnty. Sch. Bd. Pol'y 3139.

60.     It is the responsibility of all employees of Defendant Hillsborough County School Board to promptly report to the superintendent any complaint against a teacher that comes to the employee's attention and that includes grounds for the revocation or suspension of a teaching certificate. Hillsborough Cnty. Sch. Bd. Pol'y 3139.

61.     The willful failure by an employee of Defendant Hillsborough County School Board to promptly report a complaint constitutes cause for discipline of the employee as provided by Florida statutes, the Hillsborough County Teacher Tenure Act, and Defendant Hillsborough County School Board policy. Hillsborough Cnty. Sch. Bd. Pol'y 3139.

**b.**     **Defendant Lee County School Board**

Plaintiff Jane Doe alleges the following paragraphs 62–66 against Defendants Florida Department of Education, State Board of Education, Education Practices Commission, Commissioner of Education, Members of Defendant State Board of Education, Members of Defendant Education Practices Commission, and Lee County School Board:

62.    The Principles, including subsection 3, constitute Defendant Lee County School Board's standards of ethical conduct, to which all instructional staff members must adhere. Lee Cnty. Sch. Bd. Pol'y 3210.

63.    A teacher who willfully violates Defendant Lee County School Board's policies, including subsection 3, is guilty of gross insubordination and is subject to dismissal or such other lesser penalty as Defendant Lee County School Board may prescribe. Lee Cnty. Sch. Bd. Pol'y 3120.

64.    All complaints that a teacher violated subsection 3 must be reported to Defendant Florida Department of Education within 30 days after the date on which the subject matter of the complaint comes to the attention of Defendant Lee County School Board or the office of the superintendent. *See* Lee Cnty. Sch. Bd. Pol'y 3139.

65.    All employees of Defendant Lee County School Board must promptly report to the office of the superintendent or the office of Human Resources Services any complaint against a teacher that comes to the employee's attention and that

includes grounds for the revocation or suspension of a teaching certificate. Lee Cnty. Sch. Bd. Pol'y 3139.

66.    The willful failure by an employee of Defendant Lee County School Board to promptly report a complaint constitutes cause for discipline of the employee. Lee Cnty. Sch. Bd. Pol'y 3139.

### 3.    Defendant Florida Virtual School Board of Trustees

Plaintiff AV Schwandes alleges the following paragraphs 67–68 against Defendants Florida Department of Education, State Board of Education, Education Practices Commission, Commissioner of Education, Members of Defendant State Board of Education, Members of Defendant Education Practices Commission, and Florida Virtual School Board of Trustees:

67.    The Principles, including subsection 3, constitute Defendant Florida Virtual School Board of Trustees's standards of ethical conduct, to which all instructional staff members must adhere. Fla. Virtual Sch. Bd. of Trs. Pol'y 1210.

68.    Florida Virtual School's CEO, who is appointed by Defendant Florida Virtual School Board of Trustees, or designee must report all complaints that a teacher violated subsection 3 to Defendant Florida Department of Education within 30 days after the date on which the subject matter of the complaint comes to the attention of the CEO or designee. *See* Fla. Virtual Sch. Bd. of Trs. Pol'y 8141.

**D.     Gender Identity and the Harms of Misgendering**

69.     Subsection 3 harms transgender and nonbinary teachers by prohibiting them from using titles and pronouns that express their gender identity.

70.     Gender identity is an innate, internal sense of one's sex. Everyone has a gender identity. Cisgender people's gender identity is consistent with their sex assigned at birth, but transgender people have a gender identity that differs from their sex assigned at birth.

71.     Nonbinary is an adjective used by people who experience their gender identity or gender expression as falling outside the binary gender categories of man and woman; nonbinary people may identify as being both a man and a woman, somewhere in between, or as falling completely outside these categories. Many nonbinary people also call themselves transgender and consider themselves part of the transgender community.

72.     Many transgender people adopt a new name, pronouns, hairstyle, and clothing that express their gender identity, and many express their gender identity in all aspects of their life, including at work. Following those steps, many transgender people obtain a court order legally changing their name and, where possible, changing the sex listed on their birth certificate and other identity documents.

73.     Many transgender women go by titles like Mrs., Ms., and Miss and pronouns like she and her. Many transgender men (people whose sex assigned at birth

is female but whose gender identity is male) go by titles like Mr. and pronouns like he and him. Many nonbinary people go by non-gendered titles like Mx. and non-gendered pronouns like they and them.

74.    Misgendering a person—for example, by referring to a transgender woman by titles like Mr. and pronouns like he and him, by referring to a transgender man by titles like Ms. and pronouns like she and her, or by referring to a nonbinary person by any of those gendered titles or pronouns—can cause that person psychological distress and feelings of stigma. So can prohibiting a person from going by titles and pronouns that express the person's gender identity.

### E.    Subsection 3's Effects on Plaintiffs

#### 1.    Effects on Ms. Wood

Plaintiff Katie Wood alleges the following paragraphs 75–92 against Defendants Florida Department of Education, State Board of Education, Education Practices Commission, Commissioner of Education, Members of Defendant State Board of Education, Members of Defendant Education Practices Commission, and Hillsborough County School Board:

75.    Ms. Wood is a transgender woman.

76.    Ms. Wood socially transitioned as a woman in or around 2020, in college and everywhere else in life. She legally changed her name and has updated her documents to reflect her new name and her female gender. She presents as a woman.

She uses the title Ms. and she/her pronouns.

77.     Ms. Wood has been employed as a teacher by Defendant Hillsborough County School Board since the 2021–2022 school year. She teaches math at Lennard High School. She is certified to teach by Defendant Florida Department of Education, which issued her certificate in her legal name, Katie Wood.

78.     When Ms. Wood started working at Lennard High School, Defendant Hillsborough County School Board was supportive of her transgender status and female gender identity and expression. It allowed her to go by Ms. Wood and she/her pronouns.

79.     Before subsection 3 became law and Defendant Hillsborough County School Board policy, Ms. Wood was permitted to provide to students her Ms. title and she/her pronouns. She would introduce herself as Ms. Wood and write "Ms. Wood" and "she/her" on her syllabi and classroom board.

80.     Before subsection 3 became law and Defendant Hillsborough County School Board policy, Ms. Wood was permitted to tell anyone who misgendered her at work, such as by using Mr. or he/him pronouns, that her title is Ms. and that her pronouns are she/her.

81.     Under subsection 3 and Defendant Hillsborough County School Board policy, Ms. Wood may no longer provide to students her Ms. title and she/her pronouns because subsection 3 deems her sex to be male. If Ms. Wood's sex were

deemed female, then subsection 3 would not prohibit her from providing her Ms. title and she/her pronouns to students.

82.    Since subsection 3 became law and Defendant Hillsborough County School Board policy, Lennard High School's principal and Defendant Hillsborough County School Board advised Ms. Wood that she was no longer allowed to go by Ms. because her sex is deemed male and that she instead could go by Mr., Teacher, or Coach.

83.    Going by titles like Mr. and pronouns like he and him would harm Ms. Wood, including emotionally, risk physical harm from others, and disrupt her classroom and ability to do her job. Avoiding titles and pronouns altogether would be impractical, disruptive, and stigmatizing.

84.    Ms. Wood opted to go by Teacher. She would not go by Teacher but for subsection 3. She has replaced her name with "Teacher Wood" on her classroom board, introduces herself to students as Teacher Wood, and uses Teacher Wood on all communications with students.

85.    Ms. Wood would introduce herself as Ms. Wood and write "Ms. Wood" and "she/her" on her syllabi and classroom board but for subsection 3.

86.    Going by Teacher, a non-gendered title that no male or female teachers at her school use and that does not come naturally to her when describing herself, instead of Ms., a title that expresses her female gender identity, has caused Ms.

Wood to feel stigmatized.

87.     Going by Teacher has disrupted Ms. Wood's ability to teach and distracted her students.

88.     Most students still call her Ms. Wood, while others call her Teacher Wood.

89.     The risk that she could lose her teaching job and license for violating subsection 3 and Defendant Hillsborough County School Board policy has caused Ms. Wood great anxiety and distracts her during work.

90.     Under subsection 3 and Defendant Hillsborough County School Board policy, Ms. Wood may not tell anyone who misgenders her at work, such as by using Mr. or he/him pronouns, that her title is Ms. and that her pronouns are she/her because subsection 3 deems her sex to be male.

91.     Ms. Wood may not even tell a student who calls her Mr. or refers to her by he/him pronouns that her title under subsection 3 is Teacher.

92.     Ms. Wood filed a charge of employment discrimination with the U.S. Equal Employment Opportunity Commission (EEOC) against Defendants Florida Department of Education, Education Practices Commission, and Hillsborough County School Board on December 8, 2023, and against Defendant State Board of Education on December 12, 2023. She intends to amend this complaint after the EEOC sends her a notice of her right to sue.

### 2.    Effects on Ms. Doe

Plaintiff Jane Doe alleges the following paragraphs 93–102 against Defendants Florida Department of Education, State Board of Education, Education Practices Commission, Commissioner of Education, Members of Defendant State Board of Education, Members of Defendant Education Practices Commission, and Lee County School Board:

93.    Ms. Doe is a transgender woman.

94.    Ms. Doe socially transitioned as a woman after Thanksgiving 2021, at work and everywhere else in life. She legally changed her name and has updated her documents (except for her birth certificate because the law of her state of birth prohibits it) to reflect her new name and female gender. She presents as a woman. She uses the title Ms. and she/her pronouns.

95.    Ms. Doe has been employed as a teacher by Defendant Lee County School Board since the 2017–2018 school year. She is certified to teach by Defendant Florida Department of Education.

96.    When Ms. Doe socially transitioned at work, Defendant Lee County School Board was supportive of her transgender status and female gender identity and expression. It updated its records to reflect her new name and female gender. It allowed her to go by Ms. Doe and she/her pronouns.

97.    Before subsection 3 became law and Defendant Lee County School

Board policy, Ms. Doe was permitted to provide to students her Ms. title and she/her pronouns. She would introduce herself as Ms. Doe and write "Ms. Doe" and "she/her" on her syllabi and classroom board.

98.    Before subsection 3 became law and Defendant Lee County School Board policy, Ms. Doe could tell anyone who misgendered her at work, such as by using Mr. or he/him pronouns, that her title is Ms. and that her pronouns are she/her.

99.    Under subsection 3 and Defendant Lee County School Board policy, Ms. Doe may no longer provide to students her Ms. title and she/her pronouns because subsection 3 deems her sex to be male. If Ms. Doe's sex were deemed female, then subsection 3 would not prohibit her from providing her Ms. title and she/her pronouns to students.

100.    Going by titles like Mr. and pronouns like he and him would harm Ms. Doe, including emotionally, risk physical harm from others, and disrupt her classroom and her ability to do her job. Avoiding titles and pronouns altogether would be impractical and disruptive.

101.    Under subsection 3 and Defendant Lee County School Board policy, Ms. Doe may not tell anyone who misgenders her at work, such as by using Mr. or he/him pronouns, that her title is Ms. and that her pronouns are she/her because subsection 3 deems her sex to be male.

102.    Ms. Doe filed a charge of employment discrimination with the EEOC

against Defendants Florida Department of Education, State Board of Education, Education Practices Commission, and Lee County School Board on December 8, 2023. She intends to amend this complaint after the EEOC sends her a notice of her right to sue.

### 3.   Effects on Mx. Schwandes

Plaintiff AV Schwandes alleges the following paragraphs 103–110 against Defendants Florida Department of Education, State Board of Education, Education Practices Commission, Commissioner of Education, Members of Defendant State Board of Education, Members of Defendant Education Practices Commission, and Florida Virtual School Board of Trustees:

103.   Mx. Schwandes is nonbinary; their sex assigned at birth was female, but their gender identity is neither male nor female. They use the title Mx. (pronouncing it *mux*) and they/them pronouns.

104.   Mx. Schwandes was employed as a teacher by Defendant Florida Virtual School Board of Trustees from July 19, 2021, until their termination on October 24, 2023. They taught physical science and then physics. They are certified to teach by Defendant Florida Department of Education.

105.   Starting around June or July 2023, Mx. Schwandes started to use Mx. and they/them pronouns at work.

106.   At first, Mx. Schwandes's supervisor was okay with their use of Mx.,

but on August 28, 2023, he directed them to stop using Mx. and to instead use a title like Ms. or Mrs. Mx. Schwandes refused to comply.

107.   On September 15, 2023, Defendant Florida Virtual School Board of Trustees suspended Mx. Schwandes for violating subsection 3 and Defendant Florida Virtual School Board of Trustees policy, directed them to comply with subsection 3 by using Ms., Mrs., or Miss instead of Mx., and threatened to terminate their employment for noncompliance. Mx. Schwandes again refused to comply.

108.   Defendant Florida Virtual School Board of Trustees did not permit Mx. Schwandes to use non-gendered titles like Professor, Doctor, or Teacher.

109.   On October 24, 2023, Defendant Florida Virtual School Board of Trustees terminated Mx. Schwandes's employment for violating subsection 3 and Defendant Florida Virtual School Board of Trustees policy.

110.   Mx. Schwandes filed a charge of employment discrimination against Defendant Florida Virtual School Board of Trustees with the Florida Commission on Human Relations on September 26, 2023, and with the EEOC on November 8, 2023. Mx. Schwandes submitted a charge of employment discrimination against Defendants Florida Department of Education, State Board of Education, and Education Practices Commission with the EEOC on December 12, 2023. They intend to amend this complaint after the EEOC sends them a notice of their right to sue.

## CLAIMS FOR RELIEF

## COUNT 1

**Violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2**

**Discrimination Because of Sex**

Pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-5

By All Plaintiffs Against Defendants Florida Department of Education, State
Board of Education, and Education Practices Commission

111.   All Plaintiffs separately bring this claim against Defendants Florida Department of Education, State Board of Education, and Education Practices Commission. Plaintiff Katie Wood realleges paragraphs 4, 7–12, 14–61, and 69–92 against them. When answering Ms. Wood's claim against them in this count, each of those Defendants should read "Plaintiff" to refer only to Ms. Wood. Plaintiff Jane Doe realleges paragraphs 5, 7–12, 14–58, 62–66, 69–74, and 93–102 against them. When answering Ms. Doe's claim against them in this count, each of those Defendants should read "Plaintiff" to refer only to Ms. Doe. Plaintiff AV Schwandes realleges paragraphs 6–13, 17–51, 67–74, and 103–110 against them. When answering Mx. Schwandes's claim against them in this count, each of those Defendants should read "Plaintiff" to refer only to Mx. Schwandes. Each of those Defendants should read "Defendant" in the paragraphs of this count to refer only to that answering Defendant.

112.   Defendant is an employer within the meaning of Title VII of the Civil

Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII").

113.   Plaintiff is an individual within the meaning of Title VII.

114.   Subsection 3 discriminates because of sex within the meaning Title VII.

115.   Subsection 3 was and is a term or condition of Plaintiff's employment within the meaning of Title VII.

116.   Subsection 3 affected and affects the terms and conditions of Plaintiff's employment within the meaning of Title VII.

117.   Requiring Plaintiff to comply with subsection 3 was and is an adverse employment action under Title VII.

118.   By enforcing or threatening to enforce subsection 3, Defendant discriminated and discriminates against Plaintiff with respect to terms, conditions, or privileges of employment because of sex, in violation of Title VII.

119.   By enforcing or threatening to enforce subsection 3, Defendant interfered and interferes with Plaintiff's employment opportunities, in violation of Title VII.

## COUNT 2

**Preemption by Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-7**

Pursuant to 42 U.S.C. § 1983 and the Court's Inherent Equitable Powers

By All Plaintiffs Against Defendants Commissioner of Education, Members of Defendant State Board of Education, and Members of Defendant Education Practices Commission

120.    All Plaintiffs separately bring this claim against Defendants Florida De-
partment of Education, State Board of Education, and Education Practices Commis-
sion. Plaintiff Katie Wood realleges paragraphs 4, 7–12, 14–61, and 69–92 against
them. When answering Ms. Wood's claim against them in this count, each of those
Defendants should read "Plaintiff" to refer only to Ms. Wood. Plaintiff Jane Doe
realleges paragraphs 5, 7–12, 14–58, 62–66, 69–74, and 93–102 against them. When
answering Ms. Doe's claim against them in this count, each of those Defendants
should read "Plaintiff" to refer only to Ms. Doe. Plaintiff AV Schwandes realleges
paragraphs 6–13, 17–51, 67–74, and 103–110 against them. When answering Mx.
Schwandes's claim against them in this count, each of those Defendants should read
"Plaintiff" to refer only to Mx. Schwandes. Each of those Defendants should read
"Defendant" in the paragraphs of this count to refer only to that answering Defend-
ant.

121.    Title VII secures Plaintiff's right not to be discriminated against in em-
ployment because of sex.

122.    Subsection 3 required and requires Plaintiff's employer to discriminate
against Plaintiff in employment because of sex.

123.    Subsection 3 is preempted by Title VII because subsection 3 purports
to require or permit the doing of an act that would be an unlawful employment prac-
tice under Title VII.

124.   The Court has the inherent equitable power to enjoin subsection 3 because it conflicts with Title VII and Congress has not shown an intent to prohibit private actions for such injunctive relief.

125.   Plaintiff's right under Title VII not to be discriminated against in employment because of sex is a right secured by the laws of the United States within the meaning of 42 U.S.C. § 1983.

126.   Defendant is a person within the meaning of 42 U.S.C. § 1983.

127.   By enforcing or threatening to enforce subsection 3, Defendant acted and acts under color of state law within the meaning of 42 U.S.C. § 1983.

128.   By enforcing or threatening to enforce subsection 3, Defendant subjected and subjects Plaintiff to the deprivation of Plaintiff's right not to be discriminated against in employment because of sex, which is secured by Title VII.

## COUNT 3

**Violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2**

**Discrimination Because of Sex**

Pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-5

By Plaintiff Katie Wood Against Defendant Hillsborough County School Board

129.   Plaintiff Katie Wood brings this claim against Defendant Hillsborough County School Board and realleges paragraphs 4, 7–12, 14–61, and 69–92 against it.

130.   Defendant Hillsborough County School Board is an employer within the meaning of Title VII.

131.   Ms. Wood is an individual within the meaning of Title VII.

132.   Subsection 3 discriminates because of sex within the meaning Title VII.

133.   Subsection 3 was and is a term or condition of Ms. Wood's employment within the meaning of Title VII.

134.   Subsection 3 affected and affects the terms and conditions of Ms. Wood's employment within the meaning of Title VII.

135.   Requiring Ms. Wood to comply with subsection 3 was and is an adverse employment action under Title VII.

136.   By enforcing or threatening to enforce subsection 3, Defendant Hillsborough County School Board discriminated and discriminates against Ms. Wood with respect to terms, conditions, or privileges of employment because of sex, in violation of Title VII.

## COUNT 4

**Violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2**

**Discrimination Because of Sex**

Pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-5

By Plaintiff Jane Doe Against Defendant Lee County School Board

137.   Plaintiff Jane Doe brings this claim against Defendant Lee County

School Board and realleges paragraphs 5, 7–12, 14–58, 62–66, 69–74, and 93–102 against it.

138.   Defendant Lee County School Board is an employer within the meaning of Title VII.

139.   Ms. Doe is an individual within the meaning of Title VII.

140.   Subsection 3 discriminates because of sex within the meaning Title VII.

141.   Subsection 3 was and is a term or condition of Ms. Doe's employment within the meaning of Title VII.

142.   Subsection 3 affected and affects the terms and conditions of Ms. Doe's employment within the meaning of Title VII.

143.   Requiring Ms. Doe to comply with subsection 3 was and is an adverse employment action under Title VII.

144.   By enforcing or threatening to enforce subsection 3, Defendant Lee County School Board discriminated and discriminates against Ms. Doe with respect to terms, conditions, or privileges of employment because of sex, in violation of Title VII.

**COUNT 5**

**Violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2**

**Discrimination Because of Sex**

Pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-5

By Plaintiff AV Schwandes Against Defendant Florida Virtual School Board of Trustees

145.   Plaintiff AV Schwandes brings this claim against Defendant Florida Virtual School Board of Trustees and realleges paragraphs 6–13, 17–51, 67–74, and 103–110 against it.

146.   Defendant Florida Virtual School Board of Trustees was Mx. Schwandes's employer within the meaning of Title VII.

147.   Mx. Schwandes is an individual within the meaning of Title VII.

148.   Subsection 3 discriminates because of sex within the meaning Title VII.

149.   Subsection 3 was a term or condition of Mx. Schwandes's employment within the meaning of Title VII.

150.   Subsection 3 affected the terms and conditions of Mx. Schwandes's employment within the meaning of Title VII.

151.   Requiring Mx. Schwandes to comply with subsection 3 was an adverse employment action under Title VII.

152.   By enforcing subsection 3, Defendant Florida Virtual School Board discriminated against Mx. Schwandes with respect to terms, conditions, or privileges

of employment because of sex, in violation of Title VII.

## COUNT 6

### Violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2

### Discharge Because of Sex

Pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-5

By Plaintiff AV Schwandes Against Defendant Florida Virtual School Board of Trustees

153.   Plaintiff AV Schwandes brings this claim against Defendant Florida Virtual School Board of Trustees and realleges paragraphs 6–13, 17–51, 67–74, and 103–110 against it.

154.   Defendant Florida Virtual School Board of Trustees was Mx. Schwandes's employer within the meaning of Title VII.

155.   Mx. Schwandes is an individual within the meaning of Title VII.

156.   Subsection 3 discriminates because of sex within the meaning Title VII.

157.   Discharging Mx. Schwandes for not complying with subsection 3 was an adverse employment action under Title VII.

158.   Defendant Florida Virtual School Board of Trustees discharged Mx. Schwandes because of sex, in violation of Title VII.

**COUNT 7**

**Violation of the First and Fourteenth Amendments to the U.S. Constitution**

**Deprivation of Freedom of Speech**

Pursuant to 42 U.S.C. § 1983

By All Plaintiffs Against Defendants Commissioner of Education, Members of Defendant State Board of Education, and Members of Defendant Education Practices Commission

159.   All Plaintiffs bring this claim against Defendants Commissioner of Education, Members of Defendant State Board of Education, and Members of Defendant Education Practices Commission. Plaintiff Katie Wood realleges paragraphs 4, 7–12, 14–61, and 69–92 against them. When answering Ms. Wood's claim against them in this count, each of those Defendants should read "Plaintiff" to refer only to Ms. Wood. Plaintiff Jane Doe realleges paragraphs 5, 7–12, 14–58, 62–66, 69–74, and 93–102 against them. When answering Ms. Doe's claim against them in this count, each of those Defendants should read "Plaintiff" to refer only to Ms. Doe. Plaintiff AV Schwandes realleges paragraphs 6–13, 17–51, 67–74, and 103–110 against them. When answering Mx. Schwandes's claim against them in this count, each of those Defendants should read "Plaintiff" to refer only to Mx. Schwandes. Each of those Defendants should read "Defendant" in the paragraphs of this count to refer only to that answering Defendant.

160.   Subsection 3 violates the Free Speech Clause of the First Amendment

to the U.S. Constitution, applicable to the states through the Fourteenth Amendment to the U.S. Constitution.

161.   Plaintiff had and has free speech rights while at work, including in the classroom and during work hours.

162.   Plaintiff's providing Plaintiff's title and pronouns to students, within the meaning of subsection 3, was and is speech protected by the First Amendment.

163.   Plaintiff's speech was and is Plaintiff's own speech and message, not Defendant's or the government's. Neither Defendant nor the government commissioned or created Plaintiff's speech. Plaintiff was not and is not speaking pursuant to government policy. Plaintiff was not and is not seeking to convey a government-created message. Plaintiff was not and is not instructing students, encouraging better performance, or engaging in any other speech that Defendant paid and pays Plaintiff to produce as a teacher. Plaintiff's speech did not and does not owe its existence to Plaintiff's responsibilities as a public employee.

164.   Plaintiff's speech was not and is not government speech subject to government control just because students heard it and will or might hear it.

165.   Plaintiff's speech implicated and implicates a matter of public concern for purposes of the First Amendment.

166.   Plaintiff's strong interest in being allowed to express Plaintiff's gender identity by using Plaintiff's title and pronouns outweighs any government interest,

if any, in preventing Plaintiff from doing so.

167.   Defendant is a person within the meaning of 42 U.S.C. § 1983.

168.   By enforcing or threatening to enforce subsection 3, Defendant was and is acting under color of state law within the meaning of 42 U.S.C. § 1983.

169.   By enforcing or threatening to enforce subsection 3, Defendant was and is subjecting Plaintiff to the deprivation of Plaintiff's right to freedom of speech secured by the First and Fourteenth Amendments.

**COUNT 8**

**Violation of the First and Fourteenth Amendments to the U.S. Constitution**

**Deprivation of Freedom of Speech**

Pursuant to 42 U.S.C. § 1983

By Plaintiff Katie Wood Against Defendant Hillsborough County School Board

170.   Plaintiff Katie Wood brings this claim against Defendant Hillsborough County School Board and realleges paragraphs 4, 7–12, 14–61, and 69–92 against it.

171.   Subsection 3 violates the Free Speech Clause of the First Amendment to the U.S. Constitution, applicable to the states through the Fourteenth Amendment to the U.S. Constitution.

172.   Ms. Wood had and has free speech rights while at work, including in the classroom and during work hours.

173.   Ms. Wood's providing her title and pronouns to students, within the meaning of subsection 3, was and is speech protected by the First Amendment.

174.   Ms. Wood's speech was and is her own speech and message, not Defendant Hillsborough County School Board's or the government's. Neither Defendant Hillsborough County School Board nor the government commissioned or created her speech. She was not and is not speaking pursuant to government policy. She was not and is not seeking to convey a government-created message. She was not and is not instructing students, encouraging better performance, or engaging in any other speech that Defendant Hillsborough County School Board paid and pays her to produce as a teacher. Her speech did not and does not owe its existence to her responsibilities as a public employee.

175.   Ms. Wood's speech was not and is not government speech subject to government control just because students heard it and will or might hear it.

176.   Ms. Wood's speech implicated and implicates a matter of public concern for purposes of the First Amendment.

177.   Ms. Wood's strong interest in being allowed to express her gender identity by using her title and pronouns outweighs any government interest, if any, in preventing her from doing so.

178.   Defendant Hillsborough County School Board is a person within the meaning of 42 U.S.C. § 1983.

179.   Subsection 3 was and is an official policy of Defendant Hillsborough County School Board.

180.   By enforcing or threatening to enforce subsection 3, Defendant Hillsborough County School Board was and is acting under color of state law within the meaning of 42 U.S.C. § 1983.

181.   By enforcing or threatening to enforce subsection 3, Defendant Hillsborough County School Board was and is subjecting Ms. Wood to the deprivation of her right to freedom of speech secured by the First and Fourteenth Amendments.

## COUNT 9

**Violation of the First and Fourteenth Amendments to the U.S. Constitution**

**Deprivation of Freedom of Speech**

Pursuant to 42 U.S.C. § 1983

By Plaintiff Jane Doe Against Defendant Lee County School Board

182.   Plaintiff Jane Doe brings this claim against Defendant Lee County School Board and realleges paragraphs 5, 7–12, 14–58, 62–66, 69–74, and 93–102 against it.

183.   Subsection 3 violates the Free Speech Clause of the First Amendment to the U.S. Constitution, applicable to the states through the Fourteenth Amendment to the U.S. Constitution.

184.   Ms. Doe had and has free speech rights while at work, including in the

classroom and during work hours.

185.   Ms. Doe's providing her title and pronouns to students, within the meaning of subsection 3, was and is speech protected by the First Amendment.

186.   Ms. Doe's speech was and is her own speech and message, not Defendant Lee County School Board's or the government's. Neither Defendant Lee County School Board nor the government commissioned or created her speech. She was not and is not speaking pursuant to government policy. She was not and is not seeking to convey a government-created message. She was not and is not instructing students, encouraging better performance, or engaging in any other speech that Defendant Lee County School Board paid and pays her to produce as a teacher. Her speech did not and does not owe its existence to her responsibilities as a public employee.

187.   Ms. Doe's speech was not and is not government speech subject to government control just because students heard it and will or might hear it.

188.   Ms. Doe's speech implicated and implicates a matter of public concern for purposes of the First Amendment.

189.   Ms. Doe's strong interest in being allowed to express her gender identity by using her title and pronouns outweighs any government interest, if any, in preventing her from doing so.

190.   Defendant Lee County School Board is a person within the meaning of 42 U.S.C. § 1983.

191.   Subsection 3 was and is an official policy of Defendant Lee County School Board.

192.   By enforcing or threatening to enforce subsection 3, Defendant Lee County School Board was and is acting under color of state law within the meaning of 42 U.S.C. § 1983.

193.   By enforcing or threatening to enforce subsection 3, Defendant Lee County School Board was and is subjecting Ms. Doe to the deprivation of her right to freedom of speech secured by the First and Fourteenth Amendments.

## COUNT 10

### Violation of the Fourteenth Amendment to the U.S. Constitution

### Deprivation of Equal Protection of the Laws

Pursuant to 42 U.S.C. § 1983

By All Plaintiffs Against Defendants Commissioner of Education, Members of Defendant State Board of Education, and Members of Defendant Education Practices Commission

194.   All Plaintiffs separately bring this claim against Defendants Commissioner of Education, Members of Defendant State Board of Education, and Members of Defendant Education Practices Commission. Plaintiff Katie Wood realleges paragraphs 4, 7–12, 14–61, and 69–92 against them. When answering Ms. Wood's claim against them in this count, each of those Defendants should read "Plaintiff" to refer only to Ms. Wood. Plaintiff Jane Doe realleges paragraphs 5, 7–12, 14–58, 62–

66, 69–74, and 93–102 against them. When answering Ms. Doe's claim against them in this count, each of those Defendants should read "Plaintiff" to refer only to Ms. Doe. Plaintiff AV Schwandes realleges paragraphs 6–13, 17–51, 67–74, and 103–110 against them. When answering Mx. Schwandes's claim against them in this count, each of those Defendants should read "Plaintiff" to refer only to Mx. Schwandes. Each of those Defendants should read "Defendant" in the paragraphs of this count to refer only to that answering Defendant.

195.   Subsection 3 violates the Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution.

196.   Subsection 3 classifies on the basis of sex within the meaning of the Equal Protection Clause.

197.   Subsection 3 is subject to intermediate scrutiny under the Equal Protection Clause.

198.   Subsection 3 fails intermediate scrutiny because Defendant cannot demonstrate an exceedingly persuasive justification—one that is genuine, not hypothesized, not invented *post hoc* in response to litigation, and that does not rely on overbroad generalizations about the different talents, capacities, or preferences of males and females—for its discrimination because of sex. Defendant cannot show that subsection 3 serves an important governmental objective because there is none, and it cannot show that its discriminatory means are substantially related to the

achievement of that objective because they cannot be.

199.   Even if subsection 3 is instead subject to rational-basis review, it fails rational-basis review because its discriminatory classification does not bear a rational relation to any legitimate end.

200.   Defendant is a person within the meaning of 42 U.S.C. § 1983.

201.   By enforcing or threatening to enforce subsection 3, Defendant was and is acting under color of state law within the meaning of 42 U.S.C. § 1983.

202.   By enforcing or threatening to enforce subsection 3, Defendant was and is subjecting Plaintiff to the deprivation of Plaintiff's right to equal protection of the laws secured by the Fourteenth Amendment.

## COUNT 11

**Violation of the Fourteenth Amendment to the U.S. Constitution**

**Deprivation of Equal Protection of the Laws**

Pursuant to 42 U.S.C. § 1983

By Plaintiff Katie Wood Against Defendant Hillsborough County School Board

203.   Plaintiff Katie Wood brings this claim against Defendant Hillsborough County School Board and realleges paragraphs 4, 7–12, 14–61, and 69–92 against it.

204.   Subsection 3 violates the Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution.

205.   Subsection 3 classifies on the basis of sex within the meaning of the Equal Protection Clause.

206.   Subsection 3 is subject to intermediate scrutiny under the Equal Protection Clause.

207.   Subsection 3 fails intermediate scrutiny because Defendant Hillsborough County School Board cannot demonstrate an exceedingly persuasive justification—one that is genuine, not hypothesized, not invented *post hoc* in response to litigation, and that does not rely on overbroad generalizations about the different talents, capacities, or preferences of males and females—for its discrimination because of sex. Defendant Hillsborough County School Board cannot show that subsection 3 serves an important governmental objective because there is none, and it cannot show that its discriminatory means are substantially related to the achievement of that objective because they cannot be.

208.   Even if subsection 3 is instead subject to rational-basis review, it fails rational-basis review because its discriminatory classification does not bear a rational relation to any legitimate end.

209.   Defendant Hillsborough County School Board is a person within the meaning of 42 U.S.C. § 1983.

210.   Subsection 3 is an official policy of Defendant Hillsborough County School Board.

211.   By enforcing or threatening to enforce subsection 3, Defendant Hillsborough County School Board was and is acting under color of state law within the meaning of 42 U.S.C. § 1983.

212.   By enforcing or threatening to enforce subsection 3, Defendant Hillsborough County School Board was and is subjecting Ms. Wood to the deprivation of her right to equal protection of the laws secured by the Fourteenth Amendment.

## COUNT 12

**Violation of the Fourteenth Amendment to the U.S. Constitution**

**Deprivation of Equal Protection of the Laws**

Pursuant to 42 U.S.C. § 1983

By Plaintiff Jane Doe Against Defendant Lee County School Board

213.   Plaintiff Jane Doe brings this claim against Defendant Lee County School Board and realleges paragraphs 5, 7–12, 14–58, 62–66, 69–74, and 93–102 against it.

214.   Subsection 3 violates the Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution.

215.   Subsection 3 classifies on the basis of sex within the meaning of the Equal Protection Clause.

216.   Subsection 3 is subject to intermediate scrutiny under the Equal Protection Clause.

217.   Subsection 3 fails intermediate scrutiny because Defendant Lee County School Board cannot demonstrate an exceedingly persuasive justification—one that is genuine, not hypothesized, not invented *post hoc* in response to litigation, and that does not rely on overbroad generalizations about the different talents, capacities, or preferences of males and females—for its discrimination because of sex. Defendant Lee County School Board cannot show that subsection 3 serves an important governmental objective because there is none, and it cannot show that its discriminatory means are substantially related to the achievement of that objective because they cannot be.

218.   Even if subsection 3 is instead subject to rational-basis review, it fails rational-basis review because its discriminatory classification does not bear a rational relation to any legitimate end.

219.   Defendant Lee County School Board is a person within the meaning of 42 U.S.C. § 1983.

220.   Subsection 3 is an official policy of Defendant Lee County School Board.

221.   By enforcing or threatening to enforce subsection 3, Defendant Lee County School Board was and is acting under color of state law within the meaning of 42 U.S.C. § 1983.

222.   By enforcing or threatening to enforce subsection 3, Defendant Lee

County School Board was and is subjecting Ms. Doe to the deprivation of her right to equal protection of the laws secured by the Fourteenth Amendment.

## COUNT 13

### Violation of Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 *et seq.*

### Discrimination on the Basis of Sex

Pursuant to Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 *et seq.*

By All Plaintiffs Against Defendants Florida Department of Education, State Board of Education, and Education Practices Commission

223. All Plaintiffs separately bring this claim against Defendants Florida Department of Education, State Board of Education, and Education Practices Commission. Plaintiff Katie Wood realleges paragraphs 4, 7–12, 14–61, and 69–92 against them. When answering Ms. Wood's claim against them in this count, each of those Defendants should read "Plaintiff" to refer only to Ms. Wood. Plaintiff Jane Doe realleges paragraphs 5, 7–12, 14–58, 62–66, 69–74, and 93–102 against them. When answering Ms. Doe's claim against them in this count, each of those Defendants should read "Plaintiff" to refer only to Ms. Doe. Plaintiff AV Schwandes realleges paragraphs 6–13, 17–51, 67–74, and 103–110 against them. When answering Mx. Schwandes's claim against them in this count, each of those Defendants should read "Plaintiff" to refer only to Mx. Schwandes. Each of those Defendants should read "Defendant" in the paragraphs of this count to refer only to that answering

Defendant.

224.   Plaintiff is a person within the meaning of Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 ("Title IX").

225.   Defendant operates education programs or activities receiving federal financial assistance within the meaning of Title IX.

226.   Subsection 3 discriminates on the basis of sex within the meaning Title IX.

227.   By enforcing or threatening to enforce subsection 3, Defendant, on the basis of Plaintiff's sex, excludes Plaintiff from participation in, denies Plaintiff the benefits of, and subjects Plaintiff to discrimination, under an education program or activity receiving federal financial assistance, in violation of Title IX.

## COUNT 14

### Violation of Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 *et seq.*

### Discrimination on the Basis of Sex

Pursuant to Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 *et seq.*

By Plaintiff Katie Wood Against Defendant Hillsborough County School Board

228.   Plaintiff Katie Wood brings this claim against Defendant Hillsborough County School Board and realleges paragraphs 4, 7–12, 14–61, and 69–92 against it.

229.   Ms. Wood is a person within the meaning of Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 ("Title IX").

230.   Defendant Hillsborough County School Board operates education programs or activities receiving federal financial assistance within the meaning of Title IX.

231.   Subsection 3 discriminates on the basis of sex within the meaning Title IX.

232.   By enforcing or threatening to enforce subsection 3, Defendant Hillsborough County School Board, on the basis of Ms. Wood's sex, excludes her from participation in, denies her the benefits of, and subjects her to discrimination, under an education program or activity receiving federal financial assistance, in violation of Title IX.

## COUNT 15

### Violation of Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 *et seq.*

### Discrimination on the Basis of Sex

Pursuant to Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 *et seq.*

By Plaintiff Jane Doe Against Defendant Lee County School Board

233.   Plaintiff Jane Doe brings this claim against Defendant Lee County School Board and realleges paragraphs 5, 7–12, 14–58, 62–66, 69–74, and 93–102

against it.

234.   Ms. Doe is a person within the meaning of Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 ("Title IX").

235.   Defendant Lee County School Board operates education programs or activities receiving federal financial assistance within the meaning of Title IX.

236.   Subsection 3 discriminates on the basis of sex within the meaning Title IX.

237.   By enforcing or threatening to enforce subsection 3, Defendant Lee County School Board, on the basis of Ms. Doe's sex, excludes her from participation in, denies her the benefits of, and subjects her to discrimination, under an education program or activity receiving federal financial assistance, in violation of Title IX.

## COUNT 16

### Violation of Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 *et seq.*

### Discrimination on the Basis of Sex

Pursuant to Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 *et seq.*

By Plaintiff AV Schwandes Against Defendant Florida Virtual School Board of Trustees

238.   Plaintiff AV Schwandes brings this claim against Defendant Florida Virtual School Board of Trustees and realleges paragraphs 6–13, 17–51, 67–74, and 103–110 against it.

239.   Mx. Schwandes is a person within the meaning of Title IX.

240.   Defendant Florida Virtual School Board of Trustees operated education programs or activities receiving federal financial assistance, within the meaning of Title IX, during Mx. Schwandes's employment.

241.   Subsection 3 discriminates on the basis of sex within the meaning Title IX.

242.   By enforcing subsection 3 and terminating Mx. Schwandes for not complying with subsection 3, Defendant Florida Virtual School Board of Trustees, on the basis of Mx. Schwandes's sex, excluded them from participation in, denied them the benefits of, and subjected them to discrimination, under an education program or activity receiving federal financial assistance, in violation of Title IX.

## JURY DEMAND

Plaintiffs demand a jury trial on all issues triable of right by a jury.

## DEMAND FOR RELIEF

Plaintiffs respectfully request that the Court:

A.   enter judgment for Plaintiffs on each count set forth above;

B.   declare that subsection 3 of Fla. Stat. § 1000.071 violates federal law on the counts set forth above;

C.   enjoin Defendants, their officers, agents, servants, employees, attorneys, and successors, and other persons who are in active concert or participation

with any such person from enforcing subsection 3 of Fla. Stat. § 1000.071;

      D.     award Plaintiffs compensatory damages, in an amount to be proved at trial;

      E.     award Plaintiff AV Schwandes back pay and front pay, in an amount to be proved at trial;

      F.     award Plaintiffs nominal damages;

      G.     award Plaintiffs their costs, attorney's fees, and expert fees; and

      H.     grant all further necessary or proper relief.

Respectfully submitted.

December 13, 2023

/s/ Sam Boyd
Sam Boyd, Fla. Bar No. 1012141
Carli Raben, Fla. Bar No. 1036013
SOUTHERN POVERTY LAW CENTER
2 S. Biscayne Blvd. Ste. 3750
Miami, FL 33131
(786) 347-2056
(786) 237-2949 (fax)
sam.boyd@splcenter.org
carli.raben@splcenter.org

Aaron S. Fleisher*†
SOUTHERN POVERTY LAW CENTER
1101 17th St NW Ste. 705
Washington, DC 20036
(202) 536-9719
(202) 971-9205 (fax)
aaron.fleisher@splcenter.org
† Not admitted to practice law in DC

Diego A. Soto*‡
Jessica L. Stone*

SOUTHERN POVERTY LAW CENTER
150 E. Ponce De Leon Ave. Ste. 340
Decatur, GA 30030
(404) 221-5837
(404) 221-5857 (fax)
diego.soto@splcenter.org
jessica.stone@splcenter.org
‡ *Admission to GA pending*

Simone Chriss, Fla. Bar No. 124062
Jodi Siegel, Fla. Bar No. 511617
SOUTHERN LEGAL COUNSEL, INC.
1229 NW 12th Ave.
Gainesville, FL 32601
(352) 271-8890
(352) 271-8347 (fax)
simone.chriss@southernlegal.org
jodi.siegel@southernlegal.org

James M. Finberg*
James Baltzer*
ALTSHULER BERZON LLP
177 Post St., Ste. 300
San Francisco, CA 94108
(415) 421-7151
jfinberg@altshulerberzon.com
jbaltzer@altshulerberzon.com

*Counsel for Plaintiffs*

* Pro hac vice *motion forthcoming*

# TAB 11

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF FLORIDA
## TALLAHASSEE DIVISION

Katie Wood *et al.*,

<i>Plaintiffs</i>

v.                                        No. 4:23-cv-00526-MW-MAF

Florida Department of Education *et al.*,

<i>Defendants</i>.

_____/

## <u>PLAINTIFF KATIE WOOD'S</u>
## <u>MOTION FOR PRELIMINARY INJUNCTION</u>

Pursuant to Rule 65 of the Federal Rules of Civil Procedure, Plaintiff Katie Wood ("Ms. Wood") respectfully requests that the Court preliminarily enjoin Defendants Florida Department of Education ("FDOE"), State Board of Education ("SBOE"), Education Practices Commission ("EPC"), Commissioner of Education ("Commissioner"), Members of Defendant SBOE, and Members of Defendant EPC (collectively, "State Defendants"), and Hillsborough County School Board (collectively with State Defendants, "Defendants"), their officers, agents, servants, employees, attorneys, and successors, and other persons who are in active concert or participation with any such person, from enforcing subsection 3 of Florida Statutes ("Fla. Stat.") § 1000.071 (2023) ("subsection 3").

Subsection 3 prohibits Ms. Wood, a transgender teacher, from sharing with

students her title Ms. or that she uses she/her pronouns because those do not, in the state of Florida's view, correspond to her sex assigned at birth. Subsection 3 discriminates against Ms. Wood on the basis of sex under Title VII by treating her differently from women who are not transgender. It violates her First Amendment right to free speech by applying a content- and viewpoint-based prior restraint on her private speech. She is entitled to a preliminary injunction on these claims to end the ongoing injury to her caused by these discriminatory policies because she is likely to succeed on the merits of these claims, her injury is ongoing and irreparable, and her interest in ending that injury outweighs Florida's interest in continuing its discriminatory policy.

## REQUEST FOR ORAL ARGUMENT

Pursuant to Local Rule 7.1(K), Plaintiffs respectfully request oral argument on this motion, which they estimate would take one hour.

## CERTIFICATE OF CONFERRAL

Pursuant to Local Rule 7.1(B), counsel for the Plaintiffs conferred with counsel for all the Defendants against whom relief is sought in this motion on December 20th and 21st. Counsel for Defendants indicated that they oppose the relief sought. The parties have agreed to propose that Defendants be permitted to file their opposition no later than Feb 2, 2023 and are discussing a complete proposed briefing schedule to be submitted at a later date.

# MEMORANDUM OF LAW

## PRELIMINARY STATEMENT

Ms. Wood is a public-school teacher and transgender woman who uses the title Ms. and she/her pronouns. Ex. 1, Declaration of Katie Wood ("Wood Decl.") ¶¶ 2–3. She challenges subsection 3, which states that she may not "provide" her title Ms. and she/her pronouns to any students. Subsection 3 unlawfully requires Ms. Wood to stay silent about or misrepresent a basic element of how she presents herself to the world and conceives of herself—one as fundamental as her name, race, or religion. *Id.* ¶¶ 2, 7, 9–21. In addition to the distress this restriction has caused her, the new regime has disrupted her classroom and confused her students. *Id.* ¶¶ 10–11, 14–21.

Subsection 3 violates Title VII of the Civil Rights Act of 1964 and the Free Speech Clause of the First Amendment to the U.S. Constitution. It violates Title VII because it discriminates against Ms. Wood with respect to the terms, conditions, or privileges of her employment because of her sex. Under subsection 3's regime, although Ms. Wood, as a transgender woman, uses the title Ms. and she/her pronouns in every other aspect of her life, *id.* ¶ 2, she faces revocation of her license and loss of her job for identifying herself as who she is because her sex is deemed male under the statute. Yet she would be free to use that same title and those same pronouns if her sex were deemed female. This sex-dependent outcome is precisely what Title

VII prohibits. *See Bostock v. Clayton Cnty.*, 140 S. Ct. 1731, 1738, 1741 (2020) (holding it was unlawful sex discrimination for a funeral home to fire a transgender woman because she "planned to 'live and work … as a woman,'" including by using she/her pronouns).

Subsection 3 also violates the First Amendment because it unconstitutionally restrains Ms. Wood's speech by requiring her to conceal or misrepresent who she is in all interactions with students inside and outside of school. "[T]he First Amendment's protections extend to 'teachers and students,' neither of whom 'shed their constitutional rights to freedom of speech or expression at the schoolhouse gate.'" *Kennedy v. Bremerton Sch. Dist.* 142 S. Ct. 2407, 2423 (2022) (quoting *Tinker v. Des Moines Indep. Cmty. Sch. Dist.*, 393 U.S. 503, 506 (1969)). Although governments may exercise considerable control over teachers' speech, that does not mean that "everything teachers … say in the workplace [i]s government speech subject to government control." *Id.* at 2425. To hold otherwise would mean "a school could fire a Muslim teacher for wearing a headscarf in the classroom or prohibit a Christian aide from praying quietly over her lunch in the cafeteria." *Id.*

The Court made clear that prohibiting such expressive activity would violate not only the Free Exercise Clause, but also the Free Speech Clause "under any" applicable standard, *id.* at 2426, notwithstanding the fact that a Muslim teacher's choice to wear a headscarf will inevitably result in students' learning about that

teacher's deeply held commitments. Just as Florida cannot constitutionally require Black employees to wear makeup to lighten their skin to conceal their race, bar Latino employees from using certain names in order to conceal their national origin, or require pregnant employees to take leave to conceal their pregnancies, it cannot require Plaintiffs to conceal their titles and pronouns.

Subsection 3 has inflicted and continues to inflict irreparable harm upon Ms. Wood. She loves to teach, but subsection 3 has forced her to choose between living a lie about who she is and giving up that calling. Wood Decl. ¶ 21. That is precisely its goal: to drive her out of the workplace because of who she is. Until subsection 3's enforcement is enjoined, she will continue to suffer daily sex discrimination and prior restraint on her speech under threat of termination and delicensing. The Constitution and federal law do not tolerate Florida's assault on Ms. Wood's dignity and expressive freedom. A preliminary injunction is needed to protect her rights.

## BACKGROUND

### I.    Subsection 3's impact on Ms. Wood

Ms. Wood is a Florida public-school teacher and a transgender woman. Wood Decl. ¶¶ 2–3. Ms. Wood lives, dresses, and presents as a woman everywhere in life, including at work. *Id.* ¶ 2. She uses the title Ms. and she/her pronouns in all aspects of her life. *Id.* Being able to express herself as a woman is necessary for her to feel that she is living truthfully as herself. *Id.*

Ms. Wood received her teaching certificate under her legal name, Katie Wood, in 2021, *id.* ¶ 4, and has taught the second half of Algebra I to tenth-grade students who need additional support at Lennard High School in Hillsborough County since the 2021–2022 school year. *Id.* ¶ 5. She has received "effective" performance evaluations in each year of her employment. *Id.*

Until this school year, Ms. Wood referred to herself using the title Ms. and wrote "Ms. Wood" and "she/her" in the corner of her whiteboard in her classroom and on her syllabi. *Id.* ¶ 7. She also introduced herself as Ms. Wood and put a pin with her she/her pronouns on her lanyard. *Id.* If a student who did not know her was unsure of what to call her or used the wrong title or pronouns for her, Ms. Wood was free to explain her title and pronouns. *Id.*

That all changed this school year. After the enactment of subsection 3, Ms. Wood was informed by her principal that she could no longer use the title Ms. or inform students that she uses she/her pronouns. *Id.* ¶ 9. She was told she could refer to herself using the title Teacher, Coach, or Mr. *Id.* Of these options, she felt that Teacher is the least offensive, but it is unnatural to be called Teacher Wood and extremely painful to use because no other female teacher at her school is prohibited from using Ms. and forced to use the title Teacher instead. *Id.* ¶¶ 9, 17. After this meeting, Ms. Wood missed several days of work and was so upset she became physically ill. *Id.* ¶ 10. It pained Ms. Wood to erase her title and pronouns from her

6

classroom whiteboard because it felt like she was erasing the work she had done to be open and accepting about her gender. *Id.* ¶¶ 11, 14. She replaced her title and pronouns with "Teacher Wood" only after her principal told her she could lose her teaching license if she did not. *Id.* ¶¶ 11, 13–14.

This change confused her students and disrupted her classroom. *Id.* ¶ 15. Instructional time was spent on attempting to respond to students who questioned her about why she had changed her title. *Id.* Some students still call her Ms. Wood, others Teacher Wood, and she has also been referred to by Mr. and he/him pronouns. *Id.* She continues to be harmed by being unable to use at work the title and pronouns that match her gender and that she uses in all other areas of her life. In addition, she faces daily fear that she will inadvertently err and lose her job as a result. *Id.* ¶¶ 18–19.

## II.   Content and enforcement of subsection 3 and implementing regulations

Section 1000.071 was enacted by the Florida Legislature as part of Florida House Bill 1069 (2023). Subsection 1 states that "it shall be the policy of every public K-12 educational institution that is provided or authorized by the Constitution and laws of Florida that a person's sex is an immutable biological trait and that it is false to ascribe to a person a pronoun that does not correspond to such person's sex." Subsection 3 of the statute then states that "[a]n employee or contractor of a public K-12 educational institution may not provide to a student his or her preferred

personal title or pronouns if such preferred personal title or pronouns do not correspond to his or her sex."[1]

Florida law does not define which titles and pronouns "correspond to" which sex. Under subsection 3, titles like Mrs., Ms., and Miss and pronouns like she and her presumably "correspond to" people whose sex is deemed female under the statute; titles like Mr. and pronouns like he and him presumably "correspond to" people whose sex is deemed male under the statute.

The exact limits of subsection 3's prohibition are not clear. For example, it is unclear whether Ms. Wood would violate the statute by stating "I am a woman" or "I don't go by 'Mr.'" These statements do not state explicitly the speaker's title or pronouns but are arguably proscribed by the statute. Moreover, subsection 3's reach is not limited to the workplace or work hours; it applies wherever, whenever, and however an employee interacts with students.

Following the enactment of subsection 3, the Commissioner and the SBOE issued regulations empowering State Defendants to discipline school employees who violate subsection 3, including by suspending or revoking their certifications to

---

[1] "Sex" under subsection 3 means "the classification of a person as either female or male based on the organization of the body of such person for a specific reproductive role, as indicated by the person's sex chromosomes, naturally occurring sex hormones, and internal and external genitalia present at birth." Fla. Stat. § 1000.21(9). This definition of sex is referred to as "biological sex" by some or "sex assigned at birth" by others. Plaintiff assumes for purposes of this case that this definition of sex is consistent with the meaning of sex under the federal constitutional provisions and statutes from which her claims arise.

teach—generally an eligibility requirement for employment as a public-school teacher in Florida. Fla. Stat. § 1012.55(b). Specifically, they amended the Principles of Professional Conduct for the Education Profession in Florida (the "Principles"), Fla. Admin. Code r. 6A-10.081, to make violating § 1000.071, including subsection 3, a disciplinary violation, which in turn constitutes grounds for suspension or revocation of a certificate, Fla. Stat. § 1012.795(1)(j).

State Defendants may learn about violations of subsection 3 in several ways, including from school boards,[2] who must report such violations to the FDOE. Fla. Stat. § 1012.796(1)(d)(1). The FDOE is tasked with investigating potential violations of subsection 3. Fla. Stat. § 1012.796(1)(a). It must then advise the Commissioner of its findings, and the Commissioner is tasked with determining whether there is probable cause to find a violation. Fla. Stat. § 1012.796(3). If the Commissioner concludes there is such probable cause, the Commissioner is responsible for filing and prosecuting a complaint. Fla. Stat. § 1012.796(6). The EPC is tasked with reviewing complaints. It must either dismiss the complaint or impose penalties on the respondent, such as by denying any applications for a certificate, revoking or suspending the respondent's existing certificates, imposing an administrative fine up to $2,000 for each offense, placing the respondent on probation, restricting the authorized scope of the respondent's practice, reprimanding the respondent in writing,

---

[2] All references to "school boards" include Hillsborough County School Board.

and barring the respondent, if their certificate has expired, from applying for a new certificate for up to ten years or permanently. Fla. Stat. § 1012.796(7). The FDOE must place the teacher's name on a publicly available list, which it maintains online, if the respondent's certificate is permanently revoked. Fla. Stat. § 1001.10(4)(b).

The Commissioner and SBOE have also empowered school boards to suspend or terminate the respondent's employment for violating subsection 3, both because certification is generally an eligibility requirement to teach in Florida public schools, Fla. Stat. § 1012.55(b), and because the violation of subsection 3 is a violation of the Principles and hence classified as misconduct, Fla. Admin. Code r. 6A-5.056(2), which constitutes just cause for termination, Fla. Stat. § 1012.33(1)(a). School boards also may count violations of subsection 3 against school personnel in performance evaluations, which could also lead to suspension or dismissal. The Commissioner proposed, and the SBOE approved, an amendment to the Florida Educator Accomplished Practices (the "Practices"), Fla. Admin. Code r. 6A-5.065, to provide that teachers comply with § 1000.071, including subsection 3.

The SBOE is tasked with enforcing school boards' compliance with subsection 3. Fla. Stat. §§ 1001.03(8), 1008.32. The Commissioner is tasked with investigating allegations of school boards' noncompliance, with determining probable cause, and with reporting such determinations to the SBOE. Fla. Stat. § 1008.32(2)(a). If a school board is unwilling or unable to comply, the SBOE is

10

authorized to report that to the Legislature, to withhold funds, to declare the school board ineligible for competitive grants, and to require periodic reporting as to the compliance issues. Fla. Stat. § 1008.32(4).

## ARGUMENT

Ms. Wood seeks a preliminary injunction against the enforcement of subsection 3. "To obtain a preliminary injunction, a movant must show (1) a substantial likelihood that it will ultimately prevail on the merits of the underlying case; (2) that the movant will suffer irreparable injury unless the injunction issues; (3) that the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) that if issued, the injunction would not be adverse to the public interest." *L.E. by & Through Cavorley v. Superintendent of Cobb Cnty. Sch. Dist.*, 55 F.4th 1296, 1299 (11th Cir. 2022).

## III. Ms. Wood is substantially likely to prevail on the merits of her claims.

### A. Ms. Wood has standing.

Ms. Wood seeks only an injunction against enforcement of a single statutory provision—subsection 3, and she has standing to do so. *See Davis v. Fed. Election Comm'n*, 554 U.S. 724, 734 (2008); *CAMP Legal Def. Fund, Inc. v. City of Atlanta*, 451 F.3d 1257, 1271–72 (11th Cir. 2006). Standing requires "(1) an injury in fact, meaning an injury that is concrete and particularized, and actual or imminent, (2) a causal connection between the injury and the causal conduct, and (3) a likelihood

that the injury will be redressed by a favorable decision." *Granite State Outdoor Adver., Inc. v. City of Clearwater*, 351 F.3d 1112, 1116 (11th Cir. 2003). In other words, to obtain an injunction against each defendant, Ms. Wood "must show, at the very least, that the [defendant] has the authority to enforce the particular provision that [s]he has challenged, such that an injunction prohibiting enforcement would be effectual." *Support Working Animals, Inc. v. Governor of Fla.*, 8 F.4th 1198, 1201 (11th Cir. 2021).

Florida's adoption of subsection 3 has enlisted all defendants in the perpetration of an ongoing injury: an unjustified, sex-discriminatory limitation on Ms. Wood's expression both inside and outside her workplace. Her injuries are traceable to and redressable by the Hillsborough County School Board, because, pursuant to a district-level directive, her supervisor instructed her that she may not use her title and pronouns. Wood Decl. ¶¶ 9, 12–13. An injunction would remove the threat of discipline that currently hangs over her. The School Board's actions are also fairly attributable to the SBOE, which is tasked with ensuring that school boards follow state laws like subsection 3. Fla. Stat. §§ 1001.03(8), 1008.32. An injunction against the SBOE would prevent such interference with a teacher's employment. Hence, the School Board's actions are at least in part attributable to the SBOE and would be redressed by enjoining the SBOE from enforcing subsection 3, which would include taking action against districts that do not enforce subsection 3.

The Commissioner and FDOE have the power to bring cases against teachers who violate subsection 3 and its implementing regulations before the EPC, which hears such charges. Fla. Stat. § 1012.796(6)–(7). An injunction would therefore prevent them from taking action together to revoke Ms. Wood's license if she were to violate subsection 3. Importantly, enjoining only the School Board and the SBOE, but not the Commissioner, FDOE, and EPC (or vice versa) would not fully redress Ms. Wood's injuries because either set of entities may independently take action to discipline her or remove her from the classroom.

**B.    Ms. Wood is likely to succeed on the merits of her claim that she is being discriminated against on the basis of sex in violation of Title VII of the Civil Rights Act of 1964.**

**1.    Subsection 3 discriminates "because of sex."**

This is the rare case challenging a law that explicitly and openly "creates a facial classification based on gender." *United Autoworkers v. Johnson Controls, Inc.*, 499 U.S. 187, 197 (1991). That is direct evidence of unlawful discrimination, *Young v. United Parcel Serv., Inc.*, 575 U.S. 206, 213 (2015), and the burden is therefore on Defendants to establish an affirmative defense to rebut the presumption of unlawfulness. *Johnson Controls*, 499 U.S. at 197–200; *see also Cox v. Am. Cast Iron Pipe Co.*, 784 F.2d 1546, 1559 (11th Cir. 1986) (once a policy of sex-based discrimination is established, "a rebuttable presumption that plaintiff was discriminated against because of her sex and is entitled to recovery obtains"); *Hardy v.*

*Porter*, 613 F.2d 112, 114 (5th Cir. 1980)[3] (evidence of a policy of segregation "shifted to the defendants the burden of proving by clear and convincing evidence" that their conduct was not discriminatory).

Title VII prohibits an employer from "discriminat[ing] against any individual with respect to [her] … terms, conditions, or privileges of employment, because of such individual's … sex." 42 U.S.C. § 2000e-2(a)(1). "[A]n employer who intentionally treats a person worse because of sex—*such as by firing the person for actions or attributes it would tolerate in an individual of another sex*—discriminates against that person in violation of Title VII." *Bostock*, 140 S. Ct. at 1740 (emphasis added). Even policies that apply to all genders are still discriminatory if employees are discriminated against on account of their sex at the individual level. *Id.* at 1748 ("Title VII's plain terms and our precedents don't care if an employer treats men and women comparably as groups; an employer who fires both lesbians and gay men equally doesn't diminish but doubles its liability.").

Subsection 3 violates Title VII under *Bostock*: "[I]f changing the employee's sex would … yield[] a different choice by the employer[, ]a statutory violation has occurred." *Id.* at 1741. Subsection 3 prohibits Ms. Wood from providing her Ms. title and she/her pronouns solely because Florida has deemed her sex male. Had

---

[3] Decisions of the Fifth Circuit prior to September 30, 1981, are binding in the Eleventh Circuit. *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981).

Florida deemed her sex female, she could use her title and pronouns without risking her job or her license to teach. In *Bostock*, the employer violated Title VII by firing Aimee Stephens for planning to "work full-time as a woman," *id.* at 1738, because, in the employer's words, "[Aimee]'s a man," Brief in Opposition for Respondent Aimee Stephens at 6, *Bostock*, 140 S. Ct. 1731 (No. 18-107). Like Ms. Stephens, Ms. Wood wishes to (and, for some time, did) "work full time" as a woman; she faces a threat of discipline, delicensing, and termination only because of Defendants' insistence that she is not.

Florida's new regime also engages in precisely the sort of sex-stereotyping long condemned as unlawful sex discrimination by the Supreme Court and the Eleventh Circuit: stereotyping that penalizes individuals for "failing to act and appear according to expectations defined by gender." *Glenn v. Brumby*, 663 F.3d 1312, 1316–17 (11th Cir. 2011) (citing *Price Waterhouse v. Hopkins*, 490 U.S. 228, 250–51 (1989)); *see also id.* at 1320–21 (holding that an employer fired a transgender woman for dressing as a woman and noting that, "[i]f this were a Title VII case, the analysis would end here"); *Price Waterhouse*, 490 U.S. at 251 ("An employer who objects to aggressiveness in women but whose positions require this trait places women in an intolerable and impermissible catch 22: out of a job if they behave aggressively and out of a job if they do not. Title VII lifts women out of this bind."). Subsection 3's prohibition and the consequences that befall violators apply to

teachers only when they "fail[] to act … according to expectations defined by" the sex Florida deems them to be. "[W]e are beyond the day when an employer could evaluate employees by assuming or insisting that they matched the stereotypes associated with their group." *Brumby*, 664 F.3d at 1316–17 (quoting *Price Waterhouse*, 490 U.S. at 251) (cleaned up). But that is precisely what subsection 3 requires.

### 2.   Ms. Wood has been "discriminate[d] against … with respect to [her] … terms, conditions, or privileges of employment."

Ms. Wood has been "discriminate[d] against … with respect to [her] … terms, conditions, or privileges of employment." 42 U.S.C. § 2000e-2(a)(1). The Eleventh Circuit has interpreted that phrase to require an "adverse employment action," which need not be an ultimate employment decision, so long as it "alter[s] the employee's compensation, terms, conditions, or privileges of employment, deprive[s] him or her of employment opportunities, or adversely affect[s] his or her status as an employee." *Crawford v. Carroll*, 529 F.3d 961, 970 (11th Cir. 2008) (citation omitted).[4] To assess whether an employment practice is adverse, courts in the Eleventh Circuit "use an objective test, asking whether 'a reasonable person in [the plaintiff's] position would view the employment action in question as adverse.'" *Hinson v. Clinch*

---

[4] The Supreme Court is currently reviewing the degree of harm needed to meet this test. *Muldrow v. City of St. Louis*, 143 S. Ct. 2686 (2023). At oral argument, several Justices seemed to suggest that being classified by sex or race could alone impose a dignitary harm sufficient to meet the statutory test. Oral Argument at 10:45, 1:03:35, 1:06:55, 1:10:46, 1:25:00, *Muldrow v. City of St. Louis*, No. 22-193, https://www.oyez.org/cases/2023/22-193.

*Cnty.*, 231 F.3d 821, 829 (11th Cir. 2000) (quoting *Doe v. Dekalb Cnty. Sch. Dist.*, 145 F.3d 1441, 1449 (11th Cir. 1998)).

Title VII "is not limited to 'economic' or 'tangible' discrimination. The phrase 'terms, conditions, or privileges of employment' evinces a congressional intent 'to strike at the entire spectrum of disparate treatment of men and women' in employment." *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 64 (1986) (quoting *L.A. Dep't of Water & Power v. Manhart*, 435 U.S. 702, 707 n.13 (1978)). No court has considered whether being prohibited from expressing who one is meets this standard. But many women would find their working conditions dramatically changed if they were suddenly prohibited from introducing themselves to coworkers and clients as Ms. and from using she/her pronouns—as would many others faced with similar restrictions on their most basic expressive choices.

Consider a school that permitted Christian employees to wear religious symbols and to disclose their religious commitments aloud, but which prevented Muslim employees from doing the same, or a school that explicitly prohibited Black employees, but not others, from wearing hairstyles that did not "conform to their race." Such stigmatizing rules are at least as adverse a change to the conditions of employment for those who are subjected to them as other non-financial harms the courts have previously recognized are sufficient to violate Title VII. *See Holland v. Gee*, 677 F.3d 1047, 1058 (11th Cir. 2012) (holding that transfer to a position of equal pay but

less prestige is an adverse employment action); *Ferrill v. Parker Grp., Inc.*, 168 F.3d 468, 472 (11th Cir. 1999) (holding that employer's policy of assigning employees call lists and scripts based on race is direct evidence of unlawful disparate treatment).

Moreover, there is no question that Ms. Wood would suffer an adverse employment action if she violated the policy and was fired and stripped of her teaching license for doing so. Finding that subsection 3's requirement is not an adverse employment action would require her to risk her job by violating it or to continue to endure it without recourse, "an intolerable and impermissible catch 22." *Price Waterhouse*, 490 U.S. at 251. "Title VII lifts [Plaintiff] out of this bind." *Id.*

### 3. Defendants are subject to liability under Title VII.

Title VII provides that it is "an unlawful employment practice for *an employer*—(1) to fail or refuse to hire or to discharge *any individual*, or otherwise to discriminate against *any individual* with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's … sex[.]" 42 U.S.C. § 2000e-2(a) (emphasis added).

As Ms. Wood's direct employer, Hillsborough County School Board is subject to liability when it discriminates against her in violation of Title VII.

The FDOE, SBOE, and EPC are also "employer[s]" within the meaning of Title VII. *See* 42 U.S.C. § 2000e(a)–(b). "It is clear from the language of [Title VII] that Congress intended that the rights and obligations it created under Title VII

would extend beyond the immediate employer-employee relationship." *Zaklama v. Mt. Sinai Med. Ctr.*, 842 F.2d 291, 294 (11th Cir. 1988); *see also id.* (quoting *Sibley Mem'l Hosp. v. Wilson*, 488 F.2d 1338, 1341 (D.C. Cir. 1973) ("To permit a covered employer to exploit circumstances peculiarly affording it the capability of discriminatorily interfering with an individual's employment opportunities with another employer, while it could not do so with respect to employment in its own service, would be to condone continued use of the very criteria for employment that Congress has prohibited.")). At least one court has held that the FDOE is a proper defendant in a Title VII case brought by teachers directly employed by district school boards because "[the FDOE] was up to its elbows in the allegedly unlawful practice" through its control over school board funding and over the implementation of the discriminatory policy. *Fla. Educ. Ass'n v. Dep't of Educ.*, No. 4:17-CV-414, 2018 WL 10560519, at *3 (N.D. Fla. Dec. 19, 2018); *accord Ass'n of Mexican-Am. Educators v. California*, 231 F.3d 572, 582 (9th Cir. 2000) ("[I]n addition to controlling local districts' budgets and textbooks and regulating the duties of public school employees, the state dictates whom the districts may and may not hire. That degree of control over districts' hiring decisions subjects Defendants to the coverage of Title VII in this case.").

Here, the SBOE and FDOE are similarly "up to [their] elbows in the allegedly unlawful practice." *Fla. Educ. Ass'n*, 2018 WL 10560519, at *3. The SBOE

amended the Principles to make violating subsection 3 a "disciplinary violation," Fla. Admin. Code r. 6A-10.081(2)(a)(14), and the Practices to establish that "ensuring that the learning environment is consistent with § 1000.071" is a criterion for being an effective educator, Fla. Admin. Code r. 6A-5.065(2)(a)(2)(h). The SBOE and EPC also directly control the hiring of school boards' teachers. Ms. Wood's performance evaluation must be based upon the indicators outlined in the Practices, including compliance with subsection 3. *See* Fla. Stat. § 1012.34(3)(a)(2).

Further, the "disciplinary violation" created by the SBOE in the Principles is enforceable not only by school boards, but also by the EPC, which may suspend or revoke the educator certificate "of any instructional personnel or school administrator" for disciplinary violations. Fla. Stat. § 1012.795(1)(j). Similar to the California teacher credential at issue in *Association of Mexican-American Educators*, 231 F.3d at 582, Florida's educator certificate is required for public school teachers in the state, but it is not mandatory for private school teachers. *See* Fla. Stat. § 1012.32. Thus, the State Defendants "dictate[] whom the districts may and may not hire," which subjects them to the coverage of Title VII. *Ass'n of Mexican-Am. Educators*, 231 F.3d at 582.

Finally, the SBOE, like the state in *Association of Mexican-American Educators*, also controls funding to school boards. State law gives the SBOE the authority to "oversee the performance of … district school boards," and to "determine[] …

20

[whether] a district school board … is unwilling or unable to comply with law or state board rule." Fla. Stat. § 1008.32. If the SBOE determines that a district school board is not complying with the law, the SBOE is empowered to "[w]ithhold the transfer of state funds, discretionary grant funds, discretionary lottery funds, or any other funds specified as eligible for this purpose by the Legislature" and to "[d]eclare the … school district … ineligible for competitive grants." Fla. Stat. § 1008.32(4)(b)–(c). Thus, because subsection 3 is a law enforceable by the SBOE, all school boards currently operate under the SBOE's threat of withheld funding if they refuse to enforce subsection 3's discriminatory policy. Such control over funding strengthens the conclusion that the SBOE is interfering with Ms. Wood's employment and is subject to liability under Title VII.

### C.   Ms. Wood is likely to succeed on her claim that subsection 3 violates the First Amendment.

The Supreme Court has made clear that the government may not use its power as an employer to censor teachers by denying them the right to engage in core speech activities merely because students might witness them doing so. *Kennedy*, 142 S. Ct. at 2407. Just as the government may not "fire a Muslim teacher for wearing a headscarf in the classroom or prohibit a Christian aide from praying quietly over her lunch in the cafeteria," *id.* at 2425, Defendants may not prohibit teachers from using in the workplace the titles and pronouns they use in every other aspect of their lives.

Free speech claims by government employees are usually analyzed under the

*Pickering–Garcetti* test. *Kennedy*, 142 S. Ct. at 2423 (citing *Pickering v. Bd. of Educ.*, 391 U.S. 563 (1968) and *Garcetti v. Ceballos*, 547 U.S. 410 (2006)). Under the first step, courts ask whether the "employee speaks 'pursuant to … official duties,'" or whether the "employee 'speaks as a citizen addressing a matter of public concern.'" *Kennedy*, 142 S. Ct. at 2423 (quoting *Garcetti*, 547 U.S. at 421, 423). If the public employee's speech implicates a matter of public concern, courts proceed to the second step, at which they evaluate whether the "employee's speech interests are outweighed by 'the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees.'" *Id.* (quoting *Garcetti*, 547 U.S. at 417).

## 1. Ms. Wood spoke as a private citizen on a matter of public concern.

*Kennedy* held that a public-school football coach spoke as a private citizen on a matter of public concern when he prayed on the fifty-yard line of the football field after games in view of his players. *Id.* at 2416–20. The Court explained that though Mr. Kennedy "remained on duty" at the time of his prayers and conducted them "'within the office' environment—here, on the field of play," they nonetheless were not within his duties as a government employee. *Id.* at 2425. In other words, although Mr. Kennedy was engaging in expressive conduct that he knew his students (among other members of the public) could not help but witness, and although he did so while undisputedly on the job (interacting with students in his place of work), he

nonetheless spoke as a private citizen. "He was not seeking to convey a government-created message" as he would by "instructing players, discussing strategy, encouraging better on-field performance, or engag[ing] in any other speech the District paid him to produce as a coach." *Id.* at 2424. "Simply put," the Court explained, "Mr. Kennedy's prayers did not 'owe their existence' to Mr. Kennedy's responsibilities as a public employee." *Id.* (quoting *Garcetti*, 547 U.S. at 421) (cleaned up).

Here, too, the fact that Ms. Wood wishes to use her title and pronouns at school does not transform her speech into government speech merely because students will witness or hear it. In a certain sense, the fact that Ms. Wood is in a position to write her title and pronouns on her classroom board and say them to, or within earshot of, students "owe[s its] existence" to her job as a teacher. But in that sense Mr. Kennedy's prayers too "owe[d] their existence" to his job because had he not been employed by the school as a football coach, he would not have been on the field at football games, and no one would have seen him pray. *Kennedy* thus rejects a but-for test under which an employee's speech is protected only if it would have occurred even if they had not been employed by the government.

*Kennedy* instead relied on the fact that the *content* of the speech at issue was not something the government had created or directed. What Mr. Kennedy said when he prayed, to whom he prayed, or the choice to pray at that time instead of engage in other permitted activities, had nothing to do with his duties as a coach. Ms.

Wood's use of her title and pronouns is no different. Like Mr. Kennedy's prayers, Ms. Wood's title and pronouns are not something that the state determines and reflects no state message. Nor may Florida transform them into a state message by legislating about it. As *Kennedy* made explicit, a government may not use ad hoc or "'excessively broad job descriptions' to subvert the Constitution's protections." *Id.* (quoting *Garcetti*, 547 U.S. at 424).

Moreover, like Mr. Kennedy, Ms. Wood's speech is in a context in which other teachers are free to engage in various private forms of speech. Just as some teachers might wish to share their titles and pronouns on their classroom boards or when introducing themselves to students, other teachers are free to share in a private capacity other information about themselves, like the names of their partners, the status of their pets, their favorite sports teams, and the holidays they celebrate. Teachers are not automatons, programmed to speak solely about the contents of their curricula. They interact with their students as human beings with personalities, identities, families, and interests. For the purposes of the Free Speech Clause, singling out Ms. Wood's title and pronouns for a restriction on private speech is as impermissible as it was for the school district in *Kennedy* to "single out private religious speech for special disfavor." *Id.* at 2416.

Nor is the fact that Ms. Wood wishes to speak in a classroom to students dispositive. In *Kennedy*, the Court rejected the argument that Mr. Kennedy's prayers

24

were part of his official duties simply because they were witnessed by students. The government, when it speaks, may sometimes take positions on controversial topics. But *Kennedy* makes clear that it may not use that power to define its employees' duties so broadly as to suppress protected speech activity undertaken by public school employees in their private capacities. *Id.* at 2424. Moreover, subsection 3 goes further than the restriction at issue in *Kennedy*. It restricts teachers' speech in all interactions with students, at all times—in the classroom, outside the classroom, and outside the schoolhouse altogether.

Even before *Kennedy*, at least one court had concluded that a teacher speaks as a private citizen when answering student questions about the teacher's sexual orientation. *Weaver v. Nebo Sch. Dist.*, 29 F. Supp. 2d 1279, 1281 (D. Utah 1998) (holding it was a First Amendment violation to punish teacher for coming out to students). Since *Kennedy*, another court has already ruled that a coach was speaking in his private capacity on a matter of public concern when he replaced a poster created by his university's athletic department including the phrase "Black Lives Matter" with one of his own design reading "All Lives Matter to Our Lord and Savior Jesus Christ." *Beathard v. Lyons*, 620 F. Supp. 3d 775, 781–82 (C.D. Ill. 2022).

Ms. Wood also spoke on a matter of public concern for purposes of the *Pickering–Garcetti* test. Florida's state-wide policy "that a person's sex is an immutable biological trait and that it is false to ascribe to a person a pronoun that does not

25

correspond to such person's sex" should alone make clear that Ms. Wood's gender expression is apparently a matter of public concern in Florida. Fla. Stat. § 1000.071(1). And although the parties in *Kennedy* did not dispute that Mr. Kennedy's speech was on a matter of public concern, the Court did not question that fact. Preventing Ms. Wood from using her title and pronouns is no more permissible on public concern grounds than banning Mr. Kennedy from praying or a Muslim teacher from wearing a headscarf.

### 2.     The balance of interests favors Ms. Wood.

The second step of the *Pickering–Garcetti* test, interest balancing, is almost automatically resolved in Ms. Wood's favor to the extent that the government is attempting to compel her to speak the government's message. *Janus v. Am. Fed'n of State, Cnty., & Mun. Emps., Council 31*, 138 S. Ct. 2448, 2473 (2018) ("[I]t is not easy to imagine a situation in which a public employer has a legitimate need to demand that its employees recite words with which they disagree. And we have never applied *Pickering* in such a case."). Here, the state is compelling Ms. Wood to call herself Teacher rather than Ms. and to avoid answering or lie if asked by a student what title or pronouns she uses or even whether she is a woman. By statute, and under threat of delicensing, she must choose between risking her job by answering truthfully, answering in a manner that is inconsistent with her beliefs, simply ignoring the question, or stating that she is not permitted to answer—an action that itself sends an

expressive message that is contrary to what that teacher believes. This is no less a violation of the First Amendment than it would be to force a teacher who wears a cross either to lie or to walk away or state that she cannot answer when asked by a student whether the cross she wears expresses her Christian faith or to prohibit teachers from answering any questions about their race or national origin. No interest-balancing analysis is needed to hold this unconstitutional.

Even if interest balancing were to apply, "widespread" government policies which "chill[] potential speech before it happens" give rise to "far more serious concerns" than the specific responses to individual speech acts considered in the standard *Pickering–Garcetti* case. *United States v. Nat'l Treasury Emps. Union*, 513 U.S. 454, 468 (1995); *see also Janus*, 138 S. Ct. at 2472. In such cases, "the Government's burden is greater"; it must "show that the interests of … a vast group of present and future employees in a broad range of present and future expression are outweighed by that expression's 'necessary impact on the actual operation' of the Government." *Nat'l Treasury Emps. Union*, 513 U.S. at 468; *see also Janus*, 138 S. Ct. at 2472 (characterizing this as a "heavier" burden than most *Pickering–Garcetti* cases). "The end product of those adjustments is a test that more closely resembles exacting scrutiny than the traditional *Pickering* analysis." *Janus*, 138 S. Ct. at 2472. Moreover, government suppression of speech before it is spoken constitutes a prior restraint on speech, "the most serious and the least tolerable infringement on First Amendment

rights." *Nebraska Press Ass'n v. Stuart*, 427 U.S. 539, 559 (1976). "Any system of prior restraint … comes to [the] Court bearing a heavy presumption against its constitutional validity." *F.W/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 225 (1990) (quoting *Se. Promotions, Ltd. v. Conrad*, 420 U.S. 546, 558 (1975)).

The government cannot meet its heavy burden to justify its blanket policy of prior restraint. Ms. Wood's strong interest in being allowed to provide and use her title and pronouns easily outweighs the government's interest in silencing such expression. As explained in her declaration, it is deeply distressing for Ms. Wood to be forced to conceal who she is. Wood Decl. ¶¶ 10–11, 14, 16–21. The present regime wastes class time, singles her out from other teachers, and stigmatizes her with the authority of the state. *Id.* ¶¶ 9, 15, 21.

Subsection 3's restriction on Ms. Wood's speech rights is not only content-based but also viewpoint-based. "In general, viewpoint-based restrictions on expression require greater scrutiny than subject-matter-based restrictions." *R.A.V. v. City of St. Paul*, 505 U.S. 377, 431 (1992) (Stevens, J., concurring); *see also id.* 388–92. In this sense, Florida's regime is *more* violative of the First Amendment than one that would bar both a Muslim teacher from wearing her headscarf and a Christian teacher from wearing her cross. Florida's regime is more akin to one that permits the cross but bans the headscarf (or vice versa). Florida now permits public employees to express in their capacities as private citizens certain views about which titles and

pronouns are appropriate for a particular individual, even as it silences (under threat of discipline and decertification) the expression of others.

Moreover, to the extent that Defendants argue that the law is intended to prevent students from learning about the existence of transgender people or somehow to stop the contagion of "gender ideology,"[5] that interest is both invalid and, in any event, not served by subsection 3. Consider a teacher who presents as male and sports a beard, but who may no longer use the title Mr. to identify himself; or a teacher, like Ms. Wood, who presents as female, but who may no longer use the title Ms. to identify herself.

In short, Defendants cannot explain why Florida's policy of restricting Ms. Wood's speech genuinely furthers any legitimate interest. The statutory scheme instead appears to be a crudely disguised cover for pushing transgender and nonbinary people out of the profession entirely—an illegitimate interest. *Romer v. Evans*, 517 U.S. 620, 632 (1996) (holding that a law that "seems inexplicable by anything but animus toward the class it affects … lacks a rational relationship to legitimate state interests").

## IV.    Ms. Wood will suffer irreparable harm until an injunction is issued.

Ms. Wood's injuries are ongoing and irreparable. First, she is required, on a

---

[5] Yacob Reyes, "What's in a name: 'don't say gay' vs. 'parental rights'", Tampa Bay Times (March 31, 2022), https://www.tampabay.com/news/florida-politics/2022/03/31/whats-in-a-name-dont-say-gay-vs-parental-rights/.

daily basis, to avoid using the pronouns and title that she uses in every area of life—a restriction that constitutes ongoing discrimination on the basis of sex. It is settled in the Eleventh Circuit that courts are to "presume irreparable harm in Title VII cases" once administrative remedies have been exhausted. *Baker v. Buckeye Cellulose Corp.*, 856 F.2d 167, 169 (11th Cir. 1988) (citing *United States v. Jefferson Cnty.*, 720 F.2d 1511, 1520 (11th Cir. 1983)); *see also Gresham v. Windrush Partners, Ltd.*, 730 F.2d 1417, 1423 (11th Cir. 1984). Ms. Wood is currently forced to live under threat of termination and delicensing because of a statutory scheme that restricts her expressive conduct because of her sex. That is an ongoing and irreparable injury.

Second, as noted above, Ms. Wood is also being subjected to an ongoing, content- and viewpoint- based restriction on her speech. "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976); *see also Barrett v. Walker Cnty. Sch. Dist.*, 872 F.3d 1209, 1229 (11th Cir. 2017) (citing *Siegel v. LePore*, 234 F.3d 1163, 1178 (11th Cir. 2000) (en banc) ("The only areas of constitutional jurisprudence where we have said that an on-going violation may be presumed to cause irreparable injury involve the right of privacy and certain First Amendment claims establishing an imminent likelihood that pure speech will be chilled or prevented altogether.")); *Nebraska Press Ass'n*, 427 U.S. at 559.

**V.     The injury to Ms. Wood outweighs whatever damage the proposed injunction might cause Defendants, and the injunction would not be adverse to the public interest.**

Ms. Wood is being compelled by subsection 3 to conceal or misrepresent her gender on a daily basis. That injury continues to accrue. In contrast, the state has no interest in subjecting Ms. Wood to sex discrimination or compelling her to convey its message about gender. As noted above, subsection 3 cannot serve any interests related to preventing "contagion" of "gender ideology" because it is not crafted to protect anyone from learning about the existence of transgender people. The only plausible purpose of subsection 3 is to stigmatize transgender and nonbinary teachers and to drive them out of the classroom. These are not legitimate government interests. *Romer*, 517 U.S. at 632. Such interests cannot outweigh the significant harm to Ms. Wood's dignity caused by being forced to choose every day between risking termination or delicensing and being who she is.

## CONCLUSION

Ms. Wood respectfully requests that the Court grant her motion and preliminarily enjoin Defendants, their officers, agents, servants, employees, and attorneys, and other persons who are in active concert or participation with any such person, from enforcing subsection 3.

Respectfully submitted.

December 21, 2023                          */s/ Sam Boyd*_____
                                                          Sam Boyd, Fla. Bar No. 1012141

31

Carli Raben, Fla. Bar No. 1036013
SOUTHERN POVERTY LAW CENTER
2 S. Biscayne Blvd. Ste. 3750
Miami, FL 33131
(786) 347-2056
(786) 237-2949 (fax)
sam.boyd@splcenter.org
carli.raben@splcenter.org

Aaron S. Fleisher[†§]
SOUTHERN POVERTY LAW CENTER
1101 17th St NW Ste. 705
Washington, DC 20036
(202) 536-9719
(202) 971-9205 (fax)
aaron.fleisher@splcenter.org
[†] *Not admitted to practice law in DC*

Diego A. Soto[‡§]
Jessica L. Stone[§]
SOUTHERN POVERTY LAW CENTER
150 E. Ponce De Leon Ave. Ste. 340
Decatur, GA 30030
(404) 521-6700
(404) 377-0708 (fax)
diego.soto@splcenter.org
jessica.stone@splcenter.org
[‡] *Admission to GA pending*

Simone Chriss, Fla. Bar No. 124062
Jodi Siegel, Fla. Bar No. 511617
SOUTHERN LEGAL COUNSEL, INC.
1229 NW 12th Ave.
Gainesville, FL 32601
(352) 271-8890
(352) 271-8347 (fax)
simone.chriss@southernlegal.org
jodi.siegel@southernlegal.org

James M. Finberg[*]

James Baltzer[*]
ALTSHULER BERZON LLP
177 Post St., Ste. 300
San Francisco, CA 94108
(415) 421-7151
jfinberg@altshulerberzon.com
jbaltzer@altshulerberzon.com

*Counsel for Plaintiffs*

[*] Pro hac vice *motion forthcoming*
[§] *Admitted* pro hac vice

33

## CERTIFICATE OF WORD COUNT

According to Microsoft Word, the word-processing system used to prepare this Motion and Memorandum, there are 245 total words contained within the Motion, and there are 7421 words contained within the Memorandum of Law.

December 21, 2023                    _/s/ Sam Boyd_____
                                     Sam Boyd

# TAB 11-1

**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION**

Katie Wood *et al.*,

*Plaintiffs*,

v.                                          No. 4:23-cv-00526-MW-MAF

Florida Department of Education *et al.*,

*Defendants*.

_____/

**DECLARATION OF PLAINTIFF KATIE WOOD
IN SUPPORT OF
PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**

I, Katie Wood, declare based on my own personal knowledge, as follows:

1.      My name is Katie Wood. I am a plaintiff in this case.

2.      I am a transgender woman. My gender identity is female, but my sex assigned at birth is male. I socially transitioned to being a woman in 2020, everywhere in my life. My outward expression is feminine. I often wear jewelry and frilly, feminine clothing when I am not wearing school shirts. I use the title Ms. and she/her pronouns. Being able to express myself as woman publicly, including by using my Ms. title and she/her pronouns, is essential to my identity. It is what I need to be true to myself, to be the best version of myself, to love myself, and to experience the joy of living as myself.

3.      I am a teacher at Lennard High School in Hillsborough County, Florida. I have lived in Hillsborough County my entire life. I have been employed by Defendant Hillsborough County School Board since the 2021–2022 school year.

4.      I received my Florida teaching certificate under my legal name, Katie Wood, in 2021.

5.      I am in my third year of teaching at Lennard. I teach the second half of Algebra I to tenth-grade students who need additional support. Lennard has rated me an "effective" teacher in my performance evaluations, and my students have test scores above the district average.

6.      When I was hired, I was open about being a transgender woman. My principal told me that I would be supported. I have never hidden that I am transgender from my superiors, my colleagues, or my students.

7.      During the 2021–2022 and 2022–2023 school years, I referred to myself as Ms. Wood and by she/her pronouns. I introduced myself this way to my students. I wrote "Ms. Wood" and "she/her" in the corner of my whiteboard in my classroom and on my syllabi, I referred to myself as Ms. Wood in any communications I had with students, and I stuck a pin with my she/her pronouns on my lanyard. Nearly all of my colleagues called me Katie or Ms. Wood, and my students called me Ms. Wood. If someone referred to me as Mr. Wood or by he/him pronouns, I could tell them that I go by Ms. Wood and she/her pronouns.

8.      During this school year and in previous years, several of my students have been switched to a different class in response to their parents' complaints about my being a transgender woman. I have been told by my principal that sometimes these parents have called me derogatory names.

9.      Near the beginning of the 2023–2024 school year my principal informed all teachers of the pronoun law at a faculty meeting. She read an update from the school district about the new pronoun policy. The directive was that the "law states that if a teacher identifies with a gender other than their birth gender, they are not permitted to ask students to call them by the gender they identify with. They can use Coach, Teacher, Professor, etc., but they cannot be biologically a Ms. and ask students to call them Mr. and vice versa. [They] [c]annot use Mx. either." When I asked if the school wanted me to use Mr., my principal specified that this was coming from the state, not the school, and that I could also use Coach or Teacher. I refuse to use Coach because, although I coached the women's basketball teams in the 2022–2023 school year, the school hired a new coach this year. The principal also advised teachers that we cannot correct students who refer to us by titles and pronouns that are consistent with our sex assigned at birth, which I understand to mean that I cannot even tell students who refer to me using Mr. or he/him pronouns that my title under state law is Teacher.

10.     After the faculty meeting, I became very anxious about the law. The

next day, I almost passed out and had to leave work early. I then missed the rest of the week and the first two days of the following week due to my anxiety over the law and potentially losing my job because of the law. Every day I missed, I wanted to go back because I love teaching, but I was so upset that I was physically ill. Teaching is my life's passion, and I cannot lose it.

11.     When I returned to school, for another week or two, I continued to refer to myself as Ms. Wood and by she/her pronouns and kept "Ms. Wood" and "she/her" written on the board. I could not bring myself to physically erase them because it was too painful.

12.     Several weeks later, I emailed every school board member and Owen Young in the district office regarding my concerns with the title and pronoun policy. Several members of the school board responded and spoke with me. They all said there was nothing they could do because it was a state law. Later that week, I had a meeting with my principal during which she restated the same policy from the faculty meeting.

13.     The next week, my principal and my Assistant Principal of Curriculum (APC) came to my classroom. During this impromptu meeting, first the APC and then my principal noticed that I still had "Ms. Wood" and "she/her" written on my board. My principal told me that I really needed to take them down to comply with state law. She told me that, if I did not take down my title and pronouns, I could get

my teaching certificate taken away.

14.     It was extremely difficult for me to erase "Ms. Wood" and "she/her" from my whiteboard. I just could not remove them because it felt like a betrayal of who I am, like I was erasing everything I have worked so hard for, all of the pain of learning to accept myself, and I had a visceral reaction to being forced back. But I did not want to lose my teaching certificate or job, so I did it. I erased "Ms. Wood" and "she/her" and wrote "Teacher Wood" on my board right there in front of my principal and APC. At that moment, I could not hold in my pain because I was overwhelmed by every terrible feeling and expressed out loud how much it hurt to erase it. Later that same day, I removed my pronoun pin from my lanyard.

15.     Starting the very next period, in which I had a new student, I began introducing myself as Teacher Wood to new students, referring to myself as Teacher Wood, and using Teacher Wood in all communications. I did not reintroduce myself to my classes, but students noticed "Teacher Wood" written on my board. Many seemed confused. The title change took away from instructional time because it took many conversations during many periods over several days for my students to stop questioning me about it. Although most students continue to call me Ms. Wood, others have switched to Teacher Wood. Since I started going by Teacher Wood, several students have referred to me using he/him pronouns or by Mr.

16.     After the impromptu meeting in my classroom, I met with the Chief of

5

Staff for the school district about the law. I was told the title and pronoun policy was state law and out of the district's hands. Now that I realized there was nothing the district could do, I resolved to fight the state law. I felt the best way to do so was to avoid losing my teaching license and being fired, so I begrudgingly decided to keep going by Teacher Wood, despite the pain it causes me every day.

17.   Even after several weeks, going by Teacher Wood is still extremely painful. It just feels like a different language coming out of my mouth. The practice of getting used to it is not the same as becoming okay with it. It will always be unnatural because it is not who I am.

18.   It has been difficult to remember not to call myself Ms. Wood because it is my name and natural for me. I sometimes just forget that I am supposed to go by Teacher Wood because that is not who I am. Although I have caught myself many times, a few times I have accidentally referred to myself as Ms. Wood. I am afraid that one day slipping up will lead to losing my job.

19.   As a teacher, my title is how I am known. It would not be appropriate for me to refer to myself using my first name because that is not how any teachers in my school, as professionals who want to retain the respect of students and colleagues, refer to themselves. I hear and use my title hundreds of times a day. Before this law, I would often tell students: "If you need anything, just say 'Hey, Ms. Wood,'" and similar phrases, but now I have to try to avoid referring to myself

in the third person because the less I say my title and pronouns, the less I risk slipping up and risking my job.

20.     I cannot even fathom having to go by Mr. Wood. Just thinking about it brings up immediate feelings of disgust and feels like a betrayal of myself. I have never taught as Mr. Wood and just hearing the title brings me back to the turmoil and uncertainty I lived with before I transitioned.

21.     This law takes away my basic humanity. It makes me feel like the State of Florida told me that I am doing something wrong just for being transgender, just for existing as a transgender person. They took my title and my identity away. It devastates me that I am being forced to choose between, on the one hand, my life's work and my passion for teaching and, on the other hand, being true to myself. In addition to taking away my humanity, this law takes away my voice. The fact that my students who choose to can still call me by my proper title, Ms. Wood, but I cannot refer to myself by my own name is dehumanizing and disempowering.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on December 18, 2023              /s/ Katie Wood
                                           _____
                                           Katie Wood

                                           *Plaintiff*

**TAB 56**

# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF FLORIDA
# TALLAHASSEE DIVISION

Katie Wood, Jane Doe, and AV Schwandes,

*Plaintiffs*,

v.

Florida Department of Education; State Board of Education; Monesia Brown, Esther Byrd, Grazie Christie, Kelly Garcia, Benjamin Gibson, MaryLynn Magar, and Ryan Petty, *in their official capacities as members of Defendant State Board of Education*; Commissioner of Education; Education Practices Commission; Aadil Ameerally, Jared Barr, Michael Butcher, Elayne Colon, Ann Copenhaver, Joseph Goodwin, Benjamin Henry, Timothy Holley, Lisa Innerst, Jeffrey Johnson, Kenneth LaPee, Mason Lewis, Sallie Murphy, Christine Plaza, Kevin Rowe, Charles Shaw, Orenthya Sloan, Marc Snyder, Malcolm Thomas, Jordan Tompkins, and Kathy Wilks, *in their official capacities as members of Defendant Education Practices Commission*; Hillsborough County School Board; Lee County School Board; and Florida Virtual School Board of Trustees,

*Defendants*.

Case No. 4:23-cv-00526-MW-MAF

—————————————————————/

# FIRST AMENDED COMPLAINT

Plaintiffs Katie Wood ("Ms. Wood"), Jane Doe, and AV Schwandes ("Mx. Schwandes") file this complaint against Defendants Florida Department of

Education; State Board of Education; Monesia Brown, Esther Byrd, Grazie Christie, Kelly Garcia, Benjamin Gibson, MaryLynn Magar, and Ryan Petty, in their official capacities as members of Defendant State Board of Education; Commissioner of Education; Education Practices Commission; and Aadil Ameerally, Jared Barr, Michael Butcher, Elayne Colon, Ann Copenhaver, Joseph Goodwin, Benjamin Henry, Timothy Holley, Lisa Innerst, Jeffrey Johnson, Kenneth LaPee, Mason Lewis, Sallie Murphy, Christine Plaza, Kevin Rowe, Charles Shaw, Orenthya Sloan, Marc Snyder, Malcolm Thomas, Jordan Tompkins, and Kathy Wilks, in their official capacities as members of Defendant Education Practices Commission. Ms. Wood also files this complaint against Defendant Hillsborough County School Board. Ms. Doe also files this complaint against Defendant Lee County School Board. Mx. Schwandes also files this complaint against Defendant Florida Virtual School Board of Trustees.

## PRELIMINARY STATEMENT

1.      Plaintiffs are current and former Florida public-school teachers who simply wanted to teach math, science, and their other school subjects of expertise. But earlier this year, Florida enacted a new law that pushed one plaintiff out of their teaching career and threatens to do the same for the other plaintiffs—and for the other transgender and nonbinary teachers like them across Florida. That new law, subsection 3 of Florida Statutes ("Fla. Stat.") § 1000.071 ("subsection 3"), provides that "[a]n employee or contractor of a public K-12 educational institution may not

provide to a student his or her preferred personal title or pronouns if such preferred personal title or pronouns do not correspond to his or her sex." Subsection 3 discriminates against transgender and nonbinary public-school employees and contractors on the basis of sex, by prohibiting them from using the titles and pronouns that express who they are. Subsection 3 requires Plaintiffs to shed their titles and pronouns at the schoolhouse gate because they are not the titles and pronouns that Florida prefers for the sex it deems them to be. Florida has the power to revoke the educator certificates of teachers who violate subsection 3, and school boards are able to dismiss violators.

2.     Subsection 3 violates the Constitution and laws of the United States. It unlawfully discriminates against Plaintiffs on the basis of sex in violation of Title VII of the Civil Rights Act of 1964, the Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution, and Title IX of the Education Amendments of 1972 because whether Plaintiffs may provide to students a particular title or pronoun depends entirely on Plaintiffs' sex, and Florida has only an invidious basis—not an exceedingly persuasive or even a rational one—for discriminating in this harmful way. It also unconstitutionally restrains Plaintiffs' speech in violation of the Free Speech Clause of the First Amendment to the U.S. Constitution because it prohibits Plaintiffs from using the titles and pronouns that express who they are, the same way that their colleagues do.

3.      Through subsection 3, Florida has stigmatized Plaintiffs, threatened their psychological wellbeing, upended the respect that is owed to them as educators and that is necessary for a safe workplace and functioning classroom, and put their professions and families' wellbeing on the line. Florida's statute must give way to the Constitution and laws of the United States and must not be enforced.

## PARTIES

### A.      Plaintiffs

4.      Plaintiff Katie Wood resides in Hillsborough County, Florida. She is a teacher at Lennard High School within the Hillsborough County School District.

5.      Plaintiff Jane Doe resides in Lee County, Florida. She is a teacher at a public school within the Lee County School District.

6.      Plaintiff AV Schwandes resides in Orange County, Florida. They were a teacher at Florida Virtual School, which develops and delivers online and distance learning education in Florida. Fla. Stat. § 1002.37(1)(a).

### B.      Defendants

#### 1.      State Defendants

7.      Defendant Florida Department of Education is created by Florida statute. Fla. Stat. § 20.15. It maintains a principal place of business in Tallahassee, Florida. It is located in the offices of Defendant Commissioner of Education. Fla. Stat. § 1001.20(2). It has the power and duty to assist in providing professional leadership

and guidance and in carrying out the policies, procedures, and duties authorized by law or by Defendant State Board of Education or found necessary by it to attain the purposes and objectives of the Early Learning–20 Education Code. *Id.* One of its offices is the Office of Professional Practice Services.

8.     Defendant State Board of Education is a corporate body established by the Florida constitution. Fla. Const. art. 9, § 2. It maintains a principal place of business in Tallahassee, Florida. It has seven members appointed by the Governor to staggered four-year terms, subject to confirmation by the Senate. Fla. Stat. § 1001.01. It must supervise the system of free public education. Fla. Const. art. 9, § 2. It is the chief implementing and coordinating body of public education in Florida except for the State University System. Fla. Stat. § 1001.02. It appoints Defendant Commissioner of Education. Fla. Const. art. 9, § 2. It is the head of Defendant Florida Department of Education. Fla. Stat. § 20.15(1). It assigns powers, duties, responsibilities, and functions to Defendant Florida Department of Education. Fla. Stat. § 20.15(5).

9.     Defendants Monesia Brown, Esther Byrd, Grazie Christie, Kelly Garcia, Benjamin Gibson, MaryLynn Magar, and Ryan Petty are members of Defendant State Board of Education and sued only in that official capacity (collectively, "Members of Defendant State Board of Education").

10.     Defendant Commissioner of Education holds an office established by

the Florida constitution. Fla. Const. art. 9, § 2. Defendant Commissioner of Education maintains a principal place of business in Tallahassee, Florida. Defendant Commissioner of Education is the chief educational officer of Florida. Fla. Stat. § 1001.10(1). Defendant Commissioner of Education serves as the Executive Director of Defendant Florida Department of Education. Fla. Stat. § 20.15(2). Defendant Commissioner of Education is responsible for giving full assistance to Defendant State Board of Education in enforcing compliance with the mission and goals of the Early Learning–20 education system, except for the State University System. Fla. Stat. § 1001.10(1). Defendant Commissioner of Education has the power and duty to organize, staff, and recommend a budget for Defendant Florida Department of Education. Fla. Stat. § 1001.10(6). Defendant Commissioner of Education assigns powers, duties, responsibilities, and functions to Defendant Florida Department of Education. Fla. Stat. § 20.15(5). Defendant Commissioner of Education is sued only in its official capacity.

11.     Defendant Education Practices Commission is established by Florida statute. Fla. Stat. § 1012.79(1). It maintains a principal place of business in Tallahassee, Florida. It has 25 members appointed by Defendant State Board of Education from nominations by Defendant Commissioner of Education and subject to Senate confirmation. Fla. Stat. § 1012.79(1). Its members serve for four-year staggered terms. Fla. Stat. § 1012.79(2). It is assigned to Defendant Florida Department of

Education for administrative purposes. Fla. Stat. § 1012.79(6)(a). Its property, personnel, and appropriations related to its specified authority, powers, duties, and responsibilities are provided to it by Defendant Florida Department of Education. Fla. Stat. § 1012.79(6)(b).

12.   Defendants Aadil Ameerally, Jared Barr, Michael Butcher, Elayne Colon, Ann Copenhaver, Joseph Goodwin, Benjamin Henry, Timothy Holley, Lisa Innerst, Jeffrey Johnson, Kenneth LaPee, Mason Lewis, Sallie Murphy, Christine Plaza, Kevin Rowe, Charles Shaw, Orenthya Sloan, Marc Snyder, Malcolm Thomas, Jordan Tompkins, and Kathy Wilks are members of Defendant Education Practices Commission and sued only in that official capacity (collectively, "Members of Defendant Education Practices Commission"). They are residents of Florida. *See* Fla. Stat. § 1012.79(1)(e).

13.   Defendant Florida Virtual School Board of Trustees is a public agency established by Florida statute. Fla. Stat. § 1002.37(2). It maintains a principal place of business in Orlando, Florida. It governs the Florida Virtual School. *Id.* It has seven members appointed by the Governor to four-year staggered terms. Fla. Stat. § 1002.37(2).

### 2.   School Board Defendants

14.   Defendant Hillsborough County School Board is established by the Florida constitution to operate, control, and supervise all free public schools within

the school district of Hillsborough County. Fla. Const. art. 9, § 4; Fla. Stat. § 1001.30.

15.    Defendant Lee County School Board is established by the Florida constitution to operate, control, and supervise all free public schools within the school district of Lee County. Fla. Const. art. 9, § 4; Fla. Stat. § 1001.30.

16.    Plaintiffs refer to Defendants Hillsborough County School Board and Lee County School Board collectively as "School Board Defendants."

## JURISDICTION & VENUE

17.    The Court has original jurisdiction of this civil action under 28 U.S.C. § 1331 because it arises under the Constitution and laws of the United States and under 28 U.S.C. § 1343(a)(3) because it is authorized by law to be commenced by a person "[t]o redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States[.]"

18.    Venue is proper in this judicial district under 28 U.S.C. § 1391(b)(1), and in this division under Local Rule 3.1, because Defendants Florida Department of Education, State Board of Education, and Commissioner of Education reside in this judicial district and division and all defendants are residents of Florida; under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving

rise to the claim occurred in this judicial district and division; and under 42 U.S.C. § 2000e-5(f)(3) because the unlawful employment practice is alleged to have been committed in Florida.

19.   The Court has personal jurisdiction over Defendants because they are domiciled in Florida and this civil action arises out of, and relates to, their conduct in Florida.

## FACTUAL ALLEGATIONS

### A.   HB 1069 (2023)

20.   In May 2023, the Florida Legislature enacted, and Governor Ron DeSantis signed, House Bill ("HB") 1069, Fla. Laws ch. 2023-105. It took effect on July 1, 2023. This case challenges only subsection 3 of section 2 of HB 1069, but the bill's range of changes related to lesbian, gay, bisexual, transgender, queer, and nonbinary ("LGBTQ+") people and content in schools have at least some relevance in this case.

21.   Section 1 of HB 1069 amends § 1000.21 of the Early Learning–20 Education Code to define "sex" to "mean[] the classification of a person as either female or male based on the organization of the body of such person for a specific reproductive role, as indicated by the person's sex chromosomes, naturally occurring sex hormones, and internal and external genitalia present at birth." Fla. Stat. § 1000.21(9). This definition of sex is sometimes called "biological sex" by some or

"sex assigned at birth" by others, including Plaintiffs. Plaintiffs assume for purposes of this case that this definition of sex is consistent with the meaning of sex under the federal constitutional provisions and statutes from which their claims arise.

22.    Neither HB 1069, nor the Early Learning–20 Education Code, nor any other statute defines "female" or "male" as used in HB 1069.

23.    Section 2 of HB 1069 creates § 1000.071 of the Early Learning–20 Education Code, which reads:

> 1000.071 Personal titles and pronouns.—
>
> (1) It shall be the policy of every public K-12 educational institution that is provided or authorized by the Constitution and laws of Florida that a person's sex is an immutable biological trait and that it is false to ascribe to a person a pronoun that does not correspond to such person's sex. This section does not apply to individuals born with a genetically or biochemically verifiable disorder of sex development, including, but not limited to, 46, XX disorder of sex development; 46, XY disorder of sex development; sex chromosome disorder of sex development; XX or XY sex reversal; and ovotesticular disorder.
>
> (2) An employee, contractor, or student of a public K-12 educational institution may not be required, as a condition of employment or enrollment or participation in any program, to refer to another person using that person's preferred personal title or pronouns if such personal title or pronouns do not correspond to that person's sex.
>
> (3) An employee or contractor of a public K-12 educational institution may not provide to a student his or her preferred personal title or pronouns if such preferred personal title or pronouns do not correspond to his or her sex.

10

(4) A student may not be asked by an employee or contractor of a public K-12 educational institution to provide his or her preferred personal title or pronouns or be penalized or subjected to adverse or discriminatory treatment for not providing his or her preferred personal title or pronouns.

(5) The State Board of Education may adopt rules to administer this section.

24.    Florida law does not define or set forth which titles and pronouns "correspond to" which sex; instead, § 1000.071 leaves those enforcing it to rely on stereotypes about which titles and pronouns should be used by people whose sex is deemed female under the statute and which should be used by people whose sex is deemed male under the statute. Therefore, under § 1000.071, titles like Mrs., Ms., and Miss and pronouns like she and her "correspond to" people whose sex is deemed female; titles like Mr. and pronouns like he and him "correspond to" people whose sex is deemed male; and titles like Mx. (pronounced *mix* or *mux*) and pronouns like they and them, when used to refer to a single person, "correspond to" no one.

25.    Under subsection 3, an employee can "provide to a student [the employee's] title or pronouns" in various ways, such as by saying them to students, by saying them to someone within earshot of students, or by writing or displaying them on things that are given to or seen by students, like syllabi, classroom boards, and emails.

26.    Based on its plain text, subsection 3's reach is not limited to the

11

workplace or work hours; it applies wherever, whenever, and however an employee interacts with students.

27.     Under subsection 3, whether an employee may "provide to" students the title Ms. and she/her pronouns depends entirely on whether the employee's sex is deemed male or female: if the employee's sex is deemed female, then the employee may "provide" them to students, but if the employee's sex is deemed male, then the employee may not.

28.     Under subsection 3, whether an employee may "provide to" students the title Mr. and he/him pronouns depends entirely on whether the employee's sex is deemed male or female: if the employee's sex is deemed male, then the employee may "provide" them to students, but if the employee's sex is deemed female, then the employee may not.

### B.     Subsection 3's Purposeful Invidious Discrimination

29.     Sponsors of HB 1069, Governor DeSantis, and his administration justified HB 1069 in vague language about "protect[ing] children" from "indoctrination" and "woke gender ideology," but no one explained how subsection 3 advances those goals.

30.     Subsection 3's drafters ignored Supreme Court case law that clearly establishes its unlawfulness. According to Representative Stan McClain, who sponsored HB 1069, its drafters did not consult *Bostock v. Clayton County*, 140 S. Ct.

12

1731 (2020). That case held that an employer who intentionally treats a person worse because of sex—such as by firing a transgender woman (a person whose sex assigned at birth is male but whose gender identity is female) for actions or attributes it would tolerate in a cisgender woman (a person whose sex assigned at birth is female and whose gender identity is female)—discriminates against that person in violation of Title VII.

31.   Subsection 3 is just one of a number of laws that Florida has recently enacted at least in part because of, not merely in spite of, the adverse effects they would have—both individually and in the aggregate—on LGBTQ+ people, especially transgender and nonbinary people, in various aspects of life. For example, Governor DeSantis signed HB 1069 in a bill package with Senate Bill ("SB") 254 (2023), Fla. Laws ch. 2023-90, which restricts their access to health care, and SB 1438 (2023), Fla. Laws ch. 2023-94, which seeks to censor performances by and for LGBTQ+ people. HB 1069 itself also expands the ban in HB 1557 (2022), Fla. Laws ch. 2022-022, on undefined "classroom instruction" on sexual orientation or gender identity and requires schools to remove material, including books, objected to by any parent or county resident, which has resulted in the removal of books that merely mention LGBTQ+ people.

32.   Florida flaunted its animus toward LGBTQ+ people when enacting these laws. For example, Governor DeSantis signed SB 1028 (2021), Fla. Laws ch.

2021-35, which bans transgender women and girls from women and girls' athletic teams, on June 1, 2021, the first day of Pride Month for LGBTQ+ people that year. Governor DeSantis, his press secretary at the time, and Representative Randy Fine, who co-sponsored HB 1069 (2023) and HB 1557 (2022), Fla. Laws ch. 2022-022, invidiously described teachers who provide undefined "classroom instruction" on sexual orientation and gender identity as attempting to sexualize kids or as groomers, referring to someone who grooms a minor for exploitation and especially for non-consensual sexual activity. During committee debate about HB 1521 (2023), Fla. Laws ch. 2023-106, another bill regulating transgender and nonbinary people's conduct, Representative Webster Barnaby, who voted for it, called transgender people "mutants from another planet" and Satan's "demons and imps" "pretend[ing] that [they] are part of this world."

33.    Through all these laws, Florida intentionally sends the state-sanctioned, invidious, and false message that transgender and nonbinary people and their identities are inherently dangerous, especially to children. Florida's goal behind these laws is to stigmatize and demonize transgender and nonbinary people and relegate them from public life altogether.

C.      **Defendants' Implementation and Enforcement of Subsection 3**

1.      **Defendants Florida Department of Education, State Board of Education, Members of Defendant State Board of Education, Commissioner of Education, Education Practices Commission, and Members of Education Practices Commission**

34.      On August 22, 2023, Defendant State Board of Education amended two administrative rules, Rule 6A-5.065 and Rule 6A-10.081, to require teachers to comply with subsection 3 and to subject teachers who violate subsection 3 to suspension or revocation of their educator certificate and to poorer performance evaluations.

35.      Rule 6A-5.065 of the Florida Administrative Code sets forth the Florida Educator Accomplished Practices ("the Practices"). The Practices are "Florida's core standards for effective educators" and "form the foundation for the state's teacher preparation programs, educator certification requirements[,] and school district instructional personnel appraisal systems." Fla. Admin. Code r. 6A-5.065(1)(a). "Each of the [P]ractices is clearly defined to promote a common language and statewide understanding of the expectations for the quality of instruction and professional responsibility." Fla. Admin. Code r. 6A-5.065(2). Defendant State Board of Education amended the Practices to provide that, "[t]o maintain a student-centered learning environment that is safe, organized, equitable, flexible, inclusive, and collaborative, the effective educator consistently … [a]dapts the learning environment to accommodate the differing needs and diversity of students while ensuring that the

learning environment is consistent with s. 1000.071." Fla. Admin. Code r. 6A-5.065(2)(a)(2)(h).

36.     Rule 6A-10.081 of the Florida Administrative Code sets forth the Principles of Professional Conduct for the Education Profession in Florida ("the Principles"). They include ethical and disciplinary principles. Florida educators must comply with the disciplinary principles, and "[v]iolation of any of the[] [disciplinary] principles shall subject the [educator] to revocation or suspension of the individual educator's certificate, or the other penalties as provided by law." Fla. Admin. Code r. 6A-10.081(2). Defendant State Board of Education amended the disciplinary principles to provide that educators "[s]hall not violate s 1000.071." Fla. Admin. Code r. 6A-10.081(2)(a)(14).

37.     According to Defendant Commissioner of Education, the proposed rule amendments purportedly were steps toward "truth and sanity" and they would purportedly "empower" teachers by supposedly giving them "the freedom to keep order in the classroom and to keep distractions away and to create a high-quality learning environment." He did not explain how requiring teachers to comply with subsection 3, and punishing those who violate it, advances any of those stated goals.

38.     According to Defendant Florida Department of Education, the purported purposes of the rule amendments were to "[e]nsure[] the health, safety, and welfare of students," to "[p]rotect the fundamental rights of parents," to "[r]equire[]

16

standards-based instruction," and to "[p]rovide[] clarity for educators on what is age-appropriate and developmentally appropriate in accordance with state standards." Defendant Florida Department of Education did not explain how requiring teachers to comply with subsection 3, and punishing those who violate it, advances any of those stated goals.

39.    Defendant Florida Department of Education must investigate potential violations of subsection 3 by teachers, *see* Fla. Stat. § 1012.796(1)(a), and advise Defendant Commissioner of Education of its findings, Fla. Stat. § 1012.796(3). Defendant Florida Department of Education's Office of Professional Practice Services conducts such investigations.

40.    Defendant Florida Department of Education can learn about potential violations of subsection 3 in various ways. For example, School Board Defendants must file in writing with Defendant Florida Department of Education all complaints that a teacher has violated subsection 3 within 30 days after the date on which subject matter of the complaint comes to its attention, regardless of whether the subject of the complaint is still an employee of the School Board Defendant. *See* Fla. Stat. § 1012.796(1)(d)(1). If the School Board Defendant's superintendent has knowledge of a legally sufficient complaint and does not report the complaint, the superintendent is subject to withholding of salary for up to one year. Fla. Stat. § 1012.796(1)(d)(4).

41.    Defendant Commissioner of Education determines whether there is probable cause of a violation of subsection 3. *See* Fla. Stat. § 1012.796(3). If there is probable cause, Defendant Commissioner of Education must file and prosecute a complaint against the teacher. Fla. Stat. § 1012.796(6). Defendant Florida Department of Education's Office of Professional Practice Services pursues such disciplinary actions.

42.    Defendants Florida Department of Education and Commissioner of Education have opened investigations into teachers who violate § 1000.071, and they continue to do so. They have also opened investigations into teachers who violate other provisions of HB 1069, such as a teacher who showed her students a Disney movie that features a gay character.

43.    If there are disputed issues of material fact, an administrative law judge, assigned by the Division of Administrative Hearings of the Department of Management Services, must hear the complaint and make recommendations to the appropriate panel of Defendant Education Practices Commission. Fla. Stat. § 1012.796(6).

44.    A case concerning a complaint against a teacher must be reviewed, and a final order entered, by a panel composed of five members of Defendant Education Practices Commission, at least one of whom must be a parent or a sworn law enforcement officer and at least three of whom must be teachers. Fla. Stat. § 1012.796(8)(a). The panel must conduct a formal review of the administrative law

judge's recommendations, if any, and other pertinent information and issue a final order. Fla. Stat. § 1012.796(6).

45.    Defendant Education Practices Commission must either dismiss the complaint or impose penalties on a teacher for violating subsection 3, including denying the teacher's application for a certificate, revoking or suspending the teacher's certificate, imposing an administrative fine up to $2,000 for each offense, placing the teacher on probation for which the teacher must pay the costs, restricting the authorized scope of the teacher's practice, reprimanding the teacher in writing in the teacher's file, and barring the teacher, if the teacher's certificate has expired, from applying for a new certificate for up to ten years or permanently. *See* Fla. Stat. § 1012.796(7).

46.    Defendant Florida Department of Education must maintain a disqualification list that includes the identity of each person who has been permanently denied an educator certificate or whose educator certificate has been permanently revoked and has been placed on the list as directed by Defendant Education Practices Commission. Fla. Stat. § 1001.10(4)(b). Defendant Florida Department of Education maintains that list publicly online.

47.    Defendant State Board of Education must oversee the performance of School Board Defendants' enforcement of subsection 3 and enforce School Board Defendants' compliance with subsection 3. *See* Fla. Stat. §§ 1001.03(8), 1008.32.

48.    Defendant Commissioner of Education has the power to investigate allegations of School Board Defendants' noncompliance with subsection 3 and determine probable cause. *See* Fla. Stat. § 1008.32(2)(a). Defendant Commissioner of Education must report determinations of probable cause to Defendant State Board of Education. *See id.*

49.    If a School Board Defendant is unwilling or unable to comply with subsection 3, Defendant State Board of Education has the power to report that to the Legislature, withhold funds, declare the School Board Defendant ineligible for competitive grants, and require periodic reporting. *See* Fla. Stat. § 1008.32(4).

50.    Defendant State Board of Education has a history of investigating and punishing district school boards that violate Defendant State Board of Education's rules to coerce their compliance, including those that imposed mask mandates.

51.    Defendants Florida Department of Education and Commissioner of Education even filed and prosecuted, before Defendant Education Practices Commission, a complaint against Leon County School District's superintendent, Rocky Hanna, for advising teachers to continue teaching as they have always done, after HB 1557, which bans undefined "classroom instruction" on sexual orientation and gender identity, was enacted. Defendant Commissioner of Education and Superintendent Hanna reached, and Defendant Education Practices Commission accepted, a settlement agreement by which, among other things, he would be placed on

probation for two years, pay $300 to cover the costs of probation, take college courses on education ethics and educational leadership for which he bears the cost, pay a $1,000 fine, violate no law, and comply with the Principles. Defendant Education Practices Commission also reprimanded him in writing.

### 2.  School Board Defendants

Plaintiffs Katie Wood and Jane Doe allege the following paragraphs 52–58 against Defendants Florida Department of Education, State Board of Education, Education Practices Commission, Commissioner of Education, Members of Defendant State Board of Education, and Members of Defendant Education Practices Commission; Ms. Wood also alleges them against Defendant Hillsborough County School Board; and Ms. Doe also alleges them against Defendant Lee County School Board:

52.  Any person employed as a teacher in any district school system, including by School Board Defendants, must be properly certified by Defendant Florida Department of Education, *see* Fla. Stat. § 1012.55(b), except under narrow circumstances, *see* Fla. Stat. § 1012.55(c).

53.  School Board Defendants have the power and duty to suspend or dismiss a teacher whose certificate is revoked or suspended by Defendant Education Practices Commission.

54.  School Board Defendants have the power to suspend or dismiss a teacher for violating subsection 3.

55.     School Board Defendants have the power to suspend or dismiss a teacher for just cause, such as misconduct in office, gross insubordination, and a certain number and frequency of performance evaluations of "needs improvement" or "unsatisfactory" as provided by state law. Fla. Stat. § 1012.33(1)(a).

56.     Misconduct in office includes "[a] violation of the Principles," including subsection 3, "[a] violation of the adopted school board rules," "[b]ehavior that disrupts the student's learning environment," and "[b]ehavior that reduces the teacher's ability or … colleagues' ability to effectively perform duties." Fla. Admin. Code r. 6A-5.056(2).

57.     Gross insubordination "means the intentional refusal to obey a direct order, reasonable in nature, and given by and with proper authority; misfeasance, or malfeasance as to involve failure in the performance of the required duties." Fla. Admin. Code r. 6A-5.056(4).

58.     At least one-third of a teacher's performance evaluation must be based upon instructional practice, which must include indicators based upon each of the Practices, including subsection 3. Fla. Stat. § 1012.34(3)(a)(2).

### a.     Defendant Hillsborough County School Board

Plaintiff Katie Wood alleges the following paragraphs 59–61 against Defendants Florida Department of Education, State Board of Education, Education Practices Commission, Commissioner of Education, Members of Defendant State Board

of Education, Members of Defendant Education Practices Commission, and Hillsborough County School Board:

59.     All complaints that a teacher violated subsection 3 must be reported to Defendant Hillsborough County School Board's Office of Professional Standards, who, in turn, will report such complaints to Defendant Florida Department of Education within 30 days after the date on which the subject matter of the complaint comes to the attention of Defendant Hillsborough County School Board or the office of the superintendent. *See* Hillsborough Cnty. Sch. Bd. Pol'y 3139.

60.     It is the responsibility of all employees of Defendant Hillsborough County School Board to promptly report to the superintendent any complaint against a teacher that comes to the employee's attention and that includes grounds for the revocation or suspension of a teaching certificate. Hillsborough Cnty. Sch. Bd. Pol'y 3139.

61.     The willful failure by an employee of Defendant Hillsborough County School Board to promptly report a complaint constitutes cause for discipline of the employee as provided by Florida statutes, the Hillsborough County Teacher Tenure Act, and Defendant Hillsborough County School Board policy. Hillsborough Cnty. Sch. Bd. Pol'y 3139.

### b.     Defendant Lee County School Board

Plaintiff Jane Doe alleges the following paragraphs 62–66 against Defendants

Florida Department of Education, State Board of Education, Education Practices Commission, Commissioner of Education, Members of Defendant State Board of Education, Members of Defendant Education Practices Commission, and Lee County School Board:

62.     The Principles, including subsection 3, constitute Defendant Lee County School Board's standards of ethical conduct, to which all instructional staff members must adhere. Lee Cnty. Sch. Bd. Pol'y 3210.

63.     A teacher who willfully violates Defendant Lee County School Board's policies, including subsection 3, is guilty of gross insubordination and is subject to dismissal or such other lesser penalty as Defendant Lee County School Board may prescribe. Lee Cnty. Sch. Bd. Pol'y 3120.

64.     All complaints that a teacher violated subsection 3 must be reported to Defendant Florida Department of Education within 30 days after the date on which the subject matter of the complaint comes to the attention of Defendant Lee County School Board or the office of the superintendent. *See* Lee Cnty. Sch. Bd. Pol'y 3139.

65.     All employees of Defendant Lee County School Board must promptly report to the office of the superintendent or the office of Human Resources Services any complaint against a teacher that comes to the employee's attention and that includes grounds for the revocation or suspension of a teaching certificate. Lee Cnty. Sch. Bd. Pol'y 3139.

66.    The willful failure by an employee of Defendant Lee County School Board to promptly report a complaint constitutes cause for discipline of the employee. Lee Cnty. Sch. Bd. Pol'y 3139.

### 3.    Defendant Florida Virtual School Board of Trustees

Plaintiff AV Schwandes alleges the following paragraphs 67–68 against Defendants Florida Department of Education, State Board of Education, Education Practices Commission, Commissioner of Education, Members of Defendant State Board of Education, Members of Defendant Education Practices Commission, and Florida Virtual School Board of Trustees:

67.    The Principles, including subsection 3, constitute Defendant Florida Virtual School Board of Trustees's standards of ethical conduct, to which all instructional staff members must adhere. Fla. Virtual Sch. Bd. of Trs. Pol'y 1210.

68.    Florida Virtual School's CEO, who is appointed by Defendant Florida Virtual School Board of Trustees, or designee must report all complaints that a teacher violated subsection 3 to Defendant Florida Department of Education within 30 days after the date on which the subject matter of the complaint comes to the attention of the CEO or designee. *See* Fla. Virtual Sch. Bd. of Trs. Pol'y 8141.

### D.    Gender Identity and the Harms of Misgendering

69.    Subsection 3 harms transgender and nonbinary teachers by prohibiting them from using titles and pronouns that express their gender identity.

25

70.     Gender identity is an innate, internal sense of one's sex. Everyone has a gender identity. Cisgender people's gender identity is consistent with their sex assigned at birth, but transgender people have a gender identity that differs from their sex assigned at birth.

71.     Nonbinary is an adjective used by people who experience their gender identity or gender expression as falling outside the binary gender categories of man and woman; nonbinary people may identify as being both a man and a woman, somewhere in between, or as falling completely outside these categories. Many nonbinary people also call themselves transgender and consider themselves part of the transgender community.

72.     Many transgender people adopt a new name, pronouns, hairstyle, and clothing that express their gender identity, and many express their gender identity in all aspects of their life, including at work. Following those steps, many transgender people obtain a court order legally changing their name and, where possible, changing the sex listed on their birth certificate and other identity documents.

73.     Many transgender women go by titles like Mrs., Ms., and Miss and pronouns like she and her. Many transgender men (people whose sex assigned at birth is female but whose gender identity is male) go by titles like Mr. and pronouns like he and him. Many nonbinary people go by non-gendered titles like Mx. and non-gendered pronouns like they and them.

74.     Misgendering a person—for example, by referring to a transgender woman by titles like Mr. and pronouns like he and him, by referring to a transgender man by titles like Ms. and pronouns like she and her, or by referring to a nonbinary person by any of those gendered titles or pronouns—can cause that person psychological distress and feelings of stigma. So can prohibiting a person from going by titles and pronouns that express the person's gender identity.

### E.     Subsection 3's Effects on Plaintiffs

#### 1.     Effects on Ms. Wood

Plaintiff Katie Wood alleges the following paragraphs 75–92 against Defendants Florida Department of Education, State Board of Education, Education Practices Commission, Commissioner of Education, Members of Defendant State Board of Education, Members of Defendant Education Practices Commission, and Hillsborough County School Board:

75.     Ms. Wood is a transgender woman.

76.     Ms. Wood socially transitioned as a woman in or around 2020, in college and everywhere else in life. She legally changed her name and has updated her documents to reflect her new name and her female gender. She presents as a woman. She uses the title Ms. and she/her pronouns.

77.     Ms. Wood has been employed as a teacher by Defendant Hillsborough County School Board since the 2021–2022 school year. She teaches math at Lennard

High School. She is certified to teach by Defendant Florida Department of Education, which issued her certificate in her legal name, Katie Wood.

78.    When Ms. Wood started working at Lennard High School, Defendant Hillsborough County School Board was supportive of her transgender status and female gender identity and expression. It allowed her to go by Ms. Wood and she/her pronouns.

79.    Before subsection 3 became law and Defendant Hillsborough County School Board policy, Ms. Wood was permitted to provide to students her Ms. title and she/her pronouns. She would introduce herself as Ms. Wood and write "Ms. Wood" and "she/her" on her syllabi and classroom board.

80.    Before subsection 3 became law and Defendant Hillsborough County School Board policy, Ms. Wood was permitted to tell anyone who misgendered her at work, such as by using Mr. or he/him pronouns, that her title is Ms. and that her pronouns are she/her.

81.    Under subsection 3 and Defendant Hillsborough County School Board policy, Ms. Wood may no longer provide to students her Ms. title and she/her pronouns because subsection 3 deems her sex to be male. If Ms. Wood's sex were deemed female, then subsection 3 would not prohibit her from providing her Ms. title and she/her pronouns to students.

82.    Since subsection 3 became law and Defendant Hillsborough County

School Board policy, Lennard High School's principal and Defendant Hillsborough County School Board advised Ms. Wood that she was no longer allowed to go by Ms. because her sex is deemed male and that she instead could go by Mr., Teacher, or Coach.

83.    Going by titles like Mr. and pronouns like he and him would harm Ms. Wood, including emotionally, risk physical harm from others, and disrupt her classroom and ability to do her job. Avoiding titles and pronouns altogether would be impractical, disruptive, and stigmatizing.

84.    Ms. Wood opted to go by Teacher. She would not go by Teacher but for subsection 3. She has replaced her name with "Teacher Wood" on her classroom board, introduces herself to students as Teacher Wood, and uses Teacher Wood on all communications with students.

85.    Ms. Wood would introduce herself as Ms. Wood and write "Ms. Wood" and "she/her" on her syllabi and classroom board but for subsection 3.

86.    Going by Teacher, a non-gendered title that no male or female teachers at her school use and that does not come naturally to her when describing herself, instead of Ms., a title that expresses her female gender identity, has caused Ms. Wood to feel stigmatized.

87.    Going by Teacher has disrupted Ms. Wood's ability to teach and distracted her students.

88.    Most students still call her Ms. Wood, while others call her Teacher Wood.

89.    The risk that she could lose her teaching job and license for violating subsection 3 and Defendant Hillsborough County School Board policy has caused Ms. Wood great anxiety and distracts her during work.

90.    Under subsection 3 and Defendant Hillsborough County School Board policy, Ms. Wood may not tell anyone who misgenders her at work, such as by using Mr. or he/him pronouns, that her title is Ms. and that her pronouns are she/her because subsection 3 deems her sex to be male.

91.    Ms. Wood may not even tell a student who calls her Mr. or refers to her by he/him pronouns that her title under subsection 3 is Teacher.

92.    Ms. Wood filed a charge of employment discrimination with the U.S. Equal Employment Opportunity Commission (EEOC) against Defendants Florida Department of Education, Education Practices Commission, and Hillsborough County School Board on December 8, 2023, and against Defendant State Board of Education on December 12, 2023.On February 1, 2024, Ms. Wood received from the U.S. Department of Justice a Notice of Right to Sue letter with respect to Defendants Hillsborough County School Board, Florida Department of Education, Florida State Board of Education, and Florida Education Practices Commission.

### 2.   Effects on Ms. Doe

Plaintiff Jane Doe alleges the following paragraphs 93–102 against Defendants Florida Department of Education, State Board of Education, Education Practices Commission, Commissioner of Education, Members of Defendant State Board of Education, Members of Defendant Education Practices Commission, and Lee County School Board:

93.   Ms. Doe is a transgender woman.

94.   Ms. Doe socially transitioned as a woman after Thanksgiving 2021, at work and everywhere else in life. She legally changed her name and has updated her documents (except for her birth certificate because the law of her state of birth prohibits it) to reflect her new name and female gender. She presents as a woman. She uses the title Ms. and she/her pronouns.

95.   Ms. Doe has been employed as a teacher by Defendant Lee County School Board since the 2017–2018 school year. She is certified to teach by Defendant Florida Department of Education.

96.   When Ms. Doe socially transitioned at work, Defendant Lee County School Board was supportive of her transgender status and female gender identity and expression. It updated its records to reflect her new name and female gender. It allowed her to go by Ms. Doe and she/her pronouns.

97.   Before subsection 3 became law and Defendant Lee County School

Board policy, Ms. Doe was permitted to provide to students her Ms. title and she/her pronouns. She would introduce herself as Ms. Doe and write "Ms. Doe" and "she/her" on her syllabi and classroom board.

98.    Before subsection 3 became law and Defendant Lee County School Board policy, Ms. Doe could tell anyone who misgendered her at work, such as by using Mr. or he/him pronouns, that her title is Ms. and that her pronouns are she/her.

99.    Under subsection 3 and Defendant Lee County School Board policy, Ms. Doe may no longer provide to students her Ms. title and she/her pronouns because subsection 3 deems her sex to be male. If Ms. Doe's sex were deemed female, then subsection 3 would not prohibit her from providing her Ms. title and she/her pronouns to students.

100.    Going by titles like Mr. and pronouns like he and him would harm Ms. Doe, including emotionally, risk physical harm from others, and disrupt her classroom and her ability to do her job. Avoiding titles and pronouns altogether would be impractical and disruptive.

101.    Under subsection 3 and Defendant Lee County School Board policy, Ms. Doe may not tell anyone who misgenders her at work, such as by using Mr. or he/him pronouns, that her title is Ms. and that her pronouns are she/her because subsection 3 deems her sex to be male.

102.    Ms. Doe filed a charge of employment discrimination with the EEOC

against Defendants Florida Department of Education, State Board of Education, Education Practices Commission, and Lee County School Board on December 8, 2023.On February 1, 2024, Ms. Doe received from the U.S. Department of Justice a Notice of Right to Sue letter with respect to Defendants Lee County School Board, Florida Department of Education, Florida State Board of Education, and Florida Education Practices Commission.

### 3.    Effects on Mx. Schwandes

Plaintiff AV Schwandes alleges the following paragraphs 103–111against Defendants Florida Department of Education, State Board of Education, Education Practices Commission, Commissioner of Education, Members of Defendant State Board of Education, Members of Defendant Education Practices Commission, and Florida Virtual School Board of Trustees:

103.   Mx. Schwandes is nonbinary; their sex assigned at birth was female, but their gender identity is neither male nor female. They use the title Mx. (pronouncing it *mux*) and they/them pronouns.

104.   Mx. Schwandes was employed as a teacher by Defendant Florida Virtual School Board of Trustees from July 19, 2021, until their termination on October 24, 2023. They taught physical science and then physics. They are certified to teach by Defendant Florida Department of Education.

105.   From 2021 through June or July 2023, Mx. Schwandes used both the

33

titles Professor and Mrs. Starting in June or July of 2023, Mx. Schwandes began to use Mx. and they/them pronouns at work.

106.   At first, Mx. Schwandes's supervisor was okay with their use of Mx., but on August 28, 2023, he directed them to stop using Mx. and to instead use a title like Ms. or Mrs. Mx. Schwandes refused to comply.

107.   On September 15, 2023, Defendant Florida Virtual School Board of Trustees suspended Mx. Schwandes for violating subsection 3 and Defendant Florida Virtual School Board of Trustees policy, directed them to comply with subsection 3 by using Ms., Mrs., or Miss instead of Mx., and threatened to terminate their employment for noncompliance. Defendant Florida Virtual School Board of Trustees also prohibited Mx. Schwandes from using the title Professor, as they had done previously. Mx. Schwandes again refused to comply.

108.   Defendant Florida Virtual School Board of Trustees did not permit Mx. Schwandes to use non-gendered titles like Professor, Doctor, or Teacher.

109.   On October 24, 2023, Defendant Florida Virtual School Board of Trustees terminated Mx. Schwandes's employment for violating subsection 3 and Defendant Florida Virtual School Board of Trustees policy.

110.   Mx. Schwandes filed a charge of employment discrimination against Defendant Florida Virtual School Board of Trustees with the Florida Commission on Human Relations on September 26, 2023, and with the EEOC on November 8,

2023. Mx. Schwandes submitted a charge of employment discrimination against Defendants Florida Department of Education, State Board of Education, and Education Practices Commission with the EEOC on December 12, 2023. On February 1, 2024, Mx. Schwandes received from the U.S. Department of Justice a Notice of Right to Sue letter with respect to Defendants Florida Virtual School Board of Trustees, Florida Department of Education, and Florida Educational Practices Commission.

111.   On or about January 13, 2024, Mx. Schwandes received a letter dated January 4, 2024, from Defendant Florida Department of Education. The letter stated that, following receipt of a complaint, the Professional Practices Services office had "determined an investigation is warranted into allegations that [Mx. Schwandes] failed to follow directives from [their] employer."

## CLAIMS FOR RELIEF

## COUNT 1

**Violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2**

**Discrimination Because of Sex**

Pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-5

By All Plaintiffs Against Defendants Florida Department of Education, State Board of Education, and Education Practices Commission

112.   All Plaintiffs separately bring this claim against Defendants Florida Department of Education, State Board of Education, and Education Practices Commission. Plaintiff Katie Wood realleges paragraphs 4, 7–12, 14–61, and 69–92 against

them. When answering Ms. Wood's claim against them in this count, each of those Defendants should read "Plaintiff" to refer only to Ms. Wood. Plaintiff Jane Doe realleges paragraphs 5, 7–12, 14–58, 62–66, 69–74, and 93–102 against them. When answering Ms. Doe's claim against them in this count, each of those Defendants should read "Plaintiff" to refer only to Ms. Doe. Plaintiff AV Schwandes realleges paragraphs 6–13, 17–51, 67–74, and 103–111 against them. When answering Mx. Schwandes's claim against them in this count, each of those Defendants should read "Plaintiff" to refer only to Mx. Schwandes. Each of those Defendants should read "Defendant" in the paragraphs of this count to refer only to that answering Defendant.

113.   Defendant is an employer within the meaning of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII").

114.   Plaintiff is an individual within the meaning of Title VII.

115.   Subsection 3 discriminates because of sex within the meaning Title VII.

116.   Subsection 3 was and is a term or condition of Plaintiff's employment within the meaning of Title VII.

117.   Subsection 3 affected and affects the terms and conditions of Plaintiff's employment within the meaning of Title VII.

118.   Requiring Plaintiff to comply with subsection 3 was and is an adverse employment action under Title VII.

36

119.   By enforcing or threatening to enforce subsection 3, Defendant discriminated and discriminates against Plaintiff with respect to terms, conditions, or privileges of employment because of sex, in violation of Title VII.

120.   By enforcing or threatening to enforce subsection 3, Defendant interfered and interferes with Plaintiff's employment opportunities, in violation of Title VII.

## COUNT 2

**Preemption by Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-7**

Pursuant to 42 U.S.C. § 1983 and the Court's Inherent Equitable Powers

By All Plaintiffs Against Defendants Commissioner of Education, Members of Defendant State Board of Education, and Members of Defendant Education Practices Commission

121.   All Plaintiffs separately bring this claim against Defendants Florida Department of Education, State Board of Education, and Education Practices Commission. Plaintiff Katie Wood realleges paragraphs 4, 7–12, 14–61, and 69–92 against them. When answering Ms. Wood's claim against them in this count, each of those Defendants should read "Plaintiff" to refer only to Ms. Wood. Plaintiff Jane Doe realleges paragraphs 5, 7–12, 14–58, 62–66, 69–74, and 93–102 against them. When answering Ms. Doe's claim against them in this count, each of those Defendants should read "Plaintiff" to refer only to Ms. Doe. Plaintiff AV Schwandes realleges paragraphs 6–13, 17–51, 67–74, and 103–111 against them. When answering Mx.

Schwandes's claim against them in this count, each of those Defendants should read "Plaintiff" to refer only to Mx. Schwandes. Each of those Defendants should read "Defendant" in the paragraphs of this count to refer only to that answering Defendant.

122.   Title VII secures Plaintiff's right not to be discriminated against in employment because of sex.

123.   Subsection 3 required and requires Plaintiff's employer to discriminate against Plaintiff in employment because of sex.

124.   Subsection 3 is preempted by Title VII because subsection 3 purports to require or permit the doing of an act that would be an unlawful employment practice under Title VII.

125.   The Court has the inherent equitable power to enjoin subsection 3 because it conflicts with Title VII and Congress has not shown an intent to prohibit private actions for such injunctive relief.

126.   Plaintiff's right under Title VII not to be discriminated against in employment because of sex is a right secured by the laws of the United States within the meaning of 42 U.S.C. § 1983.

127.   Defendant is a person within the meaning of 42 U.S.C. § 1983.

128.   By enforcing or threatening to enforce subsection 3, Defendant acted and acts under color of state law within the meaning of 42 U.S.C. § 1983.

129.   By enforcing or threatening to enforce subsection 3, Defendant subjected and subjects Plaintiff to the deprivation of Plaintiff's right not to be discriminated against in employment because of sex, which is secured by Title VII.

## COUNT 3

### Violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2

### Discrimination Because of Sex

Pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-5

By Plaintiff Katie Wood Against Defendant Hillsborough County School Board

130.   Plaintiff Katie Wood brings this claim against Defendant Hillsborough County School Board and realleges paragraphs 4, 7–12, 14–61, and 69–92 against it.

131.   Defendant Hillsborough County School Board is an employer within the meaning of Title VII.

132.   Ms. Wood is an individual within the meaning of Title VII.

133.   Subsection 3 discriminates because of sex within the meaning Title VII.

134.   Subsection 3 was and is a term or condition of Ms. Wood's employment within the meaning of Title VII.

135.   Subsection 3 affected and affects the terms and conditions of Ms. Wood's employment within the meaning of Title VII.

136.   Requiring Ms. Wood to comply with subsection 3 was and is an adverse

employment action under Title VII.

137.   By enforcing or threatening to enforce subsection 3, Defendant Hills-borough County School Board discriminated and discriminates against Ms. Wood with respect to terms, conditions, or privileges of employment because of sex, in violation of Title VII.

## COUNT 4

**Violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2**

**Discrimination Because of Sex**

Pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-5

By Plaintiff Jane Doe Against Defendant Lee County School Board

138.   Plaintiff Jane Doe brings this claim against Defendant Lee County School Board and realleges paragraphs 5, 7–12, 14–58, 62–66, 69–74, and 93–102 against it.

139.   Defendant Lee County School Board is an employer within the meaning of Title VII.

140.   Ms. Doe is an individual within the meaning of Title VII.

141.   Subsection 3 discriminates because of sex within the meaning Title VII.

142.   Subsection 3 was and is a term or condition of Ms. Doe's employment within the meaning of Title VII.

143.   Subsection 3 affected and affects the terms and conditions of Ms. Doe's

employment within the meaning of Title VII.

144.   Requiring Ms. Doe to comply with subsection 3 was and is an adverse

employment action under Title VII.

145.   By enforcing or threatening to enforce subsection 3, Defendant Lee

County School Board discriminated and discriminates against Ms. Doe with respect

to terms, conditions, or privileges of employment because of sex, in violation of Title

VII.

## COUNT 5

**Violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2**

**Discrimination Because of Sex**

Pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-5

By Plaintiff AV Schwandes Against Defendant Florida Virtual School Board of
Trustees

146.   Plaintiff AV Schwandes brings this claim against Defendant Florida

Virtual School Board of Trustees and realleges paragraphs 6–13, 17–51, 67–74, and

103–111 against it.

147.   Defendant Florida Virtual School Board of Trustees was Mx. Schwan-

des's employer within the meaning of Title VII.

148.   Mx. Schwandes is an individual within the meaning of Title VII.

149.   Subsection 3 discriminates because of sex within the meaning Title VII.

150.   Subsection 3 was a term or condition of Mx. Schwandes's employment

within the meaning of Title VII.

151.   Subsection 3 affected the terms and conditions of Mx. Schwandes's employment within the meaning of Title VII.

152.   Requiring Mx. Schwandes to comply with subsection 3 was an adverse employment action under Title VII.

153.   By enforcing subsection 3, Defendant Florida Virtual School Board discriminated against Mx. Schwandes with respect to terms, conditions, or privileges of employment because of sex, in violation of Title VII.

## COUNT 6

**Violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2**

**Discharge Because of Sex**

Pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-5

By Plaintiff AV Schwandes Against Defendant Florida Virtual School Board of Trustees

154.   Plaintiff AV Schwandes brings this claim against Defendant Florida Virtual School Board of Trustees and realleges paragraphs 6–13, 17–51, 67–74, and 103–111 against it.

155.   Defendant Florida Virtual School Board of Trustees was Mx. Schwandes's employer within the meaning of Title VII.

156.   Mx. Schwandes is an individual within the meaning of Title VII.

157.   Subsection 3 discriminates because of sex within the meaning Title VII.

42

158.   Discharging Mx. Schwandes for not complying with subsection 3 was an adverse employment action under Title VII.

159.   Defendant Florida Virtual School Board of Trustees discharged Mx. Schwandes because of sex, in violation of Title VII.

## COUNT 7

**Violation of the First and Fourteenth Amendments to the U.S. Constitution**

**Deprivation of Freedom of Speech**

Pursuant to 42 U.S.C. § 1983

By All Plaintiffs Against Defendants Commissioner of Education, Members of Defendant State Board of Education, and Members of Defendant Education Practices Commission

160.   All Plaintiffs bring this claim against Defendants Commissioner of Education, Members of Defendant State Board of Education, and Members of Defendant Education Practices Commission. Plaintiff Katie Wood realleges paragraphs 4, 7–12, 14–61, and 69–92 against them. When answering Ms. Wood's claim against them in this count, each of those Defendants should read "Plaintiff" to refer only to Ms. Wood. Plaintiff Jane Doe realleges paragraphs 5, 7–12, 14–58, 62–66, 69–74, and 93–102 against them. When answering Ms. Doe's claim against them in this count, each of those Defendants should read "Plaintiff" to refer only to Ms. Doe. Plaintiff AV Schwandes realleges paragraphs 6–13, 17–51, 67–74, and 103–111 against them. When answering Mx. Schwandes's claim against them in this count,

each of those Defendants should read "Plaintiff" to refer only to Mx. Schwandes. Each of those Defendants should read "Defendant" in the paragraphs of this count to refer only to that answering Defendant.

161.   Subsection 3 violates the Free Speech Clause of the First Amendment to the U.S. Constitution, applicable to the states through the Fourteenth Amendment to the U.S. Constitution.

162.   Plaintiff had and has free speech rights while at work, including in the classroom and during work hours.

163.   Plaintiff's providing Plaintiff's title and pronouns to students, within the meaning of subsection 3, was and is speech protected by the First Amendment.

164.   Plaintiff's speech was and is Plaintiff's own speech and message, not Defendant's or the government's. Neither Defendant nor the government commissioned or created Plaintiff's speech. Plaintiff was not and is not speaking pursuant to government policy. Plaintiff was not and is not seeking to convey a government-created message. Plaintiff was not and is not instructing students, encouraging better performance, or engaging in any other speech that Defendant paid and pays Plaintiff to produce as a teacher. Plaintiff's speech did not and does not owe its existence to Plaintiff's responsibilities as a public employee.

165.   Plaintiff's speech was not and is not government speech subject to government control just because students heard it and will or might hear it.

166.   Plaintiff's speech implicated and implicates a matter of public concern for purposes of the First Amendment.

167.   Plaintiff's strong interest in being allowed to express Plaintiff's gender identity by using Plaintiff's title and pronouns outweighs any government interest, if any, in preventing Plaintiff from doing so.

168.   Defendant is a person within the meaning of 42 U.S.C. § 1983.

169.   By enforcing or threatening to enforce subsection 3, Defendant was and is acting under color of state law within the meaning of 42 U.S.C. § 1983.

170.   By enforcing or threatening to enforce subsection 3, Defendant was and is subjecting Plaintiff to the deprivation of Plaintiff's right to freedom of speech secured by the First and Fourteenth Amendments.

## COUNT 8

**Violation of the First and Fourteenth Amendments to the U.S. Constitution**

**Deprivation of Freedom of Speech**

Pursuant to 42 U.S.C. § 1983

By Plaintiff Katie Wood Against Defendant Hillsborough County School Board

171.   Plaintiff Katie Wood brings this claim against Defendant Hillsborough County School Board and realleges paragraphs 4, 7–12, 14–61, and 69–92 against it.

172.   Subsection 3 violates the Free Speech Clause of the First Amendment

to the U.S. Constitution, applicable to the states through the Fourteenth Amendment to the U.S. Constitution.

173.    Ms. Wood had and has free speech rights while at work, including in the classroom and during work hours.

174.    Ms. Wood's providing her title and pronouns to students, within the meaning of subsection 3, was and is speech protected by the First Amendment.

175.    Ms. Wood's speech was and is her own speech and message, not Defendant Hillsborough County School Board's or the government's. Neither Defendant Hillsborough County School Board nor the government commissioned or created her speech. She was not and is not speaking pursuant to government policy. She was not and is not seeking to convey a government-created message. She was not and is not instructing students, encouraging better performance, or engaging in any other speech that Defendant Hillsborough County School Board paid and pays her to produce as a teacher. Her speech did not and does not owe its existence to her responsibilities as a public employee.

176.    Ms. Wood's speech was not and is not government speech subject to government control just because students heard it and will or might hear it.

177.    Ms. Wood's speech implicated and implicates a matter of public concern for purposes of the First Amendment.

178.    Ms. Wood's strong interest in being allowed to express her gender

identity by using her title and pronouns outweighs any government interest, if any, in preventing her from doing so.

179.   Defendant Hillsborough County School Board is a person within the meaning of 42 U.S.C. § 1983.

180.   Subsection 3 was and is an official policy of Defendant Hillsborough County School Board.

181.   By enforcing or threatening to enforce subsection 3, Defendant Hillsborough County School Board was and is acting under color of state law within the meaning of 42 U.S.C. § 1983.

182.   By enforcing or threatening to enforce subsection 3, Defendant Hillsborough County School Board was and is subjecting Ms. Wood to the deprivation of her right to freedom of speech secured by the First and Fourteenth Amendments.

## COUNT 9

**Violation of the First and Fourteenth Amendments to the U.S. Constitution**

**Deprivation of Freedom of Speech**

Pursuant to 42 U.S.C. § 1983

By Plaintiff Jane Doe Against Defendant Lee County School Board

183.   Plaintiff Jane Doe brings this claim against Defendant Lee County School Board and realleges paragraphs 5, 7–12, 14–58, 62–66, 69–74, and 93–102 against it.

184. Subsection 3 violates the Free Speech Clause of the First Amendment to the U.S. Constitution, applicable to the states through the Fourteenth Amendment to the U.S. Constitution.

185. Ms. Doe had and has free speech rights while at work, including in the classroom and during work hours.

186. Ms. Doe's providing her title and pronouns to students, within the meaning of subsection 3, was and is speech protected by the First Amendment.

187. Ms. Doe's speech was and is her own speech and message, not Defendant Lee County School Board's or the government's. Neither Defendant Lee County School Board nor the government commissioned or created her speech. She was not and is not speaking pursuant to government policy. She was not and is not seeking to convey a government-created message. She was not and is not instructing students, encouraging better performance, or engaging in any other speech that Defendant Lee County School Board paid and pays her to produce as a teacher. Her speech did not and does not owe its existence to her responsibilities as a public employee.

188. Ms. Doe's speech was not and is not government speech subject to government control just because students heard it and will or might hear it.

189. Ms. Doe's speech implicated and implicates a matter of public concern for purposes of the First Amendment.

190. Ms. Doe's strong interest in being allowed to express her gender

identity by using her title and pronouns outweighs any government interest, if any, in preventing her from doing so.

191.   Defendant Lee County School Board is a person within the meaning of 42 U.S.C. § 1983.

192.   Subsection 3 was and is an official policy of Defendant Lee County School Board.

193.   By enforcing or threatening to enforce subsection 3, Defendant Lee County School Board was and is acting under color of state law within the meaning of 42 U.S.C. § 1983.

194.   By enforcing or threatening to enforce subsection 3, Defendant Lee County School Board was and is subjecting Ms. Doe to the deprivation of her right to freedom of speech secured by the First and Fourteenth Amendments.

## COUNT 10

**Violation of the Fourteenth Amendment to the U.S. Constitution**

**Deprivation of Equal Protection of the Laws**

Pursuant to 42 U.S.C. § 1983

By All Plaintiffs Against Defendants Commissioner of Education, Members of Defendant State Board of Education, and Members of Defendant Education Practices Commission

195.   All Plaintiffs separately bring this claim against Defendants Commissioner of Education, Members of Defendant State Board of Education, and Members

of Defendant Education Practices Commission. Plaintiff Katie Wood realleges paragraphs 4, 7–12, 14–61, and 69–92 against them. When answering Ms. Wood's claim against them in this count, each of those Defendants should read "Plaintiff" to refer only to Ms. Wood. Plaintiff Jane Doe realleges paragraphs 5, 7–12, 14–58, 62–66, 69–74, and 93–102 against them. When answering Ms. Doe's claim against them in this count, each of those Defendants should read "Plaintiff" to refer only to Ms. Doe. Plaintiff AV Schwandes realleges paragraphs 6–13, 17–51, 67–74, and 103–111 against them. When answering Mx. Schwandes's claim against them in this count, each of those Defendants should read "Plaintiff" to refer only to Mx. Schwandes. Each of those Defendants should read "Defendant" in the paragraphs of this count to refer only to that answering Defendant.

196.   Subsection 3 violates the Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution.

197.   Subsection 3 classifies on the basis of sex within the meaning of the Equal Protection Clause.

198.   Subsection 3 is subject to intermediate scrutiny under the Equal Protection Clause.

199.   Subsection 3 fails intermediate scrutiny because Defendant cannot demonstrate an exceedingly persuasive justification—one that is genuine, not hypothesized, not invented *post hoc* in response to litigation, and that does not rely on

overbroad generalizations about the different talents, capacities, or preferences of males and females—for its discrimination because of sex. Defendant cannot show that subsection 3 serves an important governmental objective because there is none, and it cannot show that its discriminatory means are substantially related to the achievement of that objective because they cannot be.

200.   Even if subsection 3 is instead subject to rational-basis review, it fails rational-basis review because its discriminatory classification does not bear a rational relation to any legitimate end.

201.   Defendant is a person within the meaning of 42 U.S.C. § 1983.

202.   By enforcing or threatening to enforce subsection 3, Defendant was and is acting under color of state law within the meaning of 42 U.S.C. § 1983.

203.   By enforcing or threatening to enforce subsection 3, Defendant was and is subjecting Plaintiff to the deprivation of Plaintiff's right to equal protection of the laws secured by the Fourteenth Amendment.

## COUNT 11

### Violation of the Fourteenth Amendment to the U.S. Constitution

### Deprivation of Equal Protection of the Laws

Pursuant to 42 U.S.C. § 1983

By Plaintiff Katie Wood Against Defendant Hillsborough County School Board

204.   Plaintiff Katie Wood brings this claim against Defendant Hillsborough

County School Board and realleges paragraphs 4, 7–12, 14–61, and 69–92 against it.

205.   Subsection 3 violates the Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution.

206.   Subsection 3 classifies on the basis of sex within the meaning of the Equal Protection Clause.

207.   Subsection 3 is subject to intermediate scrutiny under the Equal Protection Clause.

208.   Subsection 3 fails intermediate scrutiny because Defendant Hillsborough County School Board cannot demonstrate an exceedingly persuasive justification—one that is genuine, not hypothesized, not invented *post hoc* in response to litigation, and that does not rely on overbroad generalizations about the different talents, capacities, or preferences of males and females—for its discrimination because of sex. Defendant Hillsborough County School Board cannot show that subsection 3 serves an important governmental objective because there is none, and it cannot show that its discriminatory means are substantially related to the achievement of that objective because they cannot be.

209.   Even if subsection 3 is instead subject to rational-basis review, it fails rational-basis review because its discriminatory classification does not bear a rational relation to any legitimate end.

210.   Defendant Hillsborough County School Board is a person within the meaning of 42 U.S.C. § 1983.

211.   Subsection 3 is an official policy of Defendant Hillsborough County School Board.

212.   By enforcing or threatening to enforce subsection 3, Defendant Hillsborough County School Board was and is acting under color of state law within the meaning of 42 U.S.C. § 1983.

213.   By enforcing or threatening to enforce subsection 3, Defendant Hillsborough County School Board was and is subjecting Ms. Wood to the deprivation of her right to equal protection of the laws secured by the Fourteenth Amendment.

## COUNT 12

**Violation of the Fourteenth Amendment to the U.S. Constitution**

**Deprivation of Equal Protection of the Laws**

Pursuant to 42 U.S.C. § 1983

By Plaintiff Jane Doe Against Defendant Lee County School Board

214.   Plaintiff Jane Doe brings this claim against Defendant Lee County School Board and realleges paragraphs 5, 7–12, 14–58, 62–66, 69–74, and 93–102 against it.

215.   Subsection 3 violates the Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution.

216.   Subsection 3 classifies on the basis of sex within the meaning of the Equal Protection Clause.

217.   Subsection 3 is subject to intermediate scrutiny under the Equal Protection Clause.

218.   Subsection 3 fails intermediate scrutiny because Defendant Lee County School Board cannot demonstrate an exceedingly persuasive justification—one that is genuine, not hypothesized, not invented *post hoc* in response to litigation, and that does not rely on overbroad generalizations about the different talents, capacities, or preferences of males and females—for its discrimination because of sex. Defendant Lee County School Board cannot show that subsection 3 serves an important governmental objective because there is none, and it cannot show that its discriminatory means are substantially related to the achievement of that objective because they cannot be.

219.   Even if subsection 3 is instead subject to rational-basis review, it fails rational-basis review because its discriminatory classification does not bear a rational relation to any legitimate end.

220.   Defendant Lee County School Board is a person within the meaning of 42 U.S.C. § 1983.

221.   Subsection 3 is an official policy of Defendant Lee County School Board.

222.   By enforcing or threatening to enforce subsection 3, Defendant Lee County School Board was and is acting under color of state law within the meaning of 42 U.S.C. § 1983.

223.   By enforcing or threatening to enforce subsection 3, Defendant Lee County School Board was and is subjecting Ms. Doe to the deprivation of her right to equal protection of the laws secured by the Fourteenth Amendment.

## COUNT 13

### Violation of Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 *et seq.*

### Discrimination on the Basis of Sex

Pursuant to Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 *et seq.*

By All Plaintiffs Against Defendants Florida Department of Education, State Board of Education, and Education Practices Commission

224.   All Plaintiffs separately bring this claim against Defendants Florida Department of Education, State Board of Education, and Education Practices Commission. Plaintiff Katie Wood realleges paragraphs 4, 7–12, 14–61, and 69–92 against them. When answering Ms. Wood's claim against them in this count, each of those Defendants should read "Plaintiff" to refer only to Ms. Wood. Plaintiff Jane Doe realleges paragraphs 5, 7–12, 14–58, 62–66, 69–74, and 93–102 against them. When answering Ms. Doe's claim against them in this count, each of those Defendants should read "Plaintiff" to refer only to Ms. Doe. Plaintiff AV Schwandes realleges

paragraphs 6–13, 17–51, 67–74, and 103–111 against them. When answering Mx. Schwandes's claim against them in this count, each of those Defendants should read "Plaintiff" to refer only to Mx. Schwandes. Each of those Defendants should read "Defendant" in the paragraphs of this count to refer only to that answering Defendant.

225.   Plaintiff is a person within the meaning of Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 ("Title IX").

226.   Defendant operates education programs or activities receiving federal financial assistance within the meaning of Title IX.

227.   Subsection 3 discriminates on the basis of sex within the meaning Title IX.

228.   By enforcing or threatening to enforce subsection 3, Defendant, on the basis of Plaintiff's sex, excludes Plaintiff from participation in, denies Plaintiff the benefits of, and subjects Plaintiff to discrimination, under an education program or activity receiving federal financial assistance, in violation of Title IX.

## COUNT 14

**Violation of Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 *et seq.***

### Discrimination on the Basis of Sex

Pursuant to Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 *et seq.*

By Plaintiff Katie Wood Against Defendant Hillsborough County School Board

229.   Plaintiff Katie Wood brings this claim against Defendant Hillsborough County School Board and realleges paragraphs 4, 7–12, 14–61, and 69–92 against it.

230.   Ms. Wood is a person within the meaning of Title IX.

231.   Defendant Hillsborough County School Board operates education programs or activities receiving federal financial assistance within the meaning of Title IX.

232.   Subsection 3 discriminates on the basis of sex within the meaning Title IX.

233.   By enforcing or threatening to enforce subsection 3, Defendant Hillsborough County School Board, on the basis of Ms. Wood's sex, excludes her from participation in, denies her the benefits of, and subjects her to discrimination, under an education program or activity receiving federal financial assistance, in violation of Title IX.

## COUNT 15

### Violation of Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 *et seq.*

### Discrimination on the Basis of Sex

Pursuant to Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 *et*

*seq.*

By Plaintiff Jane Doe Against Defendant Lee County School Board

234.   Plaintiff Jane Doe brings this claim against Defendant Lee County School Board and realleges paragraphs 5, 7–12, 14–58, 62–66, 69–74, and 93–102 against it.

235.   Ms. Doe is a person within the meaning of Title IX.

236.   Defendant Lee County School Board operates education programs or activities receiving federal financial assistance within the meaning of Title IX.

237.   Subsection 3 discriminates on the basis of sex within the meaning Title IX.

238.   By enforcing or threatening to enforce subsection 3, Defendant Lee County School Board, on the basis of Ms. Doe's sex, excludes her from participation in, denies her the benefits of, and subjects her to discrimination, under an education program or activity receiving federal financial assistance, in violation of Title IX.

## COUNT 16

### Violation of Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 *et seq.*

### Discrimination on the Basis of Sex

Pursuant to Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 *et seq.*

By Plaintiff AV Schwandes Against Defendant Florida Virtual School Board of Trustees

239. Plaintiff AV Schwandes brings this claim against Defendant Florida Virtual School Board of Trustees and realleges paragraphs 6–13, 17–51, 67–74, and 103–111 against it.

240. Mx. Schwandes is a person within the meaning of Title IX.

241. Defendant Florida Virtual School Board of Trustees operated education programs or activities receiving federal financial assistance, within the meaning of Title IX, during Mx. Schwandes's employment.

242. Subsection 3 discriminates on the basis of sex within the meaning Title IX.

243. By enforcing subsection 3 and terminating Mx. Schwandes for not complying with subsection 3, Defendant Florida Virtual School Board of Trustees, on the basis of Mx. Schwandes's sex, excluded them from participation in, denied them the benefits of, and subjected them to discrimination, under an education program or activity receiving federal financial assistance, in violation of Title IX.

## COUNT 17

**Violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-3**

**Retaliation**

244. Plaintiff AV Schwandes brings this claim against Defendant Florida Virtual School Board of Trustees and realleges paragraphs 6, 13, 17–33, 67–74, 103–111, and 155–159 against it.

245.   Mx. Schwandes engaged in activities protected under 42 U.S.C. § 2000e-3(a) when they opposed Defendant Florida Virtual School Board of Trustees's policy of prohibiting teachers from using pronouns, titles, and honorifics that did not conform to their sex by communicating their concerns that such a policy violated civil rights law.

246.   Mx. Schwandes further engaged in activities protected under 42 U.S.C. § 2000e-3(a) on September 26, 2023, when they filed a charge of discrimination with the Equal Employment Opportunity Commission through the Florida Commission on Human Relations regarding Defendant Florida Virtual School Board of Trustees's discriminatory policy.

247.   On September 27, 2023, Defendant Florida Virtual School Board of Trustees received a copy of Mx. Schwandes's charge of discrimination.

248.   The tone and tenor of Defendant Florida Virtual School Board of Trustees supervisors' communications with Mx. Schwandes changed dramatically after they received the charge of discrimination. The interactions were cold, responses were curt, and Mx. Schwandes's supervisors often refused to answer basic questions or engage in conversation. Mx. Schwandes was also denied the opportunity to use the title Professor, even though this did not conflict with Florida law.

249.   Defendant Florida Virtual School Board of Trustees violated 42 U.S.C. § 2000e-3(a) on October 24, 2023, when it, through its agent Jillian Cheek, took

materially adverse employment action against Mx. Schwandes by firing them with the purpose of retaliating against them because of their participation in protected activities and opposition to sex discrimination.

250.   Mx. Schwandes was not provided a reason for termination in writing but was told over the phone it was because of the reasons identified in their relief of duty notice and their subsequent resistance to use the titles and pronouns that Defendant Florida Virtual School Board of Trustees believed conform to their sex.

## JURY DEMAND

Plaintiffs demand a jury trial on all issues triable of right by a jury.

## DEMAND FOR RELIEF

Plaintiffs respectfully request that the Court:

A.      enter judgment for Plaintiffs on each count set forth above;

B.      declare that subsection 3 of Fla. Stat. § 1000.071 violates federal law on the counts set forth above;

C.      enjoin Defendants, their officers, agents, servants, employees, attorneys, and successors, and other persons who are in active concert or participation with any such person from enforcing subsection 3 of Fla. Stat. § 1000.071;

D.      award Plaintiffs compensatory damages, in an amount to be proved at trial;

E.      award Plaintiff AV Schwandes back pay and front pay, in an amount to

be proved at trial;

F.    award Plaintiffs nominal damages;

G.    award Plaintiffs their costs, attorney's fees, and expert fees; and

H.    grant all further necessary or proper relief.

Respectfully submitted.

February 6, 2024

*/s/ Sam Boyd*
Sam Boyd, Fla. Bar No. 1012141
Carli Raben, Fla. Bar No. 1036013
SOUTHERN POVERTY LAW CENTER
2 S. Biscayne Blvd. Ste. 3750
Miami, FL 33131
(786) 347-2056
(786) 237-2949 (fax)
sam.boyd@splcenter.org
carli.raben@splcenter.org

Aaron S. Fleisher[*†]
SOUTHERN POVERTY LAW CENTER
1101 17th St NW Ste. 705
Washington, DC 20036
(202) 536-9719
(202) 971-9205 (fax)
aaron.fleisher@splcenter.org
[†] *Not admitted to practice law in DC*

Diego A. Soto[*‡]
Jessica L. Stone[*]
SOUTHERN POVERTY LAW CENTER
150 E. Ponce De Leon Ave. Ste. 340
Decatur, GA 30030
(404) 221-5837
(404) 221-5857 (fax)
diego.soto@splcenter.org
jessica.stone@splcenter.org
[‡] *Admission to GA pending*

Simone Chriss, Fla. Bar No. 124062
Jodi Siegel, Fla. Bar No. 511617
SOUTHERN LEGAL COUNSEL, INC.
1229 NW 12th Ave.
Gainesville, FL 32601
(352) 271-8890
(352) 271-8347 (fax)
simone.chriss@southernlegal.org
jodi.siegel@southernlegal.org

James M. Finberg[*]
James Baltzer[*]
ALTSHULER BERZON LLP
177 Post St., Ste. 300
San Francisco, CA 94108
(415) 421-7151
jfinberg@altshulerberzon.com
jbaltzer@altshulerberzon.com

*Counsel for Plaintiffs*

[*] Admitted *pro hac vice*

# TAB 69

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF FLORIDA
## TALLAHASSEE DIVISION

Katie Wood *et al.*,

  *Plaintiffs*,

v.   No. 4:23-cv-00526-MW-MAF

Florida Department of Education *et al.*,

  *Defendants*.

_____/

## PLAINTIFFS KATIE WOOD AND AV SCHWANDES'S REPLY
## IN SUPPORT OF THEIR MOTIONS FOR PRELIMINARY INJUNCTION

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ....................................................................... iii

INTRODUCTION ...................................................................................... 1

ARGUMENT .............................................................................................. 2

    I. Plaintiffs are likely to succeed on the merits ................................... 2

        A. Subsection 3 violates Title VII ...................................................... 2

            1. Subsection 3 fails the but-for test articulated in *Bostock* ........ 2

            2. *Bostock* bars discrimination based on individuals' conduct ... 3

            3. Subsection 3 is based on sex stereotypes in violation of Title VII ................................................................................................... 8

            4. Subsection 3 is not a bona fide occupational qualification .. 12

            5. Plaintiffs have suffered adverse employment actions .......... 16

        B. Subsection 3 violates the First Amendment ................................... 20

            1. State Defendants cannot prohibit Plaintiffs from existing as transgender and nonbinary people at work ........................... 20

            2. Plaintiffs have satisfied the public concern prong of *Garcetti* ................................................................................................. 25

            3. State Defendants have offered no interest to justify subsection 3 ....................................................................................... 27

    II. Plaintiffs did not unreasonably delay filing their motions for preliminary injunction ......................................................................... 31

    III. Plaintiffs have shown irreparable harm under Title VII ........................ 33

    IV. The public interest and balance of equities favor Plaintiffs .................... 36

CONCLUSION ......................................................................................... 37

CERTIFICATE OF WORD COUNT ....................................................... 39

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*ABC Charters, Inc. v. Bronson*,
   591 F. Supp. 2d 1272 (S.D. Fla. 2008) ................................................36

*Adams by & through Kasper v. Sch. Bd. of St. Johns Cnty.*,
   57 F.4th 791 (11th Cir. 2022) (en banc) ......................................*passim*

*Alabama v. U.S. Dep't of Com.*,
   546 F. Supp. 3d 1057 (M.D. Ala. 2021) ............................................33

*Alves v. Bd. of Regents of the Univ. Sys. of Ga.*,
   804 F.3d 1149 (11th Cir. 2015) .........................................................26

*Baker v. Buckeye Cellulose Corp.*,
   856 F.2d 167 (11th Cir. 1988) ......................................................33, 34

*Bethune-Cookman, Univ., Inc. v. Dr. Mary McLeod Bethune Nat'l
   Alumni Ass'n, Inc.*,
   No. 22-14257, 2023 WL 3704912 (11th Cir. May 30, 2023)
   (unpublished) ....................................................................................33

*Bostock v. Clayton County*,
   590 U.S. 644 (2020) ..................................................................*passim*

*Braxton v. Bd. of Pub. Instruction of Duval Cnty.*,
   303 F. Supp. 958 (M.D. Fla. 1969) ...................................................22

*Burt v. Fuchs*,
   No. 1:22-cv-75, 2023 WL 4103942 (N.D. Fla. June 21, 2023).........22

*Chambers v. Omaha Girls Club*,
   629 F. Supp. 925 (D. Neb. 1986) ..................................................15, 16

*Chavez v. Credit Nation Auto Sales, LLC*,
   641 F. App'x 883 (11th Cir. 2016) ....................................................11

*Christian Legal Soc. Chapter of the Univ. of Cal., Hastings Coll. of*
    *the L. v. Martinez*,
    561 U.S. 661 (2010)............................................................................6

*Cox v. Am. Cast Iron Pipe Co.*,
    784 F.2d 1546 (11th Cir. 1986) ......................................................18

*Davis v. Legal Servs. Ala., Inc.*,
    19 F.4th 1261 (11th Cir. 2021) .......................................................18

*Diaz v. Pan Am. World Airways, Inc.*,
    442 F.2d 385 (5th Cir. 1971) ....................................................13, 15

*Dick v. CRC Ins. Servs., Inc.*,
    No. 2:08-cv-00910, 2009 WL 10687917 (N.D. Ala. Dec. 14, 2009)................18

*Dothard v. Rawlinson*,
    433 U.S. 321 (1977).........................................................................12

*Dream Defs. v. DeSantis*,
    559 F. Supp. 3d 1238 (N.D. Fla. 2021) .....................................31, 33

*E.E.O.C. v. Joe's Stone Crab, Inc.*,
    220 F.3d 1263 (11th Cir. 2000) ........................................................8

*EEOC v. Catastrophe Management Solutions*,
    852 F.3d 1018 (11th Cir. 2016) .....................................................6, 7

*EEOC v. Kamehameha Sch./Bishop Est.*,
    990 F.2d 458 (9th Cir. 1993) ..........................................................16

*Eknes-Tucker v. Governor of Ala.*,
    80 F.4th 1205 (11th Cir. 2023) .......................................................11

*Eller v. Prince George's Cnty. Pub. Schs.*,
    580 F. Supp. 3d 154 (D. Md. 2022).................................................19

*Entrekin v. City of Panama City*,
    376 F. App'x 987 (11th Cir. 2010)............................................19, 20

*Evans v. Ga. Reg'l Hosp.*,
    850 F.3d 1248 (11th Cir. 2017........................................................6

*FF Cosms. FL, Inc. v. City of Miami Beach*,
    866 F.3d 1290 (11th Cir. 2017) ........................................................37

*Fla. Businessmen for Free Enter. v. City of Hollywood*,
    648 F.2d 956 (5th Cir. 1981) ..........................................................36

*FW/PBS, Inc. v. City of Dallas*,
    493 U.S. 215 (1990) .......................................................................31

*Garcia v. Stillman*,
    No. 22-CV-24156, 2023 WL 3478450 (S.D. Fla. May 16, 2023) .....................37

*Garneau v. Raytheon Co.*,
    323 F. Supp. 391 (D. Mass. 1971) ...................................................37

*Garrett v. Okaloosa Cnty.*,
    734 F.2d 621 (11th Cir. 1984) .......................................12, 14, 15, 16

*Glenn v. Brumby*,
    663 F.3d 1312 (11th Cir. 2011) ........................................9, 11, 12

*Hamilton v. Alabama*,
    376 U.S. 650 (1964) .......................................................................18

*Hardin v. Stynchcomb*,
    691 F.2d 1364 (11th Cir. 1982) ...............................................13, 14

*Hinson v. Clinch Cnty., Ga. Bd. of Educ.*,
    231 F.3d 821 (11th Cir. 2000) .........................................................17

*Howard v. Walgreen Co.*,
    605 F.3d 1239 (11th Cir. 2010) .......................................................18

*Int'l Union, United Auto., Aerospace & Agric. Implement Workers of
    Am., UAW v. Johnson Controls, Inc.*,
    499 U.S. 187 (1991) ..........................................5, 11, 12, 14

*Janus v. Am. Fed'n of State, Cnty., & Mun. Emps., Council 31*,
    138 S. Ct. 2448 (2018) ...................................................................29

*Jenkins v. Tuscaloosa City Bd. of Educ.*,
    72 F. Supp. 3d 1238 (N.D. Ala. 2014) .............................................20

*Kansas Health Care Ass'n, Inc. v. Kan. Dep't of Soc. & Rehab. Servs.*,
   31 F.3d 1536 (10th Cir. 1994) ............................................................36

*Kennedy v. Bremerton Sch. Dist.*,
   597 U.S. 507 (2022)..........................................................20, 22, 23, 24

*KH Outdoor, LLC v. City of Trussville*,
   458 F.3d 1261 (11th Cir. 2006) .........................................................36

*Kidd v. Mando Am. Corp.*,
   731 F.3d 1196 (11th Cir. 2013) .........................................................18

*Koe v. Noggle*,
   No. 1:23-cv-2904, 2023 WL 5339281 (N.D. Ga. Aug. 20, 2023) ....................33

*L.A. Dep't of Water & Power v. Manhart*,
   435 U.S. 702 (1978)..........................................................................10

*Lane v. Franks*,
   573 U.S. 228 (2014)..........................................................................26

*McCrimmon v. Daley*,
   No. 68 C 1665, 1970 WL 119 (N.D. Ill. Mar. 31, 1970)...................................37

*McDonald's Corp. v. Robertson*,
   147 F.3d 1301 (11th Cir. 1998) ...................................................33, 34

*McMahon v. World Vision, Inc.*,
   No. 2:21-cv-00920, 2023 WL 4704711 (W.D. Wash. July 24,
   2023) ................................................................................................5

*Owner-Operator Indep. Drivers Ass'n, Inc. v. Landstar Sys., Inc.*,
   No. 3:02-cv-1005, 2012 WL 6827463 (M.D. Fla. Aug. 30, 2012) ....................34

*Pals Grp., Inc. v. Quiskeya Trading Corp.*,
   No. 16-23905-CIV, 2017 WL 532299 (S.D. Fla. Feb. 9, 2017).........................33

*Pernell v. Fla. Bd. of Governors of State Univ. Sys.*,
   641 F. Supp. 3d 1218 (N.D. Fla. 2022) ............................................29

*Price Waterhouse v. Hopkins*,
   490 U.S. 228 (1989) ................................................................8, 10, 11

*Rosenfeld v. S. Pac. Co.*,
    444 F.2d 1219 (9th Cir. 1971) ............................................................15

*Shannon v. Bellsouth Telecomms., Inc.*,
    292 F.3d 712 (11th Cir. 2002) ...........................................................18

*Siegel v. LePore*,
    234 F.3d 1163 (11th Cir. 2000) .........................................................34

*Snider Tire, Inc. v. Chapman*,
    No. 2:20-cv-1775, 2021 WL 2497942 (N.D. Ala. Apr. 27, 2021) .....................33

*Storves v. Island Water Ass'n, Inc.*,
    No. 2:10-cv-274, 2010 WL 11622686 (M.D. Fla. Nov. 3, 2010) ......................34

*Temple Univ. v. White*,
    941 F.2d 201 (3d Cir. 1991) ..............................................................36

*United States v. National Treasury Employees Union*,
    513 U.S. 454 (1995)..........................................................................29

*Van Der Meulen v. Brinker Int'l*,
    153 F. App'x 649 (11th Cir. 2005) .....................................................18

*Vigars v. Valley Christian Ctr. of Dublin, Cal.*,
    805 F. Supp. 802 (N.D. Cal. 1992).....................................................16

*Weeks v. S. Bell Tel. & Tel. Co.*,
    408 F.2d 228 (5th Cir. 1969) .............................................................13

*Wilson v. Sw. Airlines Co.*,
    517 F. Supp. 292 (N.D. Tex. 1981) ...................................................13

*Wreal, LLC v. Amazon.com, Inc.*,
    840 F.3d 1244 (11th Cir. 2016) .........................................................32

**Statutes**

42 U.S.C. § 2000e-2................................................................12, 13, 16

Fla. Stat. § 1000.21 ....................................................................3, 14, 28

Fla. Stat. § 1000.071 ....................................................................2, 7, 23

Fla. Stat. § 1001.42 .................................................................................28

## INTRODUCTION

The core of State Defendants' justification for subsection 3 is that by merely doing what other teachers do—introducing themselves by title and pronouns—Plaintiffs are making "curricular" decisions akin to introducing students to "mature sexual themes." But Plaintiffs do not "instruct" students about gender identity simply by introducing themselves by title and pronouns, any more than a Christian teacher impermissibly teaches about Christianity by praying quietly in view of students or a Black teacher instructs about race merely by their presence. To argue otherwise is to describe transgender teachers as inherently abnormal or deviant and deserving of fewer rights to expression and equal employment than other teachers.

Every day subsection 3 is permitted to operate, Ms. Wood is forced to live with and repeat, at risk of losing her livelihood, this invidious state message. And Mx. Schwandes faces a state investigation and potential delicensing for refusing to do so. Unless subsection 3's enforcement is enjoined, Plaintiffs will continue to suffer irreparable harm. State Defendants have no interest in enforcing a state law that conflicts with federal law and the Constitution. Plaintiffs have therefore met their burden for a preliminary injunction.

## ARGUMENT

**I.    Plaintiffs are likely to succeed on the merits.**

### A.    Subsection 3 violates Title VII.

#### 1.    Subsection 3 fails the but-for test articulated in *Bostock*.

State Defendants concede that, with respect to Ms. Wood's she/her pronouns, subsection 3 fails the "straightforward rule" articulated in *Bostock v. Clayton County*, 590 U.S. 644, 659 (2020), for identifying Title VII violations. Doc. 60 at 14; *see also* Doc. 11 at 14–15 (describing *Bostock*'s test). Ms. Wood is not permitted to use Ms. and she/her pronouns because she was assigned male at birth, even though she would be allowed to do so if she had been assigned female. Doc. 56 ¶ 81; Doc. 11-1 ¶¶ 2, 9; Fla. Stat. § 1000.071(3). That concession is decisive for Ms. Wood's likelihood of success on the merits of her Title VII claim.

With respect to Mx. Schwandes, State Defendants also have no meaningful rebuttal to Plaintiffs' showing that subsection 3 discriminates against them "because of … sex" by using certain sex characteristics as the sole basis for prohibiting Mx. Schwandes, but not other employees, from using non-gendered titles and pronouns. Doc. 45 at 13–14; *Bostock*, 590 U.S. at 656 ("Title VII's 'because of' test incorporates the simple and traditional standard of but-for causation." (cleaned up)). State Defendants instead contend that "[t]he conditions referenced in the statute are not separate sexes, they are 'genetically or biochemically verifiable disorder[s] of sex

2

development,'" and assert that "*Bostock* presumes that there are two sexes." Doc. 60 at 28. But the question is not what labels ("disorders" or anything else) Florida's law uses, *Bostock*, 590 U.S. at 646, nor what *Bostock* "presumes" about an issue it nowhere addresses, but simply whether the employer has discriminated against an "individual" "because of" their "sex." Here, because Mx. Schwandes was assigned female at birth and because they do not have certain sex characteristics, subsection 3 discriminates against them "for actions or attributes it … tolerate[s] in" other employees. *Id.* at 658.[1] Discrimination against employees who have typical (or atypical) sex characteristics violates Title VII no less than an employer's discrimination against an employee for being transgender, *id.* at 660, or "insufficiently feminine" or "insufficiently masculine," *id.* at 659. Nor, contrary to State Defendants' suggestion, Doc. 60 at 28, did *Adams* address the relevance of intersex characteristics under Title VII or any other law. *See Adams by & through Kasper v. Sch. Bd. of St. Johns Cnty.*, 57 F.4th 791, 808 (11th Cir. 2022) (en banc).

## 2. *Bostock* bars discrimination based on individuals' conduct.

Because subsection 3 cannot survive *Bostock*'s but-for test, State Defendants argue that it was intended only to "determine whether the word 'sex' in Title VII

---

[1] The fact that Florida's law discriminates between intersex people and others like Mx. Schwandes on the basis of sex is confirmed by the statute itself, which defines an employee's "sex" as determined by their "sex chromosomes, naturally occurring sex hormones, and internal and external genitalia present at birth," and similarly carves out its exemption by reference to genetic, biochemical, chromosomal, and genital characteristics. Fla. Stat. §§ 1000.21(9), 1000.071(1).

covered individuals who are … transgender as a *class*," not to "determine whether regulating particular *conduct* constitutes discrimination based on 'sex.'" Doc. 60 at 11. But *Bostock* explained that under Title VII, "our focus should be on individuals, not groups." 590 U.S. at 658. The purpose of the but-for test is to determine whether "the employer intentionally relie[d] in part on *an individual employee's* sex," *id.* at 659 (emphasis added). If "changing *the employee's* sex would have yielded a different choice by the employer," *id.* at 659–60 (emphasis added), it does not matter whether the employer purports only to be regulating "conduct." "[I]t's irrelevant what an employer might call its discriminatory practice, how others might label it, or what else might motivate it," *id.* at 664, because "nothing in Title VII turns on the employer's labels or any further intentions (or motivations) for its conduct beyond sex discrimination," *id.* at 667.

*Bostock* itself was about conduct as well as status. Gerald Bostock "was fired for *conduct* 'unbecoming' a county employee," *id.* at 653 (emphasis added), and Aimee Stephens was fired because "she planned to 'live and work full-time as a woman,'" *id.* at 654. And the Court summarized its holding at the outset by referring to conduct: "An employer who fires an individual for being homosexual or transgender fires that person for traits *or actions* it would not have questioned in members of a different sex. Sex plays a necessary and undisguisable role in the decision, exactly what Title VII forbids." *Id.* at 651–52 (emphasis added).

4

State Defendants' cited cases do not support their position. *Stollings v. Texas Tech University* drew no distinction between status and conduct. No. 5:20-cv-250, 2021 WL 3748964, at *10 (N.D. Tex. Aug. 25, 2021) (cited at Doc. 60 at 10). Meanwhile, *Texas v. EEOC* was not a Title VII enforcement action, and although it interpreted *Bostock* as relating only to discrimination based on "status," its analysis is unpersuasive because the court ignored *Bostock*'s unequivocal but-for test and express language regarding both status and conduct. 633 F. Supp. 3d 824, 828 (N.D. Tex. 2022) (cited at Doc. 60 at 11). For that reason, no other reported decision has followed that reasoning in the two years since its publication. *See, e.g.*, *McMahon v. World Vision, Inc.*, No. 2:21-cv-00920, 2023 WL 4704711, at *3 (W.D. Wash. July 24, 2023) (rejecting argument under *Bostock* that employer policy "is not facially discriminatory because it targets conduct rather than protected traits").

Furthermore, State Defendants' argument is inconsistent with longstanding Title VII law. For example, *Phillips v. Martin Marietta Corp.* held that absent proof of a bona fide occupational qualification ("BFOQ"), an employer's refusal to hire women based on the conduct of having pre-school-age children, despite its willingness to hire men with children that age, violated Title VII. 400 U.S. 542, 543 (1971); *see also Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am., UAW v. Johnson Controls, Inc.* ("*UAW*"), 499 U.S. 187, 198 (1991) (employer policy classifying "on the basis of gender and childbearing capacity" violated Title VII);

*Christian Legal Soc. Chapter of the Univ. of Cal., Hastings Coll. of the L. v. Martinez*, 561 U.S. 661, 689 (2010) ("Our decisions have declined to distinguish between status and conduct in [the sexual orientation] context."). Under Eleventh Circuit law, as well, at least one judge expressly recognized even before *Bostock* that Title VII's protections for transgender employees are not limited to "status." *See Evans v. Ga. Reg'l Hosp.*, 850 F.3d 1248, 1260 (11th Cir. 2017), *abrogated by Bostock*, 590 U.S. 644 (W. Pryor, J., concurring) ("Glenn 'presented' and 'dressed as a woman' at work and notified the supervisor that Glenn intended to continue this behavior. … Title VII would have protected any biological male under those facts, not because of status, but *because of behavior*." (cleaned up) (emphasis added)).

Because Title VII prohibits discrimination based on conduct, State Defendants' argument that "pronoun choice is independent of transgender status," Doc. 60 at 12–14, because not all transgender people use nonbinary pronouns or because some experience gender fluidity, is irrelevant. The opposite rule would be absurd—allowing discrimination under Title VII based on every characteristic not all members of the protected class share. This would allow not only discrimination based on transgender people's titles and pronouns (and appearance or other form of gender expression), but also firing a Jewish employee for wearing a yarmulke, since not all Jewish people do, or a Black employee for adopting an African-derived name.

For the same reasons, State Defendants' reliance on *EEOC v. Catastrophe*

*Management Solutions*, 852 F.3d 1018 (11th Cir. 2016), for the proposition that Title VII reaches only "immutable characteristics," Doc. 60 at 16–18, is misplaced. That decision rejected an as-applied Title VII race discrimination challenge to an employer's facially neutral hairstyle policy on the grounds that "courts generally have upheld facially neutral policies regarding *mutable* characteristics" like hairstyle, 852 F.3d at 1032 (cleaned up), and that "Title VII protects persons in covered categories with respect to their immutable characteristics, but not their cultural practices," *id.* at 1030. But subsection 3 is not "facially neutral"; its requirements are explicitly based on sex, a characteristic the law itself defines as "an immutable biological trait." Fla. Stat. § 1000.071(1), (3). It is analogous not to a facially neutral hairstyle policy but to one that permitted only members of one race, but not another, to wear a particular hairstyle.

Finally, State Defendants argue that applying *Bostock*'s but-for test here "would lead to an unworkable rule and absurd results" because "[s]ubsection 3 would violate Title VII for transgender teachers who use 'he' or 'she' as their pronouns[,] but it would not violate Title VII for teachers that use 'they,' 'ze,' 'hir,' or other pronouns." Doc. 60 at 14–15. State Defendants are wrong that subsection 3's discriminatory prohibition on gender-neutral pronouns complies with Title VII, but regardless, they do not explain why prohibiting sex discrimination against Ms. Wood, who uses she/her pronouns, would under any circumstances be "absurd" or

"unworkable" because some other person would not be protected from discrimination.

### 3. Subsection 3 is based on sex stereotypes in violation of Title VII.

State Defendants do not contest that discrimination because of sex stereotypes violates Title VII, as indeed they cannot. *See Price Waterhouse v. Hopkins*, 490 U.S. 228, 250 (1989) (plurality opinion); *E.E.O.C. v. Joe's Stone Crab, Inc.*, 220 F.3d 1263, 1284 (11th Cir. 2000). Instead, they rely extensively on *Adams* to argue that classifications based on "biological sex" are lawful and not based on stereotypes. Doc. 60 at 18–19. But State Defendants misapply *Adams*, which was not a Title VII case and which addressed only sex-segregated bathrooms, an issue raising unique policy and legal considerations not presented by this case.

State Defendants argue that, under *Adams*, "a policy can lawfully classify on the basis of biological sex without unlawfully discriminating on the basis of transgender status." Doc. 60 at 19 (quoting 57 F.4th at 809). But they ignore the critical word "lawfully." *Adams* made this statement after determining that the bathroom policy was lawful under the Equal Protection Clause because it satisfied intermediate scrutiny—it served "important governmental objectives" and the "discriminatory means employed [were] substantially related to the achievement of those objectives." 57 F.4th at 801 (quotation omitted). But there is no "intermediate scrutiny" step under Title VII. Instead, facial discrimination by employers automatically

violates the statute unless the employer can prove a BFOQ. The Eleventh Circuit has confirmed precisely this point. *Glenn v. Brumby*, 663 F.3d 1312, 1321 (11th Cir. 2011) (holding that "[i]f this were a Title VII case, the analysis would end" after determining that the employer acted on the basis of a sex stereotype, without the need for applying intermediate scrutiny). Similarly, *Adams* held the facially discriminatory bathroom policy was lawful under Title IX because of Title IX's express carve-out for bathrooms. 57 F.4th at 817. But Title VII has no carve-out for teacher pronouns. *See id.* at 811; *Bostock*, 590 U.S. at 669 ("[W]hen Congress chooses not to include any exceptions to a broad rule, courts apply the broad rule.").

State Defendants quote *Adams*'s statement that the bathroom policy did not discriminate on the basis of transgender status because it "divides students into biological male and biological female groups—both of which can inherently contain transgender students—for purposes of separating the male and female bathrooms by biological sex." Doc. 60 at 19 (quoting 57 F.4th at 809). To the extent State Defendants imply that subsection 3 is lawful because it adversely affects both transgender men and transgender women (as well as nonbinary employees like Mx. Schwandes), this mode of reasoning does not apply in the Title VII context, as reflected in *Adams*'s clear distinction of *Bostock*. *See* 57 F.4th at 808–09. *Bostock* was emphatic that Title VII focuses on individuals, not groups, so the fact that an employer discriminates against members of both "groups" is not a defense. 590 U.S. at 662

("[J]ust as an employer who fires both Hannah and Bob for failing to fulfill traditional sex stereotypes doubles rather than eliminates Title VII liability, an employer who fires both Hannah and Bob for being gay or transgender does the same.").

Nor did *Adams* carve out policies based on "biological sex" from longstanding precedent on sex stereotyping or hold that such policies necessarily "do[] not depend in any way on how [people] act or identify." 57 F.4th at 809. Instead, *Adams* dealt only with the sex-based bathroom policy before it, which it interpreted to "not depend in any way on how students act or identify." *Id.* "[B]iological differences" mattered to the Court because "bodily exposure is most likely to occur" in the bathroom. *Id.* at 805. Subsection 3 does not address any "bodily exposure" of "biological differences," and State Defendants effectively concede that subsection 3 is grounded in sex stereotypes. *See* Doc. 60 at 20 (pronoun usage is "wholly divorced from biological sex"); *id.* at 40 (subsection 3 is "based on longstanding social and cultural norms").[2] In any case, even if subsection 3 were based on "biological differences," Title VII does not permit discrimination based on biological differences between sexes in the absence of a BFOQ. *See, e.g.*, *L.A. Dep't of Water & Power v. Manhart*,

---

[2] Analogously, consider whether Title VII would permit Florida to require married but not unmarried women to use the title Mrs. as the title that "corresponds to" their marital status. Such a rule, like subsection 3, would be grounded solely in stereotypes, and applying that rule to any individual woman would be discrimination because of sex. Under Title VII, both married women and transgender women are free to use the title Ms. because "we are beyond the day when an employer could … insist[] that [employees] matched the stereotype associated with their group." *Price Waterhouse*, 490 U.S. at 251.

435 U.S. 702, 707 (1978) (holding discrimination based on biological difference that "women … live longer than men" violated Title VII); *UAW*, 499 U.S. at 192 (discrimination based on biological capacity to become pregnant violated Title VII).[3]

State Defendants also all but ignore the Eleventh Circuit's binding decision in *Glenn*, falsely asserting in a footnote that arguments based on *Glenn* are "foreclosed" by *Adams*'s statement (plucked out of context) that "'sex' is not a stereotype." Doc. 60 at 20 n.1 (quoting 57 F.4th at 813). Rather than overrule *Glenn*, *Adams* distinguished it as involving "workplace discrimination involving nonconformity with sex stereotypes"—precisely like this case. *Adams*, 57 F.4th at 813; *see also Eknes-Tucker v. Governor of Ala.*, 80 F.4th 1205, 1229 (11th Cir. 2023) (reaffirming *Glenn*'s continued relevance in employment discrimination cases); *Chavez v. Credit Nation Auto Sales, LLC*, 641 F. App'x 883, 884 (11th Cir. 2016) (citing *Glenn* in a Title VII case).

With respect to Mx. Schwandes's claim of sex stereotyping, State Defendants wrongly contend that Title VII does not protect nonbinary people. *See* Doc. 60 at 27 ("An employer who had a policy of not hiring nonbinary persons would not

---

[3] State Defendants assert in a footnote that "no stereotype is present here" because "many transgender individuals do not seek to use pronouns that align with the opposite sex." Doc. 60 at 20 n.1. But that is like saying that, because *many* women do not wear gender-neutral clothing, it is not a sex stereotype to assume that *no* women wear gender-neutral clothing. That is in fact the prototypical example of sex stereotyping. *See, e.g.*, *Price Waterhouse*, 490 U.S. at 235, 255–56 (holding that employer, who described employee as "macho," engaged in unlawful sex stereotyping, even though many women are not "macho").

discriminate against Schwandes based on 'sex'[.]"). In fact, *Bostock* emphasized that Title VII protects "any individual" discriminated against "because of ... sex." 590 U.S. at 657 (quoting 42 U.S.C. § 2000e-2(a)(1)). State Defendants have no response to the undeniable and common-sense observation that subsection 3's prohibition on Mx. Schwandes using Mx. and they/them pronouns is based entirely and impermissibly on stereotypes about how people assigned male or female at birth should identify themselves to others. *See Glenn*, 663 F.3d at 1317 ("[D]iscrimination against a transgender individual because of her gender-nonconformity is sex discrimination, whether it's described as being on the basis of sex or gender."). There is no non-stereotype justification for Florida's refusal to permit Mx. Schwandes to use non-gendered pronouns.

### 4. Subsection 3 is not a bona fide occupational qualification.

Title VII creates an exception to its prohibition on discrimination "in those certain instances where ... sex ... is a bona fide occupational qualification reasonably necessary to the normal operation of that particular business or enterprise." 42 U.S.C. § 2000e-2(e). This is an "extremely narrow" exception. *Dothard v. Rawlinson*, 433 U.S. 321, 334 (1977). And "to qualify as a BFOQ, a job qualification must relate to the 'essence' or to the 'central mission of the employer's business.'" *UAW*, 499 U.S. at 203 (citations omitted); *Garrett v. Okaloosa Cnty.*, 734 F.2d 621, 624 (11th Cir. 1984). Employers bear the burden of affirmatively proving the

existence of a BFOQ. *Weeks v. S. Bell Tel. & Tel. Co.*, 408 F.2d 228, 232 (5th Cir. 1969); *Hardin v. Stynchcomb*, 691 F.2d 1364, 1370–71 (11th Cir. 1982).

While purporting to disclaim the position that "transgender people, as a class, are incapable of teaching Florida's curriculum," State Defendants nonetheless insist that "using pronouns consistent with one's sex is a BFOQ" for teaching in Florida public schools. Doc. 60 at 25. Their theory is that subsection 3 "accomplishes [a] pedagogical goal"—specifically, the goal of teaching students that it is "false" to use any pronouns that do not "correspond to" one's "sex"—and subsection 3 "ensures that public employees do not provide students with messages that contradict State policy on the topic of sex." *Id.* at 25–26.

But State Defendants have submitted no evidence to show that subsection 3 is "reasonably necessary to the normal operation of [this] particular business or enterprise." 42 U.S.C. § 2000e-2(e). Ms. Wood is a math teacher at Lennard High School. Doc. 11-1 ¶¶ 3, 5. There is no reason to believe (and certainly no evidence) that Ms. Wood's provision of her title or pronouns to her math students would in any way interfere with the "normal operation" of the school. *Cf. Diaz v. Pan Am. World Airways, Inc.*, 442 F.2d 385, 388 (5th Cir. 1971) ("No one has suggested that having male stewards will so seriously affect the operation of an airline as to jeopardize or even minimize its ability to provide safe transportation from one place to another."); *Wilson v. Sw. Airlines Co.*, 517 F. Supp. 292, 302 (N.D. Tex. 1981) (no BFOQ where

"sex-linked job functions are only 'tangential' to the essence of the occupations and business involved"). Ms. Wood has only ever used Ms. and she/her pronouns as a teacher at Lennard, and received positive performance evaluations, without any apparent disruption to the school's operations. Doc. 11-1 ¶¶ 5–7; *see Garrett*, 734 F.2d at 624 ("For an occupational qualification to be 'bona fide,' it must be just as valid and necessary one day as it is the next. Yet, defendants argue, in effect, that the same women who apparently are working out well as correctional officers today would not have worked out prior to 1981, with the same qualifications. We cannot accept that argument."); *Hardin*, 691 F.2d at 1372 (similar).

Nor is there any evidence before this Court that Florida's view of appropriate pronouns is part of the "K-12 curriculum" at Lennard High School or anywhere else. Even if it were, that narrow subject could represent at most only a miniscule fraction of what students learn at school. State Defendants therefore cannot plausibly claim that rules regarding personal pronoun usage relate to the "essence" or "central mission" of schools, institutions the evident purpose of which is far broader—the education of students generally. *UAW*, 499 U.S. at 203. Nor does State Defendants' theory make any practical sense. Students do not have access to teachers' "sex chromosomes, naturally occurring sex hormones, and internal and external genitalia present at birth," Fla. Stat. § 1000.21(9), so there is no reason to believe they would even know whether any teachers were providing them with "messages that

14

contradict State policy on the topic of sex," Doc. 60 at 26.

Moreover, State Defendants cannot rely on subsection 3 itself to justify their discrimination. The settled rule is that an employer's own preferences cannot justify a BFOQ. *Diaz*, 442 F.2d at 388–89. As for the Legislature, courts have made clear that "[t]he mere fact that a state enacts a discriminatory regulation does not create a BFOQ defense for one who follows such a regulation." *Garrett*, 734 F.2d at 624; *Rosenfeld v. S. Pac. Co.*, 444 F.2d 1219, 1225–26 (9th Cir. 1971) (compliance with state law does not transform a discriminatory practice into a BFOQ). State Defendants' theory would permit schools to discriminate freely on the basis of religion, sex, or national origin so long as the school asserted that the discriminatory policy effected some "curriculum" the school wished to teach. That cannot be. *Cf. Diaz*, 442 F.2d at 389 ("[I]t would be totally anomalous if we were to allow the preferences and prejudices of the customers to determine whether the sex discrimination was valid. Indeed, it was, to a large extent, these very prejudices the Act was meant to overcome.").

State Defendants rely on *Chambers v. Omaha Girls Club, Inc.*, "which held that a "Girls Club" did not violate Title VII by firing a single staff member who became pregnant, because adherence to the Club's "role model" policy was a BFOQ. 834 F.2d 697, 705 (8th Cir. 1987). But in that case, the employer demonstrated that, at the Girls Club in particular, "staff members are trained and expected to act as role

models for the girls, with the intent that the girls will seek to emulate their behavior," *id.* at 699, that the Club's "*only purpose* is to serve young girls between the ages of eight and eighteen and to provide these women with exposure to the greatest number of available positive options in life," and that "teenage pregnancy is contrary to this purpose and philosophy," *id.* at 701 (emphasis added). As the district court "emphasiz[ed]" in *Chambers*, "this decision is based upon the *unique* mission of the Girls Club of Omaha, the age group of the young women served, the geographic locations of the Girls Club facilities, and the comprehensive and historical methods the organization has employed in addressing the problem of teenage pregnancy. Therefore, this decision will not be applicable in many other situations which this Court could envision." *Chambers v. Omaha Girls Club*, 629 F. Supp. 925, 952 (D. Neb. 1986).[4] By contrast, the record here contains no evidence at all that subsection 3 is "reasonably necessary" to the "normal operation" of Florida schools. 42 U.S.C. § 2000e-2(e); *see also EEOC v. Kamehameha Sch./Bishop Est.*, 990 F.2d 458, 465 (9th Cir. 1993) (discussing BFOQs in the schoolteacher context).

### 5.   Plaintiffs have suffered adverse employment actions.

State Defendants contend that their conduct towards Plaintiffs does not rise to

---

[4] *See also Vigars v. Valley Christian Ctr. of Dublin, Cal.*, 805 F. Supp. 802, 809 (N.D. Cal. 1992) (denying summary judgment on BFOQ defense because of "serious disagreement about how central [the employee's] moral life was to her job as librarian, whether or not she was truly expected to act as a role model in the *Chambers* sense, and what impact her pregnancy truly had on her ability to perform either of those functions").

the level of "adverse employment action" sufficient for Title VII liability, asserting without evidence that "[s]ubsection 3 has no real effect on Wood's employment." Doc. 60 at 21–24.

But the test is not a "real effect," whatever that means, but whether "a reasonable person in [the plaintiff's] position would view the employment action in question as adverse," *Hinson v. Clinch Cnty., Ga. Bd. of Educ.*, 231 F.3d 821, 829 (11th Cir. 2000)—a question on which Ms. Wood's declaration, despite State Defendants' dismissal of it as presenting only her "subjective views," Doc. 60 at 22, is illuminating even if not decisive. Indeed, it is hard to imagine that any employee—female or male or nonbinary; transgender or cisgender—would not find the "terms, conditions, or privileges" of their employment significantly changed if their employer prohibited them, but not other employees, from using the personal pronouns and titles that reflect their own gender identity. State Defendants do not even attempt to respond to Plaintiffs' observation that, under State Defendants' position, employers could freely discriminate on the basis of race, sex, religion, or national origin in regulating their employees' self-expression—for example, by permitting employees to wear Christian cross necklaces but not Muslim headscarves. Doc. 11 at 17.

More expressly than employer conduct in the vast majority of Title VII cases, subsection 3 literally alters the "terms" and "conditions" of employment as a teacher in Florida's public schools—not informally, but by statute, and on the very real

threat of termination, as Mx. Schwandes discovered. *Cf. Cox v. Am. Cast Iron Pipe Co.*, 784 F.2d 1546, 1561 (11th Cir. 1986) ("Job titles … themselves are conditions of employment protected by Title VII.").

State Defendants list a series of cases in which courts found no adverse employment action and assert without reasoning that these cases involved "far more significant acts" than the "far less adverse" harms suffered by Ms. Wood. Doc. 60 at 22–23. But none of State Defendants' cases are remotely analogous, and certainly none have anything to say about whether Title VII is implicated by denying some employees (but not others) the right to operate according to their gender identity in the workplace. Indeed, none of the cases addressed employee self-expression of any kind.[5] More helpful are cases that consider the significance of how people are addressed. For instance, in *Hamilton v. Alabama*, 376 U.S. 650 (1964), the Supreme Court reversed a contempt conviction for Mary Hamilton, a Black woman who had

---

[5] Although this Court need not compare apples to oranges, none of State Defendants' cases plausibly involves employer action more significant than what subsection 3 has inflicted on Ms. Wood. *See Kidd v. Mando Am. Corp.,* 731 F.3d 1196, 1203 (11th Cir. 2013) (plaintiff lost supervisory responsibilities but "neither a decrease in pay nor a loss of title"); *Davis v. Legal Servs. Ala., Inc.*, 19 F.4th 1261, 1264–67 (11th Cir. 2021) (plaintiff was given a "simple paid suspension" after complaints about his behavior from subordinates and co-workers); *Shannon v. Bellsouth Telecomms., Inc.*, 292 F.3d 712, 716 (11th Cir. 2002) (plaintiff was "reassigned to a different geographic area" and maintained the same job title); *Howard v. Walgreen Co.*, 605 F.3d 1239, 1245 (11th Cir. 2010) (supervisor left a voicemail that plaintiff's "job was in jeopardy," but took no concrete action against plaintiff); *Van Der Meulen v. Brinker Int'l*, 153 F. App'x 649, 655 (11th Cir. 2005) (plaintiff "alleged one statement made threatening her future management aspirations"); *Dick v. CRC Ins. Servs., Inc.*, No. 2:08-cv-00910, 2009 WL 10687917, at *14 (N.D. Ala. Dec. 14, 2009) (supervisor "inadvertently made a comment referring to the [disabled] plaintiff's facial expressions").

been held in contempt for insisting that a lawyer examining her in court address her as "Miss Hamilton" rather than "Mary." Or consider that being "repeatedly mis-gendered" has been held to contribute to a hostile work environment under Title VII. *Eller v. Prince George's Cnty. Pub. Schs.*, 580 F. Supp. 3d 154, 173 (D. Md. 2022). While hostile work environment cases involve a merely constructive change in the terms and conditions of employment, here subsection 3 accomplishes the same result *de jure* by mandating what amounts to continual sex harassment. *See* Doc. 11-1 ¶ 19 (Ms. Wood hears and uses her title "hundreds of times a day").

State Defendants also admit that they "ha[ve] opened an investigation into [Mx.] Schwandes for noncompliance with [s]ubsection 3," Doc. 60 at 23, and they do not dispute the crucial point that this investigation may lead to the revocation of Mx. Schwandes's teaching license—ending their career as a teacher in Florida's public schools and potentially elsewhere. *See* Doc. 45 at 15–16.[6] State Defendants simply ignore the significance of the investigation, citing a district court case for the claim that discriminatory investigations are never actionable under Title VII. But this depends on the facts. *See, e.g.*, *Entrekin v. City of Panama City*, 376 F. App'x 987, 995 (11th Cir. 2010) (investigation was more than a "trivial harm" because it

---

[6] As to Mx. Schwandes's termination as well, although State Defendants suggest that Mx. Schwandes was terminated by Defendant Florida Virtual School, they do not dispute that (1) Mx. Schwandes was terminated, (2) termination is an adverse employment action, and (3) State Defendants are "employer[s]" for Title VII purposes. *See* Doc. 45 at 15, 16–18 (citing cases).

could "dissuade a reasonable worker from making or supporting a charge of discrimination"). Like the plaintiff in *Entrekin*, Mx. Schwandes was investigated only after submitting a discrimination charge to the EEOC. Doc. 56 ¶¶ 110–11. State Defendants' cited case, *Jenkins v. Tuscaloosa City Bd. of Educ.*, 72 F. Supp. 3d 1238, 1251 (N.D. Ala. 2014), in contrast, involved an investigation that resulted only in a "letter of reprimand" with no license revocation issues.

### B.  Subsection 3 violates the First Amendment.

#### 1.  State Defendants cannot prohibit Plaintiffs from existing as transgender and nonbinary people at work.

Subsection 3 singles out for special censorship only a single kind of speech by teachers in schools: use of their own titles and pronouns. Under this rule, Ms. Wood can wear a cross necklace or an American flag pin but not a pin indicating she uses she/her pronouns. A cisgender woman teacher, though, could wear that same pin without issue. Ms. Wood may greet students in the hallway or in the lunchroom but not introduce herself by Ms. She can place a sign on her desk with her name, but not her title or pronouns. Subsection 3 thus goes far beyond the classroom and affects speech that Florida does not purport to control for anyone other than transgender and nonbinary teachers.

In their opening brief, Plaintiffs analogized subsection 3 to the situation in *Kennedy v. Bremerton School District*, 597 U.S. 507 (2022), where a school attempted to ban prayer by a coach on a football field after games, Doc. 11 at 22–26;

Doc. 45 at 19–23, but this actually understates how offensive subsection 3 is to the First Amendment: it is more closely analogous to a law or school rule that forbade Kennedy from praying because he was a Christian but permitted teachers of other faiths to pray, or a rule that forbade Muslim teachers from wearing a headscarf but permitted Jewish ones to wear yarmulkes. It is hence just as impermissible as the policy at issue in *Tinker v. Des Moines Independent Community School District*, where a school "singled out for prohibition" "a particular symbol—black armbands worn to exhibit opposition to this Nation's involvement in Vietnam" without "purport[ing] to prohibit the wearing of all symbols of political or controversial significance." 393 U.S. 503, 510–11 (1969).

Rather than engage with the broad scope of subsection 3, State Defendants simply ignore its effect outside the classroom and rely on portraying Plaintiffs' means of introducing themselves in the classroom, using the titles and pronouns that they use in every other area of their lives, as "instruct[ion]," Doc. 60 at 34, "editorializing," *id.* at 32, or still more inexplicably and offensively, akin to a teacher "'introduc[ing] mature sexual themes to fifteen year olds,'" *id.* at 31 (citing *Evans-Marshall v. Bd. of Educ. Of Tipp City Exempted Vill. Sch. Dist.*, 624 F.3d 332, 342 (6th Cir. 2010)). But Plaintiffs do not "instruct[]" students on gender identity by using their titles and pronouns, just as a cisgender teacher does not so instruct by using their titles and pronouns, a Muslim teacher does not instruct students on religion by

21

wearing a headscarf, and a Black teacher does not instruct on race by wearing a natural hairstyle. *Cf. Braxton v. Bd. of Pub. Instruction of Duval Cnty.*, 303 F. Supp. 958, 959 (M.D. Fla. 1969) (holding that wearer of a goatee "enjoy[ed] the protection of first amendment rights" because the goatee was "worn as 'an appropriate expression of his heritage, culture, and racial pride as a black man'"). Similarly, State Defendants' citation to this Court's decision in *Burt v. Fuchs*, No. 1:22-cv-75, 2023 WL 4103942, at *5 (N.D. Fla. June 21, 2023), does not help it because it assumes the conclusion it is trying to prove: that Plaintiffs' use of their own titles and pronouns is akin to "editorializing" on their views to students in their teaching.

State Defendants' other efforts to distinguish *Kennedy* are equally unpersuasive, not least because they simply ignore the Muslim teacher hypothetical entirely. First, they argue that Kennedy's speech was not made in the classroom but instead when he and other teachers were "free to engage in all manner of private speech." Doc. 60 at 34 (citing *Kennedy*, 597 U.S. at 530). In contrast, they argue, Plaintiffs are not free to engage in private speech in the classroom. But the Muslim teacher who wears a headscarf to work is engaging in speech—expressing her Muslim faith just as Ms. Wood wishes to express that she is a woman—in the classroom. State Defendants do not and cannot explain why the expressive activity of a Muslim teacher who wears a headscarf in the classroom is protected by the First Amendment's Free Speech Clause, but the expressive activity at issue here somehow is not.

Even limiting the analysis to *Kennedy* shows how wrong State Defendants' argument that they are permitted to regulate all "direct interactions" or "active[] communic[ations]" between teachers and students, Doc. 60 at 34, is: *Kennedy* held that a coach spoke as a private citizen on a matter of public concern when he prayed on the football field after games in view of his players. 597 U.S. at 519, 529–31. Though he "remained on duty" at the time of his prayers and conducted them "'within the office' environment—here, on the field of play"—they nonetheless were not within his duties as a government employee. *Id.* at 530.

State Defendants' reliance on Fla. Stat. § 1000.071(6), which limits the section's impact to teachers "acting within the scope of their employment duties with the public K-12 educational institution," is tautological: The question is not whether the legislature sought to define Plaintiffs' use of their titles and pronouns as part of their job—it plainly did—but whether it may do so constitutionally. For the same reason, if the facts had been the same in *Kennedy* except that a state statute prohibited employees like him from "praying while acting within the scope of their employment duties," the result would have been no different—indeed the school attempted unsuccessfully to apply just such a rule. 597 U.S. at 517–18.

Finally, State Defendants cite *Ambach v. Norwick* for the proposition that "[t]eachers through their conduct 'function as an example for students, which exists independently of particular classroom subjects.'" Doc. 60 at 30 (citing 441 U.S. 68,

23

80 (1979)). But *Kennedy* rejected precisely this argument on free speech grounds. There, the school district argued that allowing Kennedy to pray would coerce students. 597 U.S. at 510. The Court explained: "A rule that the only acceptable government role models for students are those who eschew any visible religious expression would undermine a long constitutional tradition in which learning how to tolerate diverse expressive activities has always been 'part of learning how to live in a pluralistic society.'" *Id.* (citation omitted). Similarly, State Defendants argue that Florida may decide that transgender and nonbinary teachers are, solely by virtue of any basic expression of their gender, not appropriate role models. Such a rule cannot be reconciled with our constitutional tradition of tolerance. And *Grossman v. South Shore Public School District* is even less relevant: there the district declined to renew the contract of a guidance counselor because she threw out sex-ed materials about condoms and replaced them with abstinence-only materials without her supervisor's consent and prayed with students as part of her guidance of them—all activities directly within her job. 507 F.3d 1097, 1098 (7th Cir. 2007) (cited at Doc. 60 at 30–31).

In setting out their theory that Florida must have the power to regulate Plaintiffs' self-identification at work they ask, rhetorically "[h]ow … would a contrary approach work?" Doc. 60 at 31 (quoting *Evans-Marshall*, 624 F.3d at 341). The answer is, quite easily: Plaintiffs could return to doing what they did without any

complaint before subsection 3 was enacted. Nothing about Plaintiffs' First Amendment claims, if accepted, would interfere with the right of Florida to set a curriculum. Instead, they simply ask for the same rights all other teachers continue to enjoy.

### 2. Plaintiffs have satisfied the public concern prong of *Garcetti*.

State Defendants fault Plaintiffs for not making a sufficiently long argument on the public concern prong of *Garcetti*, Doc. 60 at 36, but State Defendants offer little to no argument that, if Plaintiffs speak as private citizens, then their speech is still unprotected. Instead, they repeat their argument that Plaintiffs speak as government employees. *See* Doc. 60 at 36–37 (citing *Evans-Marshall*, 624 F.3d at 342, for the proposition that "'speech that occurs within the compulsory classroom setting' 'does not constitute speech on a matter of public concern' when it is 'curricular in nature.'")[7]. But Plaintiffs dispute that their speech is curricular, not whether curricular speech is a matter of public concern.

State Defendants also suggest that Plaintiffs' speech is unprotected because its purpose is not to raise social issues. Doc. 60 at 36–37. But they rely on a line of cases, going back to *Garcetti*, that apply the public concern prong to distinguish

---

[7] State Defendants' brief implies that this language states the Sixth Circuit's view. In fact, it is a quotation of the Fourth Circuit, which is important because that circuit "has not applied *Garcetti* to teachers' in-class speech" but has instead reached similar results by applying pre-*Garcetti* precedent that does not divide the analysis into the "private speech" and "public concern" prongs. *Id.* (citing *Lee v. York Cnty. Sch. Div.*, 484 F.3d 687, 694 n.11 (4th Cir. 2007)).

times when government employees criticize the government "from the perspective of a citizen" from those where they seek to advance a "purely private" dispute with their employer. *Alves v. Bd. of Regents of the Univ. Sys. of Ga.*, 804 F.3d 1149, 1167 (11th Cir. 2015) (holding plaintiff's memorandum complaining about poor management practices was not a matter of public concern). "Speech involves matters of public concern when it can be fairly considered as relating to any matter of political, social, or other concern to the community." *Lane v. Franks*, 573 U.S. 228, 241 (2014) (quotation omitted). For purposes of the *Pickering–Garcetti* test, gender identity is a "social matter" of concern to the community, much as Kennedy's religion was. To hold otherwise would allow government employers to regulate all manner of private speech on core First Amendment topics merely because it was not intended to address public controversies. Indeed, State Defendants' argument on this point does not seem to dispute this because it ends with yet another restatement of the undisputed "curricular speech" argument. Doc. 60 at 36–37.

Finally, State Defendants cite *Willey v. Sweetwater County School District. No. 1 Board of Trustees*, Doc. 60 at 37, which held that a teacher's refusal to use students' pronouns was unprotected because the teacher spoke pursuant to her official duties, No. 23-cv-069, 2023 WL 4297186, at *23 (D. Wyo. June 30, 2023). But in that case the basis of the court's holding was that that speech was part of the teachers' official duties. Moreover, *Willey* is consistent with Plaintiffs' request to

use their titles and pronouns in school. How a teacher expresses themselves at times when they are free to engage in private speech is very different from whether they are free to ignore how students want to be addressed. For the same reason, though Kennedy was free to pray on the field, he was not free to interfere with students' religious observance, and a Muslim teacher who is free to wear a headscarf in the classroom would not be free to prohibit a Jewish student from wearing a yarmulke or refuse to address one who did.

### 3. State Defendants have offered no interest to justify subsection 3.

State Defendants' interest-balancing argument begins by again repeating their argument that Florida has an interest in regulating curricular speech—a point no one disputes. They make no separate argument that if Plaintiffs speak as private citizens on matters of public concern, then Florida's interest in regulating that speech outweighs Plaintiffs'.

Indeed, the only thing State Defendants say about the purpose of subsection 3 for First Amendment purposes is that it is "part of comprehensive legislation aimed to promote the State's pedagogical goals and parental rights," and is a "policy choice … based on longstanding social and cultural norms." Doc. 60 at 40. But simply asserting such an interest is not the same as explaining what it is, let alone why it outweighs Plaintiffs' interests. State Defendants note elsewhere that section 1000.071(1), provides that it is "the policy" of Florida schools that "it is false to

27

ascribe to a person a pronoun that does not correspond to such person's sex," Doc. 60 at 5, but State Defendants point to no efforts other than subsection 3 to advance this goal.[8]

It cannot be that Florida's interest is to instruct students on this "policy" though because, as State Defendants themselves note, Florida law actually explicitly prohibits "instruction relating to sexual orientation and gender identity" in prekindergarten through grade eight and limits it in high school. Doc. 60 at 11 (citing Fla. Stat. § 1001.42(8)(c)(3)). As Defendant State Board of Education has previously represented to another federal court: "it would violate [§ 1001.42(8)(c)(3)] to instruct students that … gender identity is immutable based on biological traits." Br. of State Defs., *Cousins v. Grady*, No. 6:22-cv-1312, 2022 WL 19348689 (M.D. Fla. Dec. 16, 2022), ECF 112 at 3–4; *see also id.* at 1 (claim that law bars "any acknowledgment whatsoever of the existence of LGBTQ+ people" is "fearmongering at best"); *id.* at 3 (statute does not prohibit "literary references to a … transgender person"); *cf. id.* ("photos of same-sex spouses on their desks … are not classroom instruction on sexual orientation").

Moreover, to the extent Plaintiffs are speaking in their personal capacity on a matter of public concern (the only circumstance in which interest balancing is

---

[8] State Defendants also cite similar language in Fla. Stat. § 1000.21(9), but that statute merely provides definitions for the chapter.

relevant) compelling them to relay Florida's message is not a permissible interest.[9]

*Janus v. Am. Fed'n of State, Cnty., & Mun. Emps., Council 31*, 138 S. Ct. 2448, 2473 (2018) ("[I]t is not easy to imagine a situation in which a public employer has a legitimate need to demand that its employees recite words with which they disagree. And we have never applied *Pickering* in such a case."). Indeed, State Defendants seem to concede subsection 3 is intended to compel Plaintiffs to "further the State's pedagogical agenda"—that is to speak Florida's message—"in interactions with students." Doc. 60 at 40.

State Defendants at least attempt to distinguish in a footnote, Doc. 60 at 38 n.3, *United States v. National Treasury Employees Union* (*NTEU*), 513 U.S. 454 (1995), which this Court has explained "suggests that Defendants face a heavier burden to justify a 'statutory restriction on expression,'" than it would "with respect to an isolated disciplinary action," *Pernell v. Fla. Bd. of Governors of State Univ. Sys.*, 641 F. Supp. 3d 1218, 1272 (N.D. Fla. 2022). State Defendants dispute this characterization of *NTEU*, on the ground that "'the vast majority of the speech at issue' did 'not involve the subject matter of Government employment.'" Doc. 60 at 38 n.3. But the first of these two factors is also present here—Plaintiffs' speech is about their

---

[9] In their motions, Plaintiffs said the interest balancing step is "almost automatically" resolved in their favor "*to the extent that* the government is attempting to compel [them] to speak the government's message." Doc. 11 at 26 (emphasis added); Doc. 45 at 23 (same). State Defendants quote the first phrase out of context to imply that Plaintiffs claimed it applied to the entire interest balancing step. Doc. 60 at 38.

gender, not their employment. And Plaintiffs have also explained that their speech was in a context when teachers are free to speak a variety of messages, as employees are permitted outside the workplace. Moreover, *NTEU*'s holding regarding the heightened scrutiny on broad statutory restrictions is nowhere limited in the text of the decision in the manner State Defendants suggest.

Instead of addressing Plaintiffs' argument or making a clear case for the need for subsection 3, State Defendants cite a variety of truisms about public education with no apparent application to this case. State Defendants note that "[a] 'position as a teacher in a public school … by its very nature requires a degree of public trust not found in many other positions of public employment." Doc. 60 at 39 (quoting *Melzer v. Bd. of Educ. of City Sch. Dist. of City of N.Y.*, 336 F.3d 185, 198 (2nd Cir. 2003)). But unless State Defendants mean to suggest that teachers who use pronouns other than those favored by Florida are inherently untrustworthy—an odious concept—it is unclear why this matters.

On the other side of the balance—Plaintiffs' interests—State Defendants do not question or dispute any of Ms. Wood's or Mx. Schwandes's asserted interests other than asserting they do not have an interest because their speech is curricular. *Compare* Doc. 11 at 28 and Doc. 45 at 23–25 *with* Doc. 60 at 38–40.

State Defendants themselves sought to emphasize the need for "a delicate balancing of the competing interests" in First Amendment cases involving public

employee speech. Doc. 60 at 38 (quoting *Kennedy*, 597 U.S. at 508–09)). But they have not come close to meeting the "heavy presumption against its constitutional validity" borne by any law imposing prior restraint on speech. *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 225 (1990) (quoting *Se. Promotions, Ltd. v. Conrad*, 420 U.S. 546, 558 (1975)). It is true that subsection 3 reflects a policy choice, just as every legislative provision does. But State Defendants' incantatory invocations of "policy choice" do not allow Florida to avoid the constitutional limitations imposed by the First Amendment.

## II.   Plaintiffs did not unreasonably delay filing their motions for preliminary injunction.

State Defendants argue that Plaintiffs delayed too long before filing their suit and preliminary injunction motions, but their argument ignores the real-world difficulties for individual teachers without legal training of learning about what the law requires and seeking and obtaining counsel. In any event, as this Court has explained, "delay is but one factor in the irreparable harm analysis." *Dream Defs. v. DeSantis*, 559 F. Supp. 3d 1238, 1285 (N.D. Fla. 2021) (citations omitted).

Moreover, in Mx. Schwandes's case the delay argument is absurd. They filed their motion for a preliminary injunction on January 30, two weeks after learning that they were being investigated for potential loss of licensure. Doc. 45-1 ¶ 23. Up until that point, State Defendants presumably would have argued that Mx. Schwandes could not show irreparable harm because the initiation of a future investigation

31

was speculative, they were not currently employed by a school, and hence were not imminently impacted by whether or not subsection 3 could be enforced.

As for Ms. Wood, her declaration states that she only learned that subsection 3 might impact her at the start of the 2023 school year, which began in mid-August 2023,[10] and was not definitively told she could not use her title and pronouns upon pain of losing her license until several weeks later. *See* Doc. 11-1 ¶¶ 9–13. She filed her motion for preliminary injunction on December 21, 2023, Doc. 11, about three months later, not the seven months of State Defendants' calculations.[11] And even had she learned of subsection 3 and how her school would enforce it before it went into effect and filed sooner, she risked State Defendants arguing that the facts about its enforcement were too uncertain to establish standing. Ms. Wood is a public school teacher without the means or knowledge to easily identify counsel to represent her. By contrast, in *Wreal, LLC v. Amazon.com, Inc.*, 840 F.3d 1244, 1248 (11th Cir. 2016) (cited at Doc. 60 at 41), the plaintiff was a pornography business raising trademark issues. All of State Defendants' cited cases include similar corporate or

---

[10] School Board of Hillsborough County, 2023-2024 Student Calendar, https://www.hillsboroughschools.org/Page/9367.

[11] Out of professional courtesy, Plaintiffs agreed to State Defendants' request to delay the preliminary injunction briefing schedule on State Defendants' agreement that this would not be considered relevant to whether they were entitled to injunctive relief. State Defendants have abided by that agreement, but Plaintiffs note it here for the avoidance of any confusion.

government plaintiffs and longer or equal delays.[12] In contrast, in civil rights cases like this one as this Court has found, reasons such as "the time it took [plaintiffs] to consider their options, prepare their lawsuit, and prepare their motion" can be justifications for delay. *Dream Defs.*, 559 F. Supp. 3d at 1285 (three-month delay); *see also Koe v. Noggle*, No. 1:23-cv-2904, 2023 WL 5339281, at *26 (N.D. Ga. Aug. 20, 2023) (three-month delay after law went into effect was reasonable and not plaintiffs "sitt[ing] on their rights").

## III.    Plaintiffs have shown irreparable harm under Title VII.

State Defendants concede that, delay aside, First Amendment violations establish irreparable harm. Doc. 60 at 44. They dispute only whether Plaintiffs have suffered irreparable harm under Title VII.

State Defendants acknowledge that the Eleventh Circuit has held that "courts are to presume irreparable harm in Title VII cases," *Baker v. Buckeye Cellulose Corp.*, 856 F.2d 167, 169 (11th Cir. 1988), but claim that the Eleventh Circuit has limited *Baker* to its facts, Doc. 60 at 42, citing *McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1314 (11th Cir. 1998). But that gets *McDonald's* precisely backwards. In

---

[12] *Alabama v. U.S. Dep't of Com.*, 546 F. Supp. 3d 1057, 1074 (M.D. Ala. 2021) (state of Alabama challenging federal regulations after 27 months); *Bethune-Cookman, Univ., Inc. v. Dr. Mary McLeod Bethune Nat'l Alumni Ass'n, Inc.*, No. 22-14257, 2023 WL 3704912, at *2 (11th Cir. May 30, 2023) (unpublished) (university raising trademark claims after six months); *Snider Tire, Inc. v. Chapman*, No. 2:20-cv-1775, 2021 WL 2497942, at *5 (N.D. Ala. Apr. 27, 2021) (tire company seeking to enforce noncompete clause after three month delay); *Pals Grp., Inc. v. Quiskeya Trading Corp.*, No. 16-23905-CIV, 2017 WL 532299, at *5–6 (S.D. Fla. Feb. 9, 2017) (food company delayed fifteen months before seeking to enforce noncompete).

*Baker*, the Court held that, because irreparable harm was presumed in Title VII cases, the district court should have held an evidentiary hearing before denying an injunction. *Baker*, 856 F.2d at 169. In *McDonald's*, the plaintiff challenged the district court's denial of an evidentiary hearing, but the court rejected this argument, explaining that *Baker*'s holding about when to hold a hearing was, to use the language State Defendants quote, the point on which *Baker* intended to "limit the holding to the facts of the case." 147 F.3d at 1314. Accordingly, other cases have continued to cite *Baker* for the proposition that irreparable harm is presumed in Title VII cases. *See Siegel v. LePore*, 234 F.3d 1163, 1191 n.4 (11th Cir. 2000); *Storves v. Island Water Ass'n, Inc.*, No. 2:10-cv-274, 2010 WL 11622686, at *4 (M.D. Fla. Nov. 3, 2010); *Owner-Operator Indep. Drivers Ass'n, Inc. v. Landstar Sys., Inc.*, No. 3:02-cv-1005, 2012 WL 6827463, at *4 (M.D. Fla. Aug. 30, 2012).

State Defendants also cite *Leigh v. Artis-Naples, Inc.* in support of its interpretation of *Baker*. Doc. 60 at 42 (citing No. 2:22-cv-606, 2022 WL 18027780, at *17 (M.D. Fla. Dec. 30, 2022)). And while that case does read *McDonald's* to limit *Baker* more broadly than Plaintiffs believe the *McDonald's* court intended, it does not help State Defendants. It argues, citing a Fifth Circuit case arising from the same line of cases, that *Baker* distinguishes between past actions compensable by money damages, which it holds do not automatically require an injunction, and cases like this one involving "'actively coercing employees to abandon their convictions' by

34

requiring them to 'violate their religious convictions or lose all pay and benefits indefinitely'" where irreparable harm should be presumed. *Leigh*, 2022 WL 18027780, at *18 (quoting *Sambrano v. United Airlines, Inc.*, No. 21-11159, 2022 WL 486610, at *9 (5th Cir. Feb. 17, 2022)).

State Defendants' effort to rebut the presumption of harm is no more persuasive. They offer no argument whatsoever to rebut Ms. Wood's substantive argument that, setting aside any presumptions of harm, she is being irreparably harmed by being daily subjected to sex discrimination. *Compare* Doc. 11 at 29–30 and Doc. 45 at 26 *with* Doc. 60 at 42–43. State Defendants do argue that Mx. Schwandes is not harmed because Mx. Schwandes relies on "a series of vague events that have not yet happened." Doc. 60 at 42–43. But it is hardly speculative to assert that State Defendants will take disciplinary action against Mx. Schwandes, who State Defendants are already investigating for what Mx. Schwandes concedes were actions violating subsection 3 and its implementing regulations. Nor have State Defendants offered any evidence otherwise.

State Defendants also argue that any harm caused by Mx. Schwandes being disciplined can be remedied by "an order reinstating Schwandes's teaching certificate and expunging Schwandes's record of the discipline." Doc. 60 at 43. But even assuming there are no procedural obstacles or prudential objections to a federal court ordering a state actor take this action, that presumes that Mx. Schwandes will have

no need of their license between the present and the eventual resolution of this case.[13]

It also entirely ignores the reputational harm from being publicly delicensed, a fact

that will continue to be public knowledge even if any official records are expunged.

Finally, while loss of income from delicensing might ordinarily be compensable,

that is not the case with respect to any State Defendants who are immune from suit

under the Eleventh Amendment. *See ABC Charters, Inc. v. Bronson*, 591 F. Supp.

2d 1272, 1310 (S.D. Fla. 2008) ("In cases where the defendant is immune from a

claim for damages such as claims against the state barred by Eleventh Amendment

immunity, irreparable harm is presumed."); *Kansas Health Care Ass'n, Inc. v. Kan.

Dep't of Soc. & Rehab. Servs.*, 31 F.3d 1536, 1543 (10th Cir. 1994) (same); *Temple

Univ. v. White*, 941 F.2d 201, 215 (3d Cir. 1991) (same).

## IV.   The public interest and balance of equities favor Plaintiffs.

If Plaintiffs are likely to succeed on the merits of their arguments that subsec-

tion 3 violates federal law or the Constitution, then State Defendants also likely lack

any legitimate interest in continuing to enforce it. Florida has no interest in enforcing

a discriminatory and unconstitutional law. *See KH Outdoor, LLC v. City of Truss-

ville*, 458 F.3d 1261, 1272–73 (11th Cir. 2006) ("The public has no interest in en-

forcing an unconstitutional ordinance"); *see Fla. Businessmen for Free Enter. v. City*

---

[13] State Defendants cite this claim to *Sampson v. Murray*, Doc. 60 at 43 (citing 415 U.S. 61, 89–92 (1974)), but that case does not concern professional licensing, but only the unremarkable proposition that injuries compensable with money are not irreparable.

*of Hollywood*, 648 F.2d 956, 959 (5th Cir. 1981) ("Given appellants' substantial likelihood of success on the merits, … [t]he public interest does not support the city's expenditure of time, money, and effort in attempting to enforce an ordinance that may well be held unconstitutional."). An injunction will simply return Plaintiffs and Florida schools to the situation they were in until this school year while this lawsuit unfolds, a situation that Florida has been able to tolerate up until now.

State Defendants also suggest that any injunction should only be issued with respect to Plaintiffs and they should be allowed to continue to enforce subsection 3 against others. Doc. 60 at 45. But the Eleventh Circuit regularly affirms orders enjoining statewide statutes that conflict with the First Amendment. *See, e.g.*, *FF Cosms. FL, Inc. v. City of Miami Beach*, 866 F.3d 1290, 1304 (11th Cir. 2017); *see also Garcia v. Stillman*, No. 22-CV-24156, 2023 WL 3478450, at *3 (S.D. Fla. May 16, 2023) ("it is routine, appropriate, and necessary for a district court to preliminarily enjoin Florida from enforcing a law that likely violates the First Amendment"). And though state laws explicitly conflicting with Title VII are rarer, district courts have enjoined them on a statewide basis too. *Garneau v. Raytheon Co.*, 323 F. Supp. 391, 394–95 (D. Mass. 1971); *McCrimmon v. Daley*, No. 68 C 1665, 1970 WL 119, at *1 (N.D. Ill. Mar. 31, 1970).

## CONCLUSION

Plaintiffs Katie Wood and AV Schwandes respectfully request that the Court

grant their motions for preliminary injunction.

Respectfully submitted,

Date: March 4, 2024

/s/*James M. Finberg*
Sam Boyd, Fla. Bar No. 1012141
Carli Raben, Fla. Bar No. 1036013
SOUTHERN POVERTY LAW CENTER
2 S. Biscayne Blvd. Ste. 3750
Miami, FL 33131
(786) 347-2056
(786) 237-2949 (fax)
sam.boyd@splcenter.org
carli.raben@splcenter.org

Aaron S. Fleisher[*][†]
SOUTHERN POVERTY LAW CENTER
1101 17th St NW Ste. 705
Washington, DC 20036
(202) 536-9719
(202) 971-9205 (fax)
aaron.fleisher@splcenter.org
[†] *Not admitted to practice law in DC*

Diego A. Soto[*][‡]
Jessica L. Stone[*]
SOUTHERN POVERTY LAW CENTER
150 E. Ponce De Leon Ave. Ste. 340
Decatur, GA 30030
(404) 521-6700
(404) 377-0708 (fax)
diego.soto@splcenter.org
jessica.stone@splcenter.org
[‡] *Admission to GA pending*

Simone Chriss, Fla. Bar No. 124062
Jodi Siegel, Fla. Bar No. 511617
SOUTHERN LEGAL COUNSEL, INC.
1229 NW 12th Ave.

Gainesville, FL 32601
(352) 271-8890
(352) 271-8347 (fax)
simone.chriss@southernlegal.org
jodi.siegel@southernlegal.org

James M. Finberg[*]
James Baltzer[*]
ALTSHULER BERZON LLP
177 Post St., Ste. 300
San Francisco, CA 94108
(415) 421-7151
jfinberg@altshulerberzon.com
jbaltzer@altshulerberzon.com

*Counsel for Plaintiffs*

[*] *Admitted* pro hac vice

## CERTIFICATE OF WORD COUNT

I certify that this document contains 9,784 words, inclusive of headings, foot-

notes, and quotations, according to the word-processing system used to prepare it.

Date: March 4, 2024                     /s/ *James M. Finberg*
                                        James M. Finberg

39

# CERTIFICATE OF SERVICE

I filed this appendix with the Court via ECF, which will email everyone requiring notice.

Dated: June 3, 2024

*/s/ Bryan Weir*

*Counsel for*
*Defendants-Appellants*